1

2

3

4

5

6

7

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8 | ELIZABETH DE COSTER *et al.*, on behalf of
themselves and all others similarly situated,

9

10 | Plaintiffs,

11 | v.

12 | AMAZON.COM, INC., a Delaware corporation,

13 | Defendant.

14

15

No. 2:21-cv-00693-RSM

**AMAZON.COM, INC.'S MOTION
TO DISMISS CONSOLIDATED
AMENDED COMPLAINT**

**Note on Motion Calendar:**
January 7, 2022

***Oral Argument Requested***

16

17

18

19

20

21

22

23

24

25

26

27

AMAZON'S MOTION TO DISMISS (2:21-cv-00693-RSM)

## **TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

    A.    Amazon's Retail Store .................................................................... 3

    B.    The Intensely Competitive Retail Environment in Which Amazon Operates ...................................................................................... 4

    C.    Amazon's Efforts to Offer Its Customers Competitive Prices ............................ 5

LEGAL STANDARD ................................................................................................ 7

ARGUMENT ........................................................................................................... 8

I.    PLAINTIFFS' CLAIMS ALL FAIL BECAUSE A RETAIL COMPETITIVE PRICE PROVISION AND AN ANTI-GOUGING POLICY ARE BOTH LEGAL AS A MATTER OF LAW. ...................................................................... 8

II.    PLAINTIFFS FAIL TO STATE A SECTION 1 CLAIM BECAUSE THEY DO NOT ALLEGE ANY CONCERTED ACTION. ....................................................... 11

III.    PLAINTIFFS FAIL TO STATE A SECTION 1 CLAIM UNDER THE *PER SE* RULE, BECAUSE THAT RULE IS LIMITED TO AGREEMENTS BETWEEN HORIZONTAL COMPETITORS WITH NO REDEEMING VIRTUE. ....................... 13

IV.    PLAINTIFFS FAIL TO ALLEGE FACIALLY PLAUSIBLE PRODUCT MARKETS, REQUIRING DISMISSAL OF THEIR SECTION 1 RULE OF REASON AND ALL OF THEIR SECTION 2 CLAIMS. ........................................... 16

    A.    Plaintiffs' Alleged Markets Are Unnaturally Gerrymandered by Excluding Physical Retailers. .............................................................. 17

    B.    Plaintiffs' Alleged Markets Include Products That Are Not Reasonably Interchangeable. .......................................................... 18

        1.    An "Online Retail Sales Market," Consisting of 353 Million Products, Is Facially Implausible. ................................................... 18

        2.    Plaintiffs' Alleged "Online Retail Marketplace" Market Fails Because Their Allegations Demonstrate That It Is Not a Distinct Submarket. ............................................................ 20

AMAZON'S MOTION TO DISMISS (2:21-cv-00693-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

V.    PLAINTIFFS' CLAIMS ALL FAIL FOR LACK OF ANTITRUST INJURY
       AND, THUS, ANTITRUST STANDING..................................................................22

       A.    Plaintiffs' Alleged Injury Depends on Multiple Independent,
              Intervening Causes and Is Therefore Too Indirect and Attenuated for
              Antitrust Standing. ...........................................................................................22

       B.    The Injury Plaintiffs Complain of Depends on Conduct in a Different
              Market. ..............................................................................................................24

CONCLUSION..................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*2238 Victory Corp.* v. *Fjallraven USA Retail, LLC*,
    2021 WL 76334 (S.D.N.Y. Jan. 8, 2021) ...............................................................15

*Ohio* v. *Am. Express Co.*,
    138 S. Ct. 2274 (2018)...........................................................................14, 15, 22

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009)................................................................................7

*Associated Gen. Contractors ("ACG")* v. *Cal. State Council of Carpenters*,
    459 U.S. 519 (1983)...............................................................................22

*Baar* v. *Jaguar Land Rover N. Am., LLC*,
    295 F. Supp. 3d 460 (D.N.J. 2018) .........................................................12

*Bay Area Surgical Mgmt., LLC* v. *Aetna Life Ins. Co.*,
    2016 WL 3880989 (N.D. Cal. July 18, 2016)............................................16

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)................................................................................7

*Beyer Farms, Inc.* v. *Elmhurst Dairy, Inc.*,
    35 F. App'x 29 (2d Cir. 2002) ................................................................15

*Blind Dr. Inc.* v. *Hunter Douglas, Inc.*,
    2004 WL 1976562 (N.D. Cal. Sept. 7, 2004) ............................................14

*U.S.* v. *Blue Cross Blue Shield of Mich.*,
    809 F. Supp. 2d 665 (E.D. Mich. 2011).....................................................10

*Blue Shield of Va.* v. *McCready*,
    457 U.S. 465 (1982)...............................................................................24

*Broad. Music, Inc.* v. *Columbia Broad. Sys., Inc.*,
    441 U.S. 1 (1979)..................................................................................15

*Cargill, Inc.* v. *Monfort of Colo., Inc.*,
    479 U.S. 104 (1986)...............................................................................22

*Chase* v. *Nw. Airlines Corp.*,
    49 F. Supp. 2d 553 (E.D. Mich. 1999)......................................................12

*In re eBay Seller Antitrust Litig.*,
   545 F. Supp. 2d 1027 (N.D. Cal. 2008) ..................................................................17

*Edifecs Inc.* v. *TIBCO Software Inc.*,
   756 F. Supp. 2d 1313 (W.D. Wash. 2010)................................................................6

*Fed. Trade Comm'n* v. *Qualcomm Inc.*,
   969 F.3d 974 (9th Cir. 2020) ...............................................................18, 22, 24

*Fed. Trade Comm'n* v. *Staples, Inc.*,
   190 F. Supp. 3d 100 (D.D.C. 2016) .........................................................................19

*Feitelson* v. *Google Inc.*,
   80 F. Supp. 3d 1019 (S.D. Cal. 2015).......................................................................24

*Finkelstein* v. *Aetna Health Plans of N.Y., Inc.*,
   1997 WL 419211 (S.D.N.Y. July 25, 1997), *aff'd,* 152 F.3d 917 (2d Cir. 1998).....................9

*Freeman* v. *San Diego Ass'n of Realtors*,
   322 F.3d 1133 (9th Cir. 2003) .................................................................................14

*In re German Automotive Mfrs. Litig.*,
   497 F. Supp. 3d 745 (N.D. Cal. 2020) ....................................................................18

*Golden Gate Pharm. Services, Inc.* v. *Pfizer, Inc.*,
   2010 WL 1541257 (N.D. Cal. Apr. 16, 2010), *aff'd*, 433 F. App'x 598 (9th
   Cir. 2011) ................................................................................................................17

*Gross* v. *New Balance Athletic Shoe, Inc.*,
   955 F. Supp. 242 (S.D.N.Y. 1997) ..........................................................................23

*California ex rel. Harris* v. *Safeway, Inc.*,
   651 F.3d 1118 (9th Cir. 2011) .................................................................................16

*Hicks* v. *PGA Tour, Inc.*,
   897 F.3d 1109 (9th Cir. 2018) ...........................................................................17, 18

*Intel Corp.* v. *Fortress Inv. Grp. LLC*,
   511 F. Supp. 3d 1006 (N.D. Cal. 2021) ...................................................................20

*Jeanery, Inc.* v. *James Jeans, Inc.*,
   849 F.2d 1148 (9th Cir. 1988) ...........................................................................11, 12

*Kartell* v. *Blue Shield of Mass. Inc.*,
   749 F.2d 922 (1st Cir. 1984) (Breyer, J.)...................................................................1

*Kendall* v. *Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008) ...................................................................................8

*Kitsap Physicians Serv.* v. *Wash. Dental Serv.*,
   671 F. Supp. 1267 (W.D. Wash. 1987)..................................................................10

*Krehl v. Baskin-Robbins Ice Cream Co.*,
   664 F.2d 1348 (9th Cir. 1982) .........................................................................15

*LAI* v. *USB-Implementers Forum, Inc.*,
   2014 WL 12600969 (C.D. Cal. Nov. 21, 2014)...................................................21

*Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*,
   551 U.S. 877 (2007).............................................................................14, 15, 16

*Little Rock Cardiology Clinic, P.A.* v. *Baptist Health*,
   573 F. Supp. 2d 1125 (E.D. Ark. 2008) ...........................................................19

*Lorenzo* v. *Qualcomm Inc.*,
   603 F. Supp. 2d 1291 (S.D. Cal. 2009)..............................................................24

*Monoper* v. *Boeing Co.*,
   104 F. Supp. 3d 1170 (W.D. Wash. 2015)...........................................................6

*Nat'l Collegiate Athletic Ass'n* v. *Alston*,
   141 S. Ct. 2141 (2021)........................................................................13, 15, 16

*Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*,
   472 U.S. 284 (1985)......................................................................................14

*Ocean State Physicians Health Plan, Inc.* v. *Blue Cross & Blue Shield*,
   883 F.2d 1101 (1st Cir. 1989) ........................................................................10

*Ogden* v. *Little Caesar Enters., Inc.*,
   393 F. Supp. 3d 622 (E.D. Mich. 2019).............................................................15

*Oliver* v. *Am. Express Co.*,
   2020 WL 2079510 (E.D.N.Y. Apr. 30, 2020) .............................................22, 23

*PBTM LLC* v. *Football Nw., LLC*,
   511 F. Supp. 3d 1158 (W.D. Wash. 2021)...............................................17, 19, 21

*Penn. Ave. Funds* v. *Borey*,
   569 F. Supp. 2d 1126 (W.D. Wash. 2008)..........................................................16

*Perkins* v. *LinkedIn Corp.*,
   53 F. Supp. 3d 1190 (N.D. Cal. 2014)..................................................................9

*Pool Water Prods.* v. *Olin Corp.*,
   258 F.3d 1024 (9th Cir. 2001) ........................................................................22

*PSKS, Inc.* v. *Leegin Creative Leather Prods., Inc.*,
    615 F.3d 412 (5th Cir. 2010) ...................................................................18, 20

*Red Lion Safety, Inc.* v. *Ohmeda*,
    63 F. Supp. 2d 1218 (N.D. Cal. 1999) ...........................................................12

*Relevent Sports, LLC* v. *Fédération Internationale de Football Ass'n*,
    2021 WL 3077550 (S.D.N.Y. July 20, 2021) ..................................................12

*Relevent Sports, LLC* v. *U.S. Soccer Fed'n, Inc.*,
    2020 WL 4194962 (S.D.N.Y. July 20, 2020) ..................................................12

*Sambreel Holdings LLC* v. *Facebook, Inc.*,
    906 F. Supp. 2d 1070 (S.D. Cal. 2012) ..........................................................12

*Sausalito Pharm., Inc.* v. *Blue Shield of Ca.*,
    544 F. Supp. 230 (N.D. Cal. 1981), *aff'd*, 677 F.2d 47 (9th Cir. 1982).................8

*SmileCare Dental Grp.* v. *Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ............................................................................7

*Smith* v. *eBay Corp.*,
    2012 WL 27718 (N.D. Cal. Jan. 5, 2012) .......................................................17

*Starr* v. *Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010)............................................................................11

*Tennessean Truckstop, Inc.* v. *NTS, Inc.*,
    875 F.2d 86 (6th Cir. 1989) .............................................................................9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    586 F. Supp. 2d 1109 (N.D. Cal. 2008) ..........................................................14

*Toscano* v. *Pro. Golfers Ass'n*,
    258 F.3d 978 (9th Cir. 2001) ...........................................................2, 11, 12, 13

*Universal Grading Serv.* v. *eBay, Inc.*,
    2012 WL 70644 (N.D. Cal. Jan. 9, 2012) .......................................................20

*Westchester Radiological Assocs. P.C.* v. *Empire Blue Cross & Blue Shield, Inc.*,
    707 F. Supp. 708 (S.D.N.Y. 1998), *aff'd*, 884 F.2d 707 (2d Cir. 1989)...................9

**Statutes**

Idaho Code § 48-603(19) ...................................................................................11

Louisiana Stat. Ann. § 29.732.............................................................................11

Missouri Code Regs. tit. 15, §60-8.030(1)(B)-(C)................................................11

N.C. Gen. Stat. § 75-38(a) ...................................................................................................11

Sherman Act Section 1............................................................................................... *passim*

Tex. Bus. & Com. Code Ann. § 17.46(b)(27)........................................................................11

**INTRODUCTION**

In the intensely competitive retail industry, customers compare prices across many options until they find the best deal.  One of Amazon's core business objectives in serving its customers is to have a reputation with customers for low prices, and Amazon works constantly to offer low prices to maintain that reputation.  Plaintiffs' Consolidated Amended Complaint ("CAC") seeks to undermine this pro-consumer approach, asking the Court to prevent Amazon from encouraging competitively priced third-party products sold in its store.  The CAC further attacks an Amazon policy that prevents price-gouging practices, which harm consumers and which many states prohibit and prosecuted at the onset of the COVID-19 pandemic.  Amazon's alleged conduct is procompetitive.  No court of any jurisdiction has ever condemned a business practice that requires low prices in a retail store for consumers, or a business practice that prohibits third-party sellers from price-gouging by setting "significantly higher" prices, as Plaintiffs ask this Court to do.  Plaintiffs' attack on Amazon's model is ill-conceived and would, perversely, subject retailers to antitrust scrutiny for conduct that protects consumers, prevents price gouging, and encourages low prices.  Unsurprisingly, even taking the CAC's allegations as true, there are multiple independent bases upon which the law directs that the Court dismiss Plaintiffs' antitrust claims in full:

*First,* all the claims fail because the challenged conduct—a price parity clause that has not been in effect for over two years, and Amazon's Marketplace Fair Pricing Policy ("MFPP")— promotes competitive prices for consumers when they shop in Amazon's store and helps prevent price gouging.  Unlike in other antitrust cases in which an alleged monopolist insists on low prices for itself, Amazon is accused of insisting on low prices for consumers.  But a firm's encouragement of competitive prices for consumers cannot support an antitrust claim as a matter of law.  *Kartell* v. *Blue Shield of Mass. Inc.*, 749 F.2d 922, 926 (1st Cir. 1984) (Breyer, J.) ("how can it be unlawful . . . to insist that no additional charge be made" to a consumer?).

*Second*, Plaintiffs' Section 1 restraint of trade claims (Counts 1 and 2) fail to state a claim because Plaintiffs do not allege any concerted action.  Ninth Circuit law is clear that, in the absence of a "common scheme to act in restraint of trade," a contract requiring parties to abide by a

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

defendant's unilaterally set contract terms or policies is insufficient to turn those contract terms or policies into concerted action within the reach of Section 1.  *Toscano* v. *Pro. Golfers Ass'n*, 258 F.3d 978, 984 (9th Cir. 2001).   Plaintiffs allege nothing more than Amazon's unilateral establishment and enforcement of the former price parity clause and the MFPP.  This alleged unilateral conduct is insufficient to state a Section 1 claim.

*Third,* Count 1, which alleges the former price parity clause and the MFPP are *per se* antitrust violations under Section 1, also fails to state a claim because Plaintiffs apply the wrong legal standard.  The default standard in antitrust cases is the rule of reason.  Courts reserve *per se* treatment for certain kinds of agreements between horizontal competitors, which Plaintiffs do not allege.  The CAC describes vertical arrangements between Amazon, which operates a retail store, and third-party sellers, which sell goods to consumers in Amazon's store and purchase services from Amazon to facilitate those sales.  In this context, Amazon and third-party sellers stand at different levels of distribution, requiring dismissal of Plaintiffs' *per se* Section 1 claim.

*Fourth*, Plaintiffs' Section 1 rule of reason and Section 2 monopolization and attempted monopolization claims (Counts 2, 3 and 4) fail to state claims because Plaintiffs do not allege a plausible relevant product market, an essential element of each claim.  The law requires Plaintiffs to identify a relevant market consisting of reasonably interchangeable substitutes in which competition was allegedly harmed.  Plaintiffs' alleged markets—"Online Retail Sales" and an "Online Retail Marketplace"—are gerrymandered to exclude obvious substitutes.  Plaintiffs confine their alleged markets to online shopping, but online sales account for only 7.2% of total retail sales in the U.S.  The goods sold in physical stores are not only reasonably interchangeable with goods sold online, they are identical.  And Plaintiffs' allegations that online shopping is not reasonably interchangeable with shopping in physical stores are implausible.  On a motion to dismiss, the law permits this Court to draw on judicial experience and common sense in deciding whether the alleged markets make economic sense; here, they do not.

Further, Plaintiffs' alleged markets, comprised of 353 million products of highly differentiated uses, from dog food to diapers to computers, include products that are not reasonably

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

interchangeable.  Plaintiffs do not, and cannot, allege that 353 million products are substitutes for one another.  Nor have Plaintiffs even attempted to allege (as they must) that all of these products face similar competitive conditions, or that Amazon has market power over each of them, allowing them to be grouped into a single market.

*Finally*, Plaintiffs do not properly allege antitrust injury and thus lack antitrust standing.  Where the chain of causation between plaintiffs' claimed injury and the alleged anticompetitive conduct is too attenuated, and there are obvious intervening causes, courts hold plaintiffs lack antitrust standing.  Plaintiffs allege that Amazon's efforts to ensure low competitive prices for customers with the former price parity clause and the MFPP "nullified competition by other online retail marketplaces on the basis of fees," CAC ¶ 102, and, as a result, consumers allegedly paid higher prices than they otherwise would have paid for the goods they purchased in Amazon's store.  Plaintiffs' claimed injury depends on a convoluted six-step chain of causation, involving multiple intervening and independent pricing decisions by other online marketplaces and third-party sellers, resulting in a claimed injury that is far too remote and indirect to constitute antitrust injury.  Plaintiffs also allege an injury based on fees third-party sellers, not consumers, paid to sell in Amazon's store and for related services.  But if there is any cognizable market for such services for third-party sellers, it is plainly far different from the markets Plaintiffs allege in which consumers purchase retail goods.

For these reasons, and as explained below, the Court should dismiss the CAC as follows:

| Legal Argument | Causes of Action Subject to Dismissal |
|---|---|
| Competitive price provisions are legal as a matter of law | All causes of action |
| Failure to allege concerted action | First and second causes of action |
| Failure to state a *per se* claim | First cause of action |
| No plausible relevant product market alleged | Second, third, and fourth causes of action |
| No antitrust standing or antitrust injury | All causes of action |

## BACKGROUND

### A.   Amazon's Retail Store

Amazon operates a retail store in which it sells products directly to consumers.  CAC ¶¶ 2,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

44.  Amazon has also invited independent, third-party sellers of "unparalleled variety" to sell in its store, most of whom are small- and medium-sized businesses.  *Id.* ¶¶ 3, 43 n.42, 45, 77.  At least 2.3 million third-party sellers offer products in Amazon's store.  *Id.* ¶ 46.  Amazon has invested significantly in tools and services designed to assist these sellers.  *Id.* ¶ 56 (Fulfillment By Amazon program "combines warehousing, packing, and shipping services" for third-party sellers).  Amazon's efforts to open up retail to millions more sellers have increased competition and driven innovation.  *Id.* ¶ 60 n.68 (article explaining that Amazon has "been opening up more e-commerce features and capabilities to third-party sellers that were once reserved for wholesale vendors," as part of "a broader industry shift in retail toward direct sales, as more brands become less reliant on wholesale relationships, reworking supply chains and e-commerce teams to sell straight to customers").  Amazon's investments have fueled third-party sales in Amazon's store, with third-party sellers now accounting for "the majority of sales on Amazon's marketplace."  *Id.* ¶ 73.

Between Amazon's offerings and those of more than 2.3 million third-party sellers, Amazon's store offers "consumers an unparalleled range of goods and choices."  *Id.* ¶ 46.  According to the CAC, consumers can find at least 353 million unique products in Amazon's store in a diverse range of categories: apparel, groceries, beauty, pet supplies, electronics, collectibles, fine art, toys, home improvement, sports, and more.  *Id.* ¶ 2 n.1.

### B.  The Intensely Competitive Retail Environment in Which Amazon Operates

The retail environment in which Amazon operates is far more competitive than the CAC describes, but even the CAC recognizes that Amazon competes with brick-and-mortar stores, online websites, and third-party sellers.  The CAC identifies myriad retailers with which Amazon competes.  *E.g.,* CAC ¶¶ 96 (Walmart, Costco and Target),  98, n.119 (Apple, Home Depot, Best Buy, QVC, HSN, Zulily, Macy's, and Wayfair).  Similarly, Amazon competes with the more than 2.3 million third-party sellers who sell their products in Amazon's store as well as on "their own websites and on competing online marketplaces, such as those offered by eBay and Walmart."  *Id.* ¶ 5.  According to the CAC, each of these individual retail options is small compared to Amazon, but that allegation does not change the dynamic and robust retail competition the CAC describes.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs also focus on online options for purchasing products, but the CAC and sources it cites similarly acknowledge, as they must, that the same products offered online are also offered in brick-and-mortar stores. *Id.* ¶¶ 93 n.106, 96 n.115, 133 n.180.  And online shopping accounts for just 7.2% of total retail sales, according to a U.S. Census Bureau document cited by Plaintiffs, with the vast majority of retail sales still taking place in physical stores. *Id.* ¶ 93 n.106.

Against this retail landscape, Plaintiffs allege two relevant product markets for purposes of their antitrust claims:   the alleged "Online Retail Marketplace Market," defined as "online platforms that enable consumers to buy retail goods listed by multiple independent sellers," *id.* ¶ 64; and the alleged "Online Retail Sales Market," defined as "the broader market for U.S. online retail sales," *id.* ¶ 92.  In other words, Plaintiffs allege that the so-called Online Retail Marketplace Market is a submarket of the so-called Online Retail Sales Market.  But Plaintiffs nowhere allege why online marketplaces are economically distinct from online retail sales generally.  Rather, their allegations repeatedly conflate the two alleged markets.  *Id.* ¶¶ 97 ("By controlling the Online Retail Marketplace Market, Amazon has secured its position as the gateway to online retail sales"); 65 (noting that "[o]nline shopping also minimizes the risk that a product is out of stock" when making allegations about the so-called Online Retail Marketplace Market); 66 (attempting to distinguish online marketplaces from a brick-and-mortar retailer).

## C.    Amazon's Efforts to Offer Its Customers Competitive Prices

In a highly competitive and dynamic retail environment, Amazon has earned consumers' trust by consistently offering products at competitive prices delivered with the best service. Customer trust is essential to success in retail, where margins are incredibly slim, and can be easily lost.  Even a single bad experience in Amazon's store—such as paying an uncompetitive price— can damage customer trust or cause retailers to lose customers.  Plaintiffs challenge steps Amazon has taken to maintain customer trust, focusing on (1) a "price parity clause" Amazon discarded over two years ago, and (2) the MFPP.

What Plaintiffs refer to as the "price parity clause" was a provision in Amazon's Business Solutions Agreement ("BSA") that required third-party sellers to offer products in Amazon's store

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

at an all-in price that was "at least as favorable to Amazon Site users as the most favorable terms upon which a product is offered or sold" directly by the third-party seller elsewhere online. Rummage Decl., Ex. A § S-4 (Former BSA, cited at CAC ¶ 16).[1]  The price parity clause did not look to prices set by other retailers.  To the extent Amazon enforced the provision in the event of a violation, the third-party seller was required to "promptly compensate adversely affected customers."  *Id.*  Amazon removed the provision from the BSA in March 2019.  CAC ¶ 18.[2]

The MFPP, on the other hand, existed when the price parity clause did and remains in effect today.  Ex. B (quoted at CAC ¶¶ 20; 109 n.147).  As published on Amazon's website, the policy states: "In our mission to be Earth's most customer-centric company, Amazon strives to provide our customers with the largest selection at the lowest price, and with the fastest delivery," and "sellers play an important role" in meeting those goals.  *Id.*  The policy continues: "Sellers are responsible for setting their own prices on Amazon marketplaces"; however, if Amazon sees "pricing practices on a marketplace offer that harms customer trust," it may decide not to feature the offer, remove the offer from the Buy Box, remove the offer from Amazon's store, or, "in serious or repeated cases," suspend or terminate selling privileges in its store.  *Id.*

The MFPP does not require sellers to offer their lowest prices in Amazon's store.  Instead, the policy expressly states that pricing practices that harm customer trust include "setting a price on a product or service that is *significantly higher* than recent prices offered on or off Amazon."  *Id.* (emphasis added).  Amazon monitors prices in its store and "compares them with other prices available to our customers" to identify any "significantly higher" prices.  *Id.*  The policy does not distinguish between online and offline sales channels, nor does it say anything about the prices a

---

[1] Because Plaintiffs reference the former price parity provision and the MFPP throughout the CAC, the Court can consider the full text of both on Amazon's motion to dismiss.  "The Court considers the Complaint in its entirety, including the contract terms incorporated by reference."  *Edifecs Inc.* v. *TIBCO Software Inc.*, 756 F. Supp. 2d 1313, 1321 n.5 (W.D. Wash. 2010) (citing *Tellabs, Inc.* v. *Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)); *see also Monoper* v. *Boeing Co.*, 104 F. Supp. 3d 1170, 1177-78 (W.D. Wash. 2015) ("The Court . . . may rely on documents referred to in the complaint that are central to a party's claim and their authenticity is not in question").  The former BSA is attached to the Rummage Declaration as Exhibit A and the MFPP is attached thereto as Exhibit B.  All references to "Ex." herein refer to exhibits attached to the Rummage Declaration.

[2] Although not an issue for this motion, Amazon notes that one reason to remove the provision was that it rarely enforced the provision.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

third-party seller sets on its other sales channels. *Id.* The MFPP, which is not the same as, and has always been separate from, the former price parity clause, is, by the CAC's own allegations, a unilateral policy published by Amazon on its website for third-party sellers. CAC ¶ 20.

Plaintiffs refer collectively (and inaccurately) to the former price parity clause and the MFPP as "Platform 'Most Favored Nation' ('MFN') policies" or "MFN Policies" that they assert "forbid third-party merchants from listing their goods anywhere else on the internet at prices lower than their Amazon list prices." *Id.* ¶ 13. The plain terms of the MFPP and the former price parity clause show that they do not have the same "intent and effect," as the CAC alleges. *Id.* ¶ 22. The former price parity clause ensured that third-party sellers could not discriminate against Amazon customers by setting a higher price in Amazon's store than that specific third-party seller set elsewhere. In contrast, rather than seeking price parity, the MFPP says that prices set in Amazon's store should not be "significantly higher" than competitive prices, based on a comparison to prices across thousands of retailers (where prices may be set by *retailers*, like Walmart and Target, not just by the particular third-party seller), as well as recent prices in Amazon's store (*id.* ¶¶ 21 n.26, 115), protecting consumers from price gouging and other practices that destroy consumer trust. Plaintiffs' characterization of the MFPP as an "MFN" is therefore incorrect.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 547 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). "Dismissal for failure to state a claim is appropriate where the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose." *SmileCare Dental Grp.* v. *Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). Antitrust cases that fail these standards are especially suitable for dismissal "because discovery in antitrust cases frequently causes substantial expenditures and

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  gives the plaintiff the opportunity to extort large settlements even where he does not have much

2  of a case." *Kendall* v. *Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008).

3  **ARGUMENT**

4  **I.    Plaintiffs' Claims All Fail Because a Retail Competitive Price Provision and an Anti-**
       **Gouging Policy Are Both Legal as a Matter of Law.**

5

6         The Court should dismiss the CAC because it alleges that a retailers' policies that provide

7  for competitive prices to consumers, rather than for itself, violate the antitrust laws.  The former

   price parity clause required third-party sellers to offer products *to consumers* in Amazon's store at
8
   an all-in price "at least as favorable to Amazon Site users as the most favorable terms upon which
9
   a product is offered or sold" directly by that specific third-party seller elsewhere online.  Ex. A
10
   § S-4 (Former BSA) (referenced at CAC ¶¶ 16, 16 n.19).  The MFPP is also centered on *consumers*
11
   by prohibiting price gouging, i.e., "significantly higher" prices in Amazon's store.  Ex. B at 1.
12
          No court has ever condemned competitive price policies like these.  Rather, courts that
13
   have considered competitive price provisions favoring consumers, sometimes referred to as a type
14
   of MFN, have held that, as a matter of law, such provisions do not violate the antitrust laws.  In
15
   *Kartell* v. *Blue Shield of Mass. Inc.*, for example, then-Judge Stephen Breyer upheld as a matter of
16
   law a type of MFN, an insurer's competitive price provision called "balance billing," that
17
   prohibited doctors from charging consumers fees in addition to what the insurer paid the doctor.
18
   749 F.2d at 928–29.  The court held that such a provision that protects consumers from higher
19
   prices could not be a violation of the antitrust laws: "how can it be unlawful for [a buyer] to insist
20
   that no additional charge be made" to the insured consumer?  *Id.*  As Judge Breyer further noted,
21
   "it is not surprising the courts have unanimously upheld contracts analogous in various degrees to
22
   the one at issue here—contracts in which those who directly provide goods or services to insureds
23
   have agreed to cap or forego completely additional charges to those" consumers.  *Id*. at 926.[3]
24

25  [3] *Id.* (citing in support "*Royal Drug Co.* v. *Grp. Life & Health Ins. Co.*, 737 F.2d 1433 (5th Cir. 1984) ($2 cap on
    balance billing for drugs); *Webster Cnty. Memorial Hosp., Inc.* v. *United Mine Workers*, 1536 F.2d 419 (D.C. Cir.
26  1976) (hospital agrees to ban on balance billing) . . .  *Sausalito Pharm., Inc.* v. *Blue Shield of Ca.*, 544 F. Supp. 230
    (N.D. Cal. 1981), *aff'd*, 677 F.2d 47 (9th Cir. 1982) (cap on balance billing by participating pharmacies), *cert.
27  denied*, 459 U.S. 1016 (1982)) . . . P. Areeda, *Antitrust Analysis* 530–31 (1981) ('It is difficult to see what could make
    [such an] arrangement anticompetitive')").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

By contrast, Plaintiffs' reading of the law would call into question any provision that, like the provision in *Kartell*, favors consumers by promoting competitive retail prices.  Under the antitrust theory advanced in the CAC, for example, commonplace provisions that benefit consumers by requiring sellers to price competitively would be subject to challenge.  *E.g.*, Target Plus (requiring that sellers "price products on the Target Plus marketplace at parity with their other sales channels")[4]; Walmart (providing that it would "automatically unpublish items from Walmart Marketplace if a customer would save by purchasing the same item from the same Seller on a competing website, including the cost of shipping").[5]

Plaintiffs nonetheless allege that Amazon's former price parity provision is anticompetitive because it incentivizes third-party sellers to maintain a "price floor," keeping prices higher than they otherwise would across all retail outlets.  CAC ¶ 156.  But in upholding the legality of provisions favoring consumers, courts have rejected the argument that a competitive price provision that demands low prices to consumers somehow becomes unlawful because of the mere possibility that other sellers might otherwise have offered even lower prices to certain buyers.  In *Kartell*, the court upheld the provision in that case despite the claim, like the one Plaintiffs make here, that the policy "discourage[d] doctors from charging others low prices by insisting that [the insurer's] subscribers be given the benefit of any such low prices."  740 F.2d. at 928.

Courts since *Kartell* have continued to uphold contract provisions providing that consumers be offered competitive prices.  *E.g., Tennessean Truckstop, Inc.* v. *NTS, Inc.*, 875 F.2d 86, 90 (6th Cir. 1989) (affirming dismissal based on *Kartell* where credit card issuer prohibited truck stop from charging more than 5% fee for customers purchasing by credit card); *Finkelstein* v. *Aetna Health Plans of N.Y., Inc.*, 1997 WL 419211, at *5 (S.D.N.Y. July 25, 1997) (following

---

[4]  Brian Roizen, *Target Plus (Target+) Seller FAQs to Get You Started*, Feedonomics (Jun. 10, 2020), https://feedonomics.com/blog/target-plus-target-seller-faqs-to-get-you-started/ (last visited Sept. 16, 2021), Ex. C.  "Proper subjects of judicial notice when ruling on a motion to dismiss include . . . publically accessible websites."  *Perkins* v. *LinkedIn Corp.*, 53 F. Supp. 3d 1190, 1204 (N.D. Cal. 2014).

[5]  *Pricing Rules and Automatic Unpublishing*, Walmart,https://web.archive.org/web/20171110102123/https://marketplace.walmart.com/knowledgebase/articles/Article/Automatic-Pricing-Rules-Overview (last visited Sept. 16, 2021), Ex. D.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Kartell* and granting motion to dismiss), *aff'd,* 152 F.3d 917 (2d Cir. 1998); *Westchester Radiological Assocs. P.C.* v. *Empire Blue Cross & Blue Shield, Inc.*, 707 F. Supp. 708, 713 (S.D.N.Y. 1998) (dismissing antitrust claims where Blue Cross was "acting as a rational buyer attempting to get the best possible terms for its subscribers"), *aff'd*, 884 F.2d 707 (2d Cir. 1989).

Dismissal is also required here because, even in cases in which an alleged monopolist is seeking competitive prices for itself, courts have upheld such provisions as a matter of law except when there were other factors present, such as the monopolist negotiating higher prices in exchange for an MFN or insisting that it receive a better price than the price received by others—allegations not made in the CAC. *E.g., U.S.* v. *Blue Cross Blue Shield of Mich.*, 809 F. Supp. 2d 665, 669, 674-75 (E.D. Mich. 2011). In *Ocean State Physicians Health Plan, Inc.* v. *Blue Cross & Blue Shield*, 883 F.2d 1101, 1103-04 (1st Cir. 1989), for example, without such allegations, the plaintiff challenged an insurer's requirement that doctors charge the defendant insurer no more than they charged other insurers; the First Circuit affirmed judgment in the defendant insurer's favor because, even assuming the insurer was a monopolist, the insurer's conduct was permissible competition "as a matter of law," *id.* at 1110; *see also Kitsap Physicians Serv.* v. *Wash. Dental Serv.*, 671 F. Supp. 1267, 1269 (W.D. Wash. 1987) (agreement's "antidiscrimination" clause "that the clinic may not charge [the insurer] more than it charges the public . . . is *only good business sense*" (emphasis in original) (citation omitted)). As the leading antitrust treatise states, courts should "never condemn" even "a dominant firm's insistence that it obtain the lowest generally available price for a product." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 768a6 (4th & 5th eds., 2021 Cum. Supp.).

Finally, to the extent Plaintiffs' claims are based on the MFPP, they should be dismissed because the CAC's characterization of the policy as an MFN is demonstrably incorrect. Unlike the former price parity clause, the MFPP does not even remotely require third-party sellers to provide Amazon their most favorable prices. To the contrary, the policy discourages third-party sellers from offering prices in Amazon's store that are "significantly higher" than recent prices on or off Amazon. Ex. B at 1. By its terms, the MFPP permits sellers to offer lower prices on other

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sales channels than they do on Amazon, and sets consequences if third-party sellers price-gouge.

The pricing practices that the MFPP addresses mirror the price gouging practices that the Washington Attorney General has condemned[6] and that other states prohibit by statute, as the policy discouraging "significantly higher" prices resembles the language of state laws prohibiting price-gouging.[7]  In response to third-party sellers price gouging customers for essential items during the pandemic, Amazon has worked cooperatively with state attorneys general across the country to protect consumers against price gouging.  It would be a perverse use of the antitrust laws to conclude that the MFPP's prohibition against price gouging is anticompetitive.  The Court should hold the MFPP procompetitive as a matter of law because it benefits consumers.

## II. Plaintiffs Fail to State a Section 1 Claim Because They Do Not Allege Any Concerted Action.

"For an agreement to constitute a violation of Section 1 of the Sherman Act, a 'conscious commitment to a common scheme designed to achieve an unlawful objective' must be established." *Toscano* v. *Pro. Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001) (quoting *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).  Section 1 "targets concerted anticompetitive conduct," *not* a defendant's independent actions.  *Starr* v. *Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (the "crucial question in a Section 1 case is [ ] whether the challenged conduct stem[s] from independent decision or from an agreement, tacit or express").  "Unilateral conduct by a single firm, even if it 'appears to "restrain trade" unreasonably,' is not unlawful under section 1 of the Sherman Act."  *Jeanery, Inc.* v. *James Jeans, Inc.*, 849 F.2d 1148, 1152 (9th Cir. 1988) (quoting *Copperweld Corp.* v. *Indep. Tube Corp.*, 467 U.S. 752, 767 (1984)).

---

[6] Ltrs. from Bob Ferguson, Attorney General of Washington, to Third-Party Sellers (Mar. 26, 2020) (cease and desist letters to Amazon third-party sellers stating, "[i]t is illegal to charge excessive prices for goods necessary for the health, safety, and welfare of Washingtonians during the COVID-19 pandemic"), *available at* https://agportal-s3bucket.s3.amazonaws.com/uploadedfiles/Another/News/Press_Releases/DemandLetters032620.pdf (last visited Sept. 16, 2021).

[7] *E.g.*, D.C. Code § 28-4102 (prohibiting charging more than the "normal average retail price" during an emergency); Iowa Admin. Code r. 61-31.1(714) (prohibiting "excessive" prices during a state of emergency); Idaho Code § 48-603(19) (same); Louisiana Stat. Ann. § 29.732 (prohibiting during state of emergency prices higher than those "ordinarily charged"); Missouri Code Regs. tit. 15, §60-8.030(1)(B)-(C) (prohibiting "an excessive price" during an emergency); North C. Gen. Stat. § 75-38(a) (prohibiting "unreasonably excessive" prices during emergency); Tex. Bus. & Com. Code Ann. § 17.46(b)(27) (prohibiting "excessive" price during a disaster).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

AMAZON'S MOTION TO DISMISS (2:21-cv-00693-RSM) - 11

Under Ninth Circuit law, in the absence of a "common scheme to act in restraint of trade," a contract requiring parties to abide by a defendant's contract terms or policies is insufficient to turn those contract terms or policies into "concerted action" within Section 1's reach. *Toscano*, 258 F.3d at 983-84 (where alleged co-conspirators have "no involvement in the establishment or enforcement of the allegedly anticompetitive provisions of the contracts," there is no concerted action under § 1); *Jeanery*, 849 F.2d at 1160 ("This termination was pursuant to James Jeans' announced policy . . .  It was unilateral, independent action taken by James Jeans .  . . .  And it did not violate section 1 of the Sherman Act").

Courts routinely dismiss Section 1 claims where the claim rests only on one party's establishment or enforcement of contract terms or policies that another party is required to follow. In *Sambreel Holdings LLC* v. *Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076 (S.D. Cal. 2012), for example, the plaintiff alleged that Facebook's contract with Application Developers "includes a provision that obligates Application Developers to use only the Advertising Partners that have been approved by Facebook," and that this constituted an unlawful agreement under Section 1. The court held the complaint lacked "sufficient facts to support the allegation that there was concerted effort among the Application Developers and Facebook, as is required by the express terms of Sherman Act § 1, as opposed to unilateral action on the part of Facebook." *Id.* at 1076. Many cases reach the same conclusion. *E.g., Baar* v. *Jaguar Land Rover N. Am., LLC*, 295 F. Supp. 3d 460, 465 (D.N.J. 2018) (dismissing Section 1 claim where car manufacturer "unilaterally implemented" no-export policy and "required their dealers to enforce it" or face termination as a dealer); *Chase* v. *Nw. Airlines Corp.*, 49 F. Supp. 2d 553, 561 (E.D. Mich. 1999) (agreements requiring travel agents to comply with airline's sales policies was not concerted action because there were "no allegations that travel agents played any role whatsoever in formulating" the policy); *Relevent Sports, LLC* v. *U.S. Soccer Fed'n, Inc.*, 2020 WL 4194962, at *6-7 (S.D.N.Y. July 20, 2020) (FIFA's policies, with which defendant was "required to adhere" amounted to "unilateral compliance with FIFA's directive" and not concerted action); *Relevent Sports, LLC* v. *Fédération Internationale de Football Ass'n*, 2021 WL 3077550, at *5 (S.D.N.Y. July 20, 2021)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

(dismissing amended complaint on same basis); *Red Lion Safety, Inc.* v. *Ohmeda*, 63 F. Supp. 2d 1218, 1240 (N.D. Cal. 1999) (dismissing Section 1 claim; "Simple acquiescence to a form contract is normally not the sort of concerted action that constitutes an 'agreement' under § 1").

Plaintiffs do not allege anything more than the "establishment or enforcement" of terms by Amazon. *Toscano*, 258 F.3d at 984. Plaintiffs allege that "every third-party merchant that registers to list goods on Amazon's marketplace must 'agree[ ] to the terms of the [BSA] and the policies incorporated in that agreement,'" CAC ¶ 15, and Amazon prevents price competition "by imposing on third-party merchants Platform 'Most Favored Nation' ('MFN') policies," *id.* ¶ 13. And the CAC repeatedly refers to the former parity clause and MFPP as "Amazon's MFN policies," alleging they "have been aggressively enforced by Amazon." *Id.* ¶ 107; *see also, e.g., id.* ¶¶ 13, 16, 22–28, 49, 67, 83, 89–90, 100, 102, 108, 116, 118, 131, 142, 148, 156, 164, 169, 176, 181.

Plaintiffs do not plausibly allege that any "coconspirator, third-party merchants," CAC ¶¶ 160, 174, took part in establishing or enforcing either the former price parity clause or the MFPP, instead conclusorily alleging that the third-party sellers and Amazon "did not act unilaterally or independently when entering into the agreements, *id.* ¶ 167. That allegation is belied by the very next, which states Amazon "has the power to dictate and arbitrarily change the rules by which its co-conspirator, third-party merchants have access to Amazon's marketplace." *Id.* ¶ 168. The CAC thus alleges Amazon acted unilaterally—not that Amazon and third-party sellers formed a "conscious commitment to a common scheme designed to achieve an unlawful result"—requiring dismissal of Plaintiffs' Section 1 claims. *Toscano*, 258 F.3d at 983.

## III. Plaintiffs Fail to State a Section 1 Claim under the *Per Se* Rule, Because That Rule Is Limited to Agreements Between Horizontal Competitors with No Redeeming Virtue.

Plaintiffs fail to plausibly allege that Amazon's pricing policies constitute *per se* unlawful restraints of trade in violation of Section 1. As the Supreme Court recently explained: "At one end of the spectrum, some restraints may be so obviously incapable of harming competition that they require little scrutiny. . . . At the other end, some agreements among competitors so obviously threaten to reduce output and raise prices that they may be condemned as unlawful *per se* or

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

rejected only after a quick look." *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 141 S. Ct. 2141, 2155-56 (2021).  The law condemns as *per se* unlawful only a narrow category of agreements that have no "redeeming virtue," *Nw. Wholesale Stationers, Inc.* v. *Pac. Stationery & Printing Co.*, 472 U.S. 284, 289 (1985) (citation omitted), including naked agreements "among competitors to fix prices," *Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*, 551 U.S. 877, 886 (2007).  These are considered unlawful *per se*, meaning that a plaintiff need not prove anticompetitive effects in a defined relevant market.  *Ohio* v. *Am. Express Co.*, 138 S. Ct. 2274, 2283-84 (2018).  All other agreements among competitors "are judged under the rule of reason," which requires an "assessment of market power and market structure . . . to assess the [restraint]'s actual effect on competition." *Id.* at 2284.  Plaintiffs have failed to state a *per se* claim for multiple reasons.

*First*, Plaintiffs allege that Amazon's agreements with third-party sellers establishing the terms on which they may sell goods in Amazon's store constitutes "*per se* unlawful price-fixing." CAC ¶ 156.  There is no basis in fact or law for that contention.  *Per se* price-fixing requires an agreement *among competitors* not to compete on the price (or output, quality, or customers) of competing goods or services—i.e., the agreement must govern the way in which competitors will compete against one another.  *E.g.*, *Freeman* v. *San Diego Ass'n of Realtors*, 322 F.3d 1133, 1144 (9th Cir. 2003) (defendants engaged in horizontal price fixing subject to the *per se* rule by agreeing to "set a fixed, uniform fee" for their realtor services "that was more than double the cost of the most efficient" non-conspiring realtor association); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1115 (N.D. Cal. 2008) (pleading horizontal agreement among multiple defendant manufacturers to fix the price at which they sell LCD panels); *cf. Blind Dr. Inc.* v. *Hunter Douglas, Inc.*, 2004 WL 1976562, at *6 (N.D. Cal. Sept. 7, 2004) (dismissing Section 1 *per se* claim based on defendant's policy aimed at protecting defendant's "reputation" and "positive brand image" that prohibited retailers from advertising discounts because policies "do not dictate the actual prices retailers charge for" defendant's products).  Here, Plaintiffs have not alleged any agreement addressing the manner in which horizontal competitors (each third-party seller with one another *and* with Amazon) compete against one another on the prices (or any other

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

terms of sale) at which to offer competing products.

Rather, Plaintiffs claim that Amazon's policies allegedly prohibit third-party sellers from "list[ing] their goods on other online platforms at prices that are lower than their list prices on Amazon's marketplace." CAC ¶ 156. Amazon's BSA agreement with third-party sellers establishes the terms by which third-party sellers can list goods in Amazon's marketplace. *Id.* ¶ 15. "Third-party merchants register with Amazon for Amazon to sell their goods on Amazon's marketplace, and Amazon manages those sales." *Id.* ¶ 45. Thus, the BSA by definition governs a vertical relationship between firms at different levels of the supply chain. The vertical nature of the relationship is clear because if Amazon itself stopped selling goods directly to consumers, the BSA would still apply to third-party sellers selling in Amazon's Marketplace. Vertical arrangements are evaluated under the rule of reason, not the *per se* rule. *Am. Express Co.*, 138 S. Ct. at 2284. The allegation that Amazon sells products to consumers as a retailer, while also providing services to third-party sellers, does not bring the challenged policies within the scope of any *per se* rule. CAC ¶ 6. The rule of reason governs mixed vertical and horizontal relationships. *Krehl v. Baskin-Robbins Ice Cream Co.*, 664 F.2d 1348, 1354-57 (9th Cir. 1982).[8]

*Second*, courts label restraints *per se* unlawful only after developing a "considerable experience with the type of restraint at issue" that allows the court to "predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Leegin*, 551 U.S. at 877-78; *see also Broad. Music, Inc.* v. *Columbia Broad. Sys., Inc.*, 441 U.S. 1, 9-10 (1979). This is because there are "inherent limits on a court's ability to master an entire industry" and "hard-to-see efficiencies attendant to complex business arrangements." *Alston*, 141 S. Ct. at 2156. Cautioning against inappropriate application of the *per se* rule, the Supreme Court recently noted that "it can take economists years, sometimes decades, to understand why certain business

---

[8] *See also Beyer Farms, Inc.* v. *Elmhurst Dairy, Inc.*, 35 F. App'x 29, 29 (2d Cir. 2002) (applying rule of reason where plaintiff alleged "both a vertical and horizontal relationship"); *2238 Victory Corp.* v. *Fjallraven USA Retail, LLC*, 2021 WL 76334, at *5 (S.D.N.Y. Jan. 8, 2021) ("Because the Complaint describes a mixed vertical and horizontal relationship between [defendants], any agreement between them is scrutinized under the rule of reason and is not categorized as *per se* unlawful"); *Ogden* v. *Little Caesar Enters., Inc.*, 393 F. Supp. 3d 622, 636 (E.D. Mich. 2019) (agreements that display "both vertical and horizontal components" merit "a more in-depth analysis to determine unreasonableness" than the "quick look" approach).

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

practices work [and] determine whether they work because of increased efficiency or exclusion."
*Id.* (internal quotation marks and citation omitted).  As explained above in Section I, courts have considerable experience with provisions similar to those alleged here, and have uniformly upheld them as procompetitive as a matter of law.  Plaintiffs' effort to affix the "*per se*" label to those provisions offers no basis to depart from that well-established rule.  *See Leegin*, 551 U.S. at 886.

Plaintiffs focus on the German antitrust authority's 2013 decision that the former price parity clause was a horizontal restraint.  CAC ¶ 17 (citing BKartA Dec. at 2-3).  But that decision did not conclude that Amazon and third-party sellers agreed on the prices at which retail products would be set, as is necessary to state a *per se* claim under U.S. law; acknowledged the vertical aspects of Amazon's BSA with third-party sellers, making the Section 1 claim subject to the rule of reason under U.S. law; and did not address the MFPP at all.  BKartA Dec. at 2-3.

*Finally*, the *per se* rule cannot apply "[s]o long as there are 'plausible arguments that a practice enhances overall efficiency and makes markets more competitive.'"  *Penn. Ave. Funds* v. *Borey*, 569 F. Supp. 2d 1126, 1132 (W.D. Wash. 2008) (quoting *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1155 (9th Cir. 2003)).  The CAC contains multiple allegations plausibly (and correctly) suggesting that Amazon's pricing policies help keep prices in Amazon's store competitive with prices offered through other retail channels, especially given that "a staggering number (82%) of consumers cited price as a very important factor when buying a product on Amazon."  CAC ¶ 108.  These plausible procompetitive benefits foreclose application of the *per se* rule, as well as the "quick look" analysis.  *Id.* ¶ 162.  *California ex rel. Harris* v. *Safeway, Inc.*, 651 F.3d 1118, 1134 (9th Cir. 2011); *Bay Area Surgical Mgmt., LLC* v. *Aetna Life Ins. Co.*, 2016 WL 3880989, at *13 (N.D. Cal. July 18, 2016) (dismissing claim invoking a "quick look" analysis where plaintiff did not sufficiently allege absence of any "plausible procompetitive effects").

## IV. Plaintiffs Fail to Allege Facially Plausible Product Markets, Requiring Dismissal of Their Section 1 Rule of Reason and All of Their Section 2 Claims.

"Whether an antitrust violation exists necessarily depends on a careful analysis of market realities."  *Alston*, 141 S. Ct. at 2158.  "Under the rule of reason, plaintiffs must plead a relevant

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

market to state an antitrust claim under Sections 1 or 2 of the Sherman Act." *PBTM LLC* v. *Football Nw., LLC*, 511 F. Supp. 3d 1158, 1179 (W.D. Wash. 2021).

A "complaint may be dismissed under Rule 12(b)(6) if the complaint's 'relevant market' definition is facially unsustainable." *Hicks* v. *PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (internal quotation marks omitted). "Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products," "the relevant market is legally insufficient and a motion to dismiss may be granted." *In re eBay Seller Antitrust Litig.*, 545 F. Supp. 2d 1027, 1031 (N.D. Cal. 2008) (quoting *Queen City Pizza, Inc.* v. *Domino's Pizza Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)); *PBTM*, 511 F. Supp. 3d at 1181 (dismissing antitrust claims when having "considered the reasonable interchangeability" of the alleged products, the court could "not conclude that [plaintiff] has alleged sufficient facts to plausibly plead a relevant market"); *Golden Gate Pharm. Services, Inc.* v. *Pfizer, Inc.*, 2010 WL 1541257, at *2 (N.D. Cal. Apr. 16, 2010) (dismissal required where plaintiff fails to define the "relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand") (internal quotation marks omitted), *aff'd*, 433 F. App'x 598 (9th Cir. 2011); *Smith* v. *eBay Corp.*, 2012 WL 27718, at *7 (N.D. Cal. Jan. 5, 2012) (same). In analyzing whether Plaintiffs have alleged markets based on the reasonable interchangeability of products, the Court may draw upon its "judicial experience and common sense" and reject a market definition that is "not natural" or "contorted to meet [Plaintiff's] litigation needs." *Hicks*, 897 F.3d at 1121.

## A.   Plaintiffs' Alleged Markets Are Unnaturally Gerrymandered by Excluding Physical Retailers.

The decision whether to shop online or in a physical store is not a binary choice. The CAC identifies retailers with which Amazon competes that have both an online and offline presence. CAC ¶ 96 (Walmart, Costco, and Target). The CAC and sources it cites also acknowledge that the same products offered online are also offered in physical stores. *Id.* ¶¶ 7 n.12, 93 n.106, 96

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

n.115, 133 n.180. As one source puts it: "to shoppers, it's all just 'shopping.'" *Id.* ¶ 96 n.115.

In an effort to exclude brick and mortar retailers from their alleged markets "to meet [Plaintiff's] litigation needs," *Hicks*, 897 F.3d at 1121, Plaintiffs point to purported differences between brick and mortar and online retail. CAC ¶¶ 65-68. But Plaintiffs fail to connect any of these alleged differences to consumers' shopping behavior, as the market definition exercise requires. Plaintiffs conclude, without alleging a factual basis, that these alleged "numerous distinctions . . . would not cause a sufficient number of transactions to switch to brick-and-mortar stores." *Id.* ¶ 68. "[J]udicial experience and common sense," however, lead to the conclusion that consumers would turn to a physical retailer just as they would look online to purchase dog food or diapers in response to a small but significant and nontransitory price increase. *Hicks*, 897 F.3d at 1121-22 (affirming dismissal where plaintiff's relevant market "omit[ted] many economic substitutes" and their allegation that consumers would not switch in response to a small but significant and nontransitory price increase was "a legal conclusion veiled as a factual allegation that we do not consider when ruling on a motion to dismiss"); *PSKS*, 615 F.3d at 418 (affirming grant of motion to dismiss where market focused on "independent retailers" and plaintiff had not "alleged facts that could establish why independent retailers do not compete with larger chain stores"). Plaintiffs cannot overcome the commonsense notion that "to shoppers, it's all just 'shopping,'" CAC ¶ 96 n.115, allowing the Court to reject their markets on this motion. *In re German Automotive Mfrs. Litig.*, 497 F. Supp. 3d 745, 758 (N.D. Cal. 2020) (plaintiffs "alleged nothing to contradict the commonsense inference that diesel passenger vehicles compete with other passenger vehicles and do not constitute a relevant submarket").

**B.     Plaintiffs' Alleged Markets Include Products That Are Not Reasonably Interchangeable.**

**1.     An "Online Retail Sales Market," Consisting of 353 Million Products, Is Facially Implausible.**

Plaintiffs fail to plausibly allege the "threshold step" of an antitrust case: defining a market consisting of reasonable substitutes. *Fed. Trade Comm'n* v. *Qualcomm Inc.*, 969 F.3d 974, 992

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(9th Cir. 2020).  Plaintiffs' "Online Retail Sales Market" includes an "unparalleled range of goods"—over 353 million products, including 12 million diverse items allegedly sold by Amazon and the remainder sold by over 2.3 million third-party sellers.  CAC ¶¶ 2 n.1, 5, 46, 47.  The products within this proposed relevant market span a wide range of categories:  apparel, groceries, beauty, pet supplies, electronics, collectibles, fine art, toys, home improvement, sports, and more.  *Id.* ¶ 2 n.1.  Plaintiffs do not allege, and would have no basis to allege, that these product categories and the products within them are reasonably interchangeable with one another.  From the perspective of both a buyer and a seller, dog food is not a substitute for diapers, which in turn are not substitutes for a computer, even though these products frequently are all available at one store—and common sense and experience shows they are (Walmart, Costco, for example).

Clustering or grouping 353 million different products into a single "Online Retail Sales" market would violate multiple antitrust principles.  *First,* clustering or grouping products does "not invalidate or alter the 'definite rule' of antitrust law that a relevant market must include commodities reasonably interchangeable by consumers."  *PBTM*, 511 F. Supp. 3d at 1181.  *Second,* the CAC does not "address the critical question that must be answered when determining whether a particular product should be included in a cluster market:  are the items subject to the same competitive conditions?"  *Fed. Trade Comm'n* v. *Staples, Inc.*, 190 F. Supp. 3d 100, 123 (D.D.C. 2016).  Plaintiffs do not and cannot allege that the "wide range of goods and services" in the Online Retail Sales Market are all subject to the "same competitive conditions."   Where a group of products do not face the same competitive conditions, they cannot be combined in a single market.  For example, in *Staples*, the court held that for large, Fortune 100 business-to-business customers, a market existed for consumable office supplies, but did not include ink and toner, for which business-to-business customers had additional choices.  190 F. Supp. 3d at 123.  *Third*, for 353 million products to be grouped together in a single market, Amazon would have to have market power over *each* of the products.  *Little Rock Cardiology Clinic, P.A.* v. *Baptist Health*, 573 F. Supp. 2d 1125, 1146 (E.D. Ark. 2008) ("'Most fundamentally, goods cannot be clustered unless there is a sufficient basis for inferring that the defendant has the required degree of market power

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

over each of the goods in the cluster.'") (quoting IIB Philip E. Areeda, Herbert Hovenkamp, & John L. Solow, Antitrust Law ¶ 565c (3d ed. 2007)). But Plaintiffs have not alleged, and would have no basis to allege, such wide-ranging market power.

Courts have rejected far narrower markets as too broad on a motion to dismiss. *E.g.*, *PSKS, Inc.* v. *Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 418 (5th Cir. 2010) ("women's accessories" was "too broad and vague a definition to constitute a market"); *Golden Gate Pharmacy*, 433 F. App'x at 599 (alleged "pharmaceutical industry" market failed "to allege a product market consisting of reasonably interchangeable goods"); *Universal Grading Serv.* v. *eBay, Inc.*, 2012 WL 70644, at *7 (N.D. Cal. Jan. 9, 2012) ("Plaintiffs attempt to define the relevant market to include any market which significantly depends on participation within online auctions . . . . However, plaintiffs provide no authority supporting such an overbroad and amorphous market definition, which would theoretically encompass the market for every one of the millions of items sold through eBay") (internal quotation marks omitted); *Intel Corp.* v. *Fortress Inv. Grp. LLC*, 511 F. Supp. 3d 1006, 1023-24 (N.D. Cal. 2021) (finding alleged product markets consisting of "mobile device-to-device communication," "local cache management," "shared memory access," "device authorization," "health monitoring," and "digital rights management" to be "facially overbroad and therefore, even at the motion to dismiss stage, implausible"). The Court should reject Plaintiffs' "Online Retail Sales Market" here for failure to allege a market of reasonably interchangeable goods.

### 2. Plaintiffs' Alleged "Online Retail Marketplace" Market Fails Because Their Allegations Demonstrate That It Is Not a Distinct Submarket.

Plaintiffs allege the so-called Online Retail Marketplace Market is a submarket of the so-called Online Retail Sales Market of all online retail sales. *See* CAC ¶¶ 92 (defining the Online Retail Sales Market as a "broader market" than that for the Online Retail Marketplace market), 64 ("the Online Retail Marketplace Market is composed of online platforms that enable consumers to buy retail goods listed by multiple independent sellers"). To plead an Online Retail Marketplace submarket separate from a "broader market for U.S. online retail sales," *id.* ¶ 92, Plaintiffs must

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

show that "the alleged submarket is economically distinct from the general product market." *PBTM*, 511 F. Supp. 3d at 1179 (quoting *Newcal Indus., Inc.* v. *Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008)).   The Supreme Court has defined "several 'practical indicia' of an economically distinct submarket: 'industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors.'"   *Id.*

Plaintiffs fail to allege *any* of the "'practical indicia' of an economically distinct submarket."   This alone requires dismissal of their Online Retail Marketplace submarket.   *LAI* v. *USB-Implementers Forum, Inc.*, 2014 WL 12600969, *5-6 (C.D. Cal. Nov. 21, 2014) (dismissing where plaintiff's complaint failed to address the *Brown Shoe* indicia to support its alleged submarket).   Although Plaintiffs allege why online retail is distinct from brick-and-mortar retail for antitrust purposes (a proposition Amazon and common sense strongly dispute), CAC ¶¶ 93-96, they nowhere allege why online marketplaces are economically distinct from online retail.

Moreover, Plaintiffs' allegations show why the Online Retail Marketplace Market is not a distinct submarket separate from Plaintiffs' "broader market for U.S. online retail sales."   *Id.* ¶ 92. Plaintiffs allege that "Amazon's MFN policies prohibit third-party merchants from lowering their prices *anywhere on the internet*," including other marketplaces or sellers' "own websites."   *Id.* ¶¶ 23 (emphasis added), 108, 116 (alleging the that Amazon's policies "eliminate price competition from third-party merchants across the U.S. online retail sales market").   Plaintiffs' own allegations also conflate their alleged Online Retail Marketplace and Online Retail Sales markets.   *Id*. ¶¶ 97 ("By controlling the Online Retail Marketplace Market, Amazon has secured its position as the gateway to online retail sales"), 99 (discussing Amazon as the "dominant marketplace" in allegations regarding online retail sales) (internal quotation marks omitted).   These allegations demonstrate that there are no "distinct customers," no "distinct prices," and no "sensitivity to price changes" between the alleged submarket and the "broader market for U.S. online retail sales."[9]

---

[9] To the extent Plaintiffs are claiming that the Online Retail Marketplace Market is a two-sided transaction platform

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## V.     Plaintiffs' Claims All Fail for Lack of Antitrust Injury and, Thus, Antitrust Standing.

Plaintiffs' claims all fail because their allegations do not show they suffered a cognizable antitrust injury, and, as a result, the Court should dismiss the CAC for lack of antitrust standing. *Pool Water Prods.* v. *Olin Corp.*, 258 F.3d 1024, 1033 (9th Cir. 2001) (affirming dismissal of Section 1 and 2 claims for lack of antitrust standing); *Oliver* v. *Am. Express Co.*, 2020 WL 2079510, at *8 (E.D.N.Y. Apr. 30, 2020) (to plead antitrust standing, a plaintiff must plausibly allege "(a) that it suffered a special kind of antitrust injury, and (b) that it is a suitable plaintiff to pursue the alleged antitrust violation and thus is an efficient enforcer of the antitrust laws").

### A.     Plaintiffs' Alleged Injury Depends on Multiple Independent, Intervening Causes and Is Therefore Too Indirect and Attenuated for Antitrust Standing.

The antitrust laws do not permit suit for "every harm that can be attributed directly or indirectly to the consequences of an antitrust violation." *Associated Gen. Contractors ("ACG")* v. *Cal. State Council of Carpenters,* 459 U.S. 519, 529 (1983).  It is not sufficient to allege injuries "causally linked" to a defendant's alleged illegal activities.  *Cargill, Inc.* v. *Monfort of Colo., Inc.*, 479 U.S. 104, 109 (1986).  A plaintiff instead must allege "*antitrust* injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes the defendants' acts unlawful." *Id.* (internal quotation marks omitted).  Further, "parties whose injuries, though flowing from that which makes the defendant's conduct unlawful, are experienced in another market do not suffer antitrust injury." *Qualcomm*, 969 F.3d at 992-93 (internal quotation marks omitted).

Plaintiffs allege a multi-step causal chain of injury that is too attenuated to plausibly allege antitrust injury.   Plaintiffs contend that Amazon's alleged MFN policies first, "nullified competition by other online retail marketplaces on the basis of fees," which, second, allegedly caused "Amazon to continue to charge supracompetitive fees for the use of its marketplace."  CAC

---

market, that claim fails for the same reasons that the Online Retail Marketplace Market fails as a submarket.  A transaction platform "facilitate[s] a single, simultaneous transaction between participants" and "suppl[ies] only one product—transactions" to "two different groups who both depend on the platform to intermediate between them." *Amex*, 138 S. Ct. at 2280, 2286 (internal quotation marks omitted).  To plead a transaction platform market, interchangeability and the viability of switching on both sides of the transaction must be examined. *Id.* at 2287.  The CAC does not address interchangeability or switching on both sides of the transaction.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

¶ 102.  Plaintiffs then allege that, third, "third-party merchants would rationally have set lower prices for their goods on their own websites and on competing online retail marketplaces with lower fees." *Id.*  Fourth, "in turn, competing online retail marketplaces would have lowered their fees to compete with Amazon on price, or—if their fees were already lower—better succeeded at driving marketplace-level competition by attracting more third-party merchants and more consumers." *Id.*  Fifth, Plaintiffs allege "these market forces would have resulted in competitive pressure that would have forced Amazon to lower its fees," and sixth, "to lower the prices for its own goods." *Id.*  Based on this six-step chain of causation, Plaintiffs allege Amazon has "kept overall prices high on its marketplace and, therefore, across all online retail marketplaces." *Id.*

Where, as here, the chain of causation between the claimed injury and the alleged anticompetitive conduct is too attenuated, and there are obvious intervening causes, courts hold plaintiffs lack antitrust standing.  In *Oliver* v. *American Express Co.*, for example, the court applied *AGC* and dismissed a Section 1 claim brought by consumers who alleged Amex's anti-steering rules allowed Mastercard, Visa, or Discover to charge higher fees, in turn causing consumers to pay higher prices for all goods purchased with non-Amex credit cards.  2020 WL 2079510, at *9.  The court's reasoning—that the plaintiffs' theory wrongly relied on "actions taken by" independent, non-party actors and "involve[d] assessing the pricing decisions of Amex's non-party competitors"—applies equally here.  *Id.* at *10, 11; *Gross* v. *New Balance Athletic Shoe, Inc.*, 955 F. Supp. 242, 247 (S.D.N.Y. 1997) (rejecting antitrust standing where alleged injury was affected by "independent pricing decisions of non-conspiring retailers").  As the CAC makes clear, independent pricing decisions of retailers such as Walmart and eBay for marketplace fees they charge third-party sellers and for goods they sell, and independent decisions of third-party sellers related to marketplace fees, shipping methods, marketing, and other costs, are integral to proving the ultimate injury Plaintiffs allege, i.e., supracompetitive prices for products sold by Amazon or third-party sellers through Amazon's marketplace.  This purported injury is too "remote" and "indirect" for Plaintiffs to establish antitrust standing under *AGC*.

Plaintiffs' allegations that they are direct purchasers does not change the analysis, for

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

satisfying the direct-purchaser rule is necessary, but not always sufficient, to establish antitrust standing. *Blue Shield of Va.* v. *McCready*, 457 U.S. 465, 476 (1982) ("Analytically distinct from the" direct-purchaser rule recognized in *Illinois Brick*, "there is the conceptually more difficult question 'of which persons have sustained injuries too remote [from an antitrust violation] to give them standing to sue.'") (quoting *Illinois Brick Co.* v. *Illinois*, 431 U.S. 720, 728 n.7 (1977)).

**B.      The Injury Plaintiffs Complain of Depends on Conduct in a Different Market.**

Plaintiffs allege they paid supracompetitive prices for retail goods, but that contention, as demonstrated by the CAC's own allegations, depends upon Amazon's actions in a different market and toward different actors, i.e., the policies applied and fees charged to third-party sellers. CAC ¶ 102. The "inflated prices" Plaintiffs allege they paid for consumer goods were not paid in the same market in which Plaintiffs claim the alleged anticompetitive conduct occurred—a market involving services provided to third-party sellers. Where plaintiffs allege injury in a market other than the market in which anticompetitive conduct is alleged to occur, courts dismiss antitrust claims for lack of antitrust standing. *Feitelson* v. *Google Inc.*, 80 F. Supp. 3d 1019, 1027-28 (S.D. Cal. 2015) ("Plaintiffs allege that they suffered antitrust injury in the form of supracompetitive pricing in Android phones, which is not the market in which the alleged anticompetitive conduct occurred."); *Lorenzo* v. *Qualcomm Inc.*, 603 F. Supp. 2d 1291, 1301 (S.D. Cal. 2009) (no antitrust standing where "Qualcomm's unlawful licensing practices occurred in the market for CDMA-related patents and technology," but plaintiff was "an end consumer who suffered injury in the form of supracompetitive prices in the market for cell phones and cellular service").

Plaintiffs' alleged antitrust injury is also the kind the Ninth Circuit has rejected because the "harms, even if real, are not 'anticompetitive' in the antitrust sense—at least not *directly*—because they do not involve restraints on trade or exclusionary conduct in 'the area of effective competition.'" *Qualcomm*, 969 F.3d at 992-93 (quoting *Amex*, 138 S. Ct. at 2285).

## CONCLUSION

The Court should grant the motion and dismiss Plaintiffs' claims with prejudice.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Davis Wright Tremaine LLP

*s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
E-mail: steverummage@dwt.com
E-mail: maryannalmeida@dwt.com

Paul, Weiss, Rifkind, Wharton & Garrison LLP

*s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Kyle N. Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C.
Telephone: (202) 223-7300
Fax:  (202) 223-7420
E-mail:  kdunn@paulweiss.com
E-mail:  wisaacson@paulweiss.com
E-mail:  amauser@paulweiss.com
E-mail:  mgoodman@paulweiss.com
E-mail:  ksmith@paulweiss.com

Attorneys for AMAZON.COM, Inc.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

AMAZON'S MOTION TO DISMISS (2:21-cv-00693-RSM) - 25