The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELIZABETH DE COSTER *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

No. 2:21-cv-00693-RSM

**AMAZON.COM, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT**

**Note on Motion Calendar:**
January 21, 2022

***Oral Argument Requested***

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

I.    PLAINTIFFS' CLAIMS FAIL BECAUSE AMAZON'S POLICIES ARE
      PROCOMPETITIVE AS A MATTER OF LAW. ........................................................... 1

      A.    Policies That Promote Competitive Prices For Consumers Are *Per Se*
            Lawful. ............................................................................................................... 1

      B.    Amazon's Fair Pricing Policy Prohibits Price-Gouging. .................................... 4

II.   PLAINTIFFS CANNOT ALLEGE CONCERTED ACTION, REQUIRING
      DISMISSAL OF THE SECTION 1 CLAIMS. ............................................................... 4

III.  *PER SE* TREATMENT DOES NOT APPLY TO PLAINTIFFS' SECTION 1
      CLAIMS. ......................................................................................................................... 6

IV.   PLAINTIFFS' ALLEGED PRODUCT MARKETS ARE FACIALLY
      UNSUSTAINABLE. ....................................................................................................... 8

      A.    Plaintiffs Implausibly Allege Exclusively Online Markets of Millions
            of Non-Interchangeable Consumer Products. ...................................................... 8

      B.    Plaintiffs Impermissibly Add Allegations in Their Opposition, and in
            Any Event, Those Allegations Are Deficient. .................................................... 10

V.    PLAINTIFFS FAIL TO ESTABLISH ANTITRUST STANDING. ............................ 11

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  19 F.4th 127 (2d Cir. 2021) ...................................................................................................12

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
  361 F. Supp. 3d 324 (E.D.N.Y. 2019) ...................................................................................11

*Apple* v. *Pepper*,
  139 S. Ct. 1514 (2019)............................................................................................................12

*Ashcroft* v. *Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................4

*Atl. Richfield Co.* v. *USA Petrol. Co.*,
  495 U.S. 328 (1990)..................................................................................................................2

*Blue Cross & Blue Shield United of Wis.* v. *Marshfield Clinic*,
  65 F.3d 1406 (7th Cir. 1995) ....................................................................................................5

*Brooke Grp.* v. *Brown & Williamson Tobacco Corp.*,
  509 U.S. 209 (1993)..................................................................................................................2

*Capitol W. Appraisals, LLC* v. *Countrywide Fin. Corp.*,
  759 F. Supp. 2d 1267 (W.D. Wash. 2010)..............................................................................10

*Cont'l T.V., Inc.* v. *GTE Sylvania Inc.*,
  433 U.S. 36 (1977)....................................................................................................................6

*Coronavirus Rep.* v. *Apple, Inc.*,
  2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) .......................................................................11

*Dimidowich* v. *Bell & Howell*,
  803 F.2d 1473 (9th Cir. 1986) ..................................................................................................7

*In re Elec. Books Antitrust Litig.*,
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) ........................................................................12

*Fed. Trade Comm'n* v. *Qualcomm, Inc.*,
  969 F.3d 974 (9th Cir. 2020) ....................................................................................................2

*Fed. Trade Comm'n* v. *Staples, Inc.*,
  190 F. Supp. 3d 100 (D.D.C. 2016) ..........................................................................................9

*Fed. Trade Comm'n* v. *Whole Foods Market, Inc.*,
  548 F.3d 1028 (D.C. Cir. 2008)............................................................................................9, 11

*Kartell* v. *Blue Shield of Mass., Inc.*,
  749 F.2d 922 (1st Cir. 1984)...............................................................................................1, 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - ii

*Krehl* v. *Baskin-Robbins, Ice Cream Co.*,
    664 F.2d 1348 (9th Cir. 1982) ...............................................................................................7

*Lazy Y Ranch Ltd.* v. *Behrens*,
    546 F.3d 580 (9th Cir. 2008) ..................................................................................................4

*Leegin Creative Leather Prods., Inc.* v. *PSKS, Inc.*,
    551 U.S. 877, 893 (2007)........................................................................................................7

*Lorain J. Co.* v. *United States*,
    342 U.S. 143 (1951).................................................................................................................3

*Lucas* v. *Bechtel Corp.*,
    800 F.2d 839 (9th Cir. 1986) ................................................................................................12

*McCagg* v. *Marquis Jet Partners, Inc.*,
    2007 WL 2454192 (S.D.N.Y. July 27, 2007) .......................................................................11

*In re Musical Instruments & Equip. Antitrust Litig.*,
    798 F.3d 1186 (9th Cir. 2015) ................................................................................................7

*Nat'l Collegiate Athletic Ass'n* v. *Alston*,
    141 S. Ct. 2141 (2021).............................................................................................................6

*Ohio* v. *Am. Express Co.*,
    138 S. Ct. 2274 (2018)...........................................................................................................11

*Osborn* v. *Visa Inc.*,
    797 F.3d 1057 (D.C. Cir. 2015) ..............................................................................................3

*Palmer* v. *BRG of Ga., Inc.*,
    498 U.S. 46 (1990)...................................................................................................................7

*PBTM LLC* v. *Football Nw., LLC*,
    511 F. Supp. 3d 1158 (W.D. Wash. 2021)..............................................................................9

*Penn. Ave. Funds* v. *Borey*,
    569 F. Supp. 2d 1126 (W.D. Wash. 2008)..............................................................................6

*PepsiCo, Inc.* v. *Coca Cola Co.*,
    114 F. Supp. 2d 243 (S.D.N.Y. 2000).....................................................................................9

*Prime Healthcare Servs., Inc.* v. *Serv. Empls. Int'l Union*,
    2012 WL 3778348 (S.D. Cal. Aug. 30, 2012) ........................................................................6

*Shane Grp., Inc.* v. *Blue Cross Blue Shield of Mich.*,
    2012 WL 5990219 (E.D. Mich. Nov. 30, 2012) ...................................................................12

*Spindler* v. *Johnson & Johnson Corp.*,
    2011 WL 12557884 (N.D. Cal. Aug. 1, 2011) ........................................................................8

*Starr* v. *Sony BMG Music Ent.*,
    592 F.3d 314, 320, 323-24 (2d Cir. 2010) ..............................................................................7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - iii

*Sudunagunta* v. *Nantwest, Inc.*,
  2017 WL 8811116 (C.D. Cal. May 16, 2017) ...........................................................................4

*Tennessean Truckstop, Inc.* v. *NTS, Inc.*,
  875 F.2d 86 (6th Cir. 1989) .....................................................................................................1

*Texaco* v. *Dagher*,
  547 U.S. 1 (2006)......................................................................................................................7

*Toscano* v. *PGA Tour, Inc.*,
  70 F. Supp. 2d 1109 (E.D. Cal. 1999).......................................................................................5

*Toscano* v. *Pro. Golfers Ass'n*,
  258 F.3d 978 (9th Cir. 2001) ....................................................................................................5

*United States* v. *Apple*,
  791 F.3d 290 (2d Cir. 2015).................................................................................................3, 7

*United States* v. *Blue Cross Blue Shield of Mich.*,
  809 F. Supp. 2d 665 (E.D. Mich. 2011)...............................................................................3, 6

*United States* v. *Delta Dental of R.I.*,
  943 F. Supp. 172 (D.R.I. 1996)............................................................................................3, 5

*United States* v. *Grinnell Corp.*,
  384 U.S. 563 (1966).................................................................................................................8

*US Airways, Inc.* v. *Sabre Holdings Corp.*,
  938 F.3d 43 (2d Cir. 2019)..................................................................................................3, 11

*In re Wholesale Grocery Prods. Antitrust Litig.*,
  752 F.3d 728 (8th Cir. 2014) ...................................................................................................6

**Statutes**

Sherman Act § 1.................................................................................................... *passim*

**Other Authorities**

Andre Boik & Kenneth S. Corts, *The Effects of Platform Most-Favored Nation
  Clauses on Competition and Entry*, 59 J.L. & Econ. 105, 129 (2016) ....................................2

Anna Johansson, *6 Differences Between E-Commerce & Brick-and-Mortar
  Stores*, RetailNext (Mar. 27, 2018) https://retailnext.net/blog/6-differences-
  between-e-commerce-brick-and-mortar-stores.........................................................................8

Jonathan B. Baker & Fiona Scott Morton, *Antitrust Enforcement Against Platform
  MFNs,* 127 Yale L.J. 2176, 2178, 2194 (2018) .......................................................................2

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: Any Analysis of Antitrust
  Principles and Tehri Application* (4th ed. 2021) ..............................................................6, 10

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## INTRODUCTION

Plaintiffs seek to avoid dismissal by arguing that Amazon's motion to dismiss is "fact bound."  Amazon's arguments are grounded in the plain language of the polices that Plaintiffs challenge—policies that ensure consumers are offered lower prices.  Those policies make clear that Amazon does not set—by agreement or otherwise—the prices at which third-party sellers sell their products, whether in Amazon's store or elsewhere.  Plaintiffs challenge Amazon's policies that, on their face, discourage third-party sellers from charging shoppers in Amazon's store higher or, in the case of the Fair Pricing Policy, "significantly higher" prices than the prices third-party sellers charge for the same products in other stores.  But no court in any U.S. jurisdiction has held that such policies violate the antitrust laws.  Instead, courts have upheld such policies as a matter of law because they benefit both competition and consumers.

Faced with that impenetrable legal barrier, Plaintiffs urge the Court to depart from established antitrust precedent, and ignore the challenged policies' plain language.  Plaintiffs' claims are facially unsustainable, and the Court should dismiss them.

## ARGUMENT

**I.   Plaintiffs' Claims Fail Because Amazon's Policies Are Procompetitive As a Matter of Law.**

**A.  Policies That Promote Competitive Prices For Consumers Are *Per Se* Lawful.**

Plaintiffs' antitrust claims based on Amazon's former price parity provision and its current Fair Pricing Policy fail because they challenge policies that, on their face, promote competitive prices for consumers, conduct that the antitrust laws encourage and that does "not constitute an unreasonable restraint of trade." *Kartell* v. *Blue Shield of Mass., Inc.*, 749 F.2d 922, 931 (1st Cir. 1984).  "As a matter of logic . . . how can it be unlawful for [an alleged monopolist] to insist that no additional charge be made to [] other[s]?" *Id.* at 928; *see also Tennessean Truckstop, Inc.* v. *NTS, Inc.*, 875 F.2d 86, 90 (6th Cir. 1989) (granting motion to dismiss where credit card company's policy "merely sought to limit the differential between the prices quoted to its customers and the prices quoted to [other] customers," which was "obviously a proconsumer device"); Amazon's Mot. Dismiss ("Mot.") at 9–10 (citing cases), Dkt. 35.  Plaintiffs do not cite a single case holding

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 1

that policies promoting competitive *consumer* prices are anything but *per se* legal.

Plaintiffs argue—based on conclusory allegations—that absent these policies consumers would pay lower prices. The antitrust laws do not permit plaintiffs to challenge established procompetitive actions aimed at lower consumer prices by making naked allegations of price increases. Because the policies, on their face, are directed at ensuring that consumers (rather than Amazon) are charged lower prices, the policies are *per se* lawful, and no further inquiry into their effects is warranted. Condemning such low-price policies "is beyond the practical ability of a judicial tribunal to control without courting intolerable risks of chilling legitimate price-cutting." *Brooke Grp.* v. *Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 223 (1993); *see also Kartell*, 749 F.2d at 929 (upholding competitive price provision despite allegation it "discourage[d] doctors from charging others low prices"); *Atl. Richfield Co. v. USA Petrol. Co.,* 495 U.S. 328 (1990) (low nonpredatory prices do not threaten competition). Plaintiffs cannot avoid these cases with naked allegations of higher prices: "[a]llegations that conduct 'has the effect of reducing consumers' choices or increasing prices to consumers do[] not sufficiently allege an injury to competition . . . [because] [b]oth are fully consistent with a free, competitive market.'" *Fed. Trade Comm'n* v. *Qualcomm, Inc.*, 969 F.3d 974, 990 (9th Cir. 2020) (citation omitted).

Plaintiffs argue that "*platform* MFNs (like Amazon's)" differentiate this case because Amazon's price protections allegedly blocked competing firms. Pls.' Opp'n Mot. Dismiss ("Opp.") at 7, Dkt. 39. But Plaintiffs do not name a single firm that was blocked, admitting that Amazon faces significant competition, including from retail giants like Walmart and eBay. Consolidated Am. Compl. ("CAC") ¶ 46, Dkt. 20.[1] And the "platform MFN" cases they cite, Opp. 7, neither discuss "platform MFNs" nor suggest that a policy protecting consumers from high prices may be the subject of an antitrust lawsuit because it is offered by a so-called "platform."

---

[1] Plaintiffs rely (Opp. 7 n.5) on two journal articles; one outlines how "platform MFNs have been treated differently in U.S. and European competition law" and admits "such cases have not been brought in the United States," Jonathan B. Baker & Fiona Scott Morton, *Antitrust Enforcement Against Platform MFNs,* 127 Yale L.J. 2176, 2178, 2194 (2018), and the other concludes that, "[t]o our knowledge there is no empirical work assessing [an] effect" on prices from a platform MFN, Andre Boik & Kenneth S. Corts, *The Effects of Platform Most-Favored Nation Clauses on Competition and Entry*, 59 J.L. & Econ. 105, 129 (2016).

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 2

*Lorain Journal Co.* v. *United States*, 342 U.S. 143 (1951), involved a publisher's attempt to force advertisers to boycott a competitor. *US Airways, Inc.* v. *Sabre Holdings Corp*, 938 F.3d 43 (2d Cir. 2019), addressed a provision prohibiting travel agents from collecting incentive payments unless they used a particular platform for a minimum volume of bookings. And *Osborn* v. *Visa Inc.*, 797 F.3d 1057, 1069 (D.C. Cir. 2015), involved Visa prohibiting ATM operators from charging lower fees to non-Visa cardholders. Here, Amazon does not set a price for third-party sellers' products; it helps consumers by prohibiting third-party sellers from price gouging—charging "significantly higher" prices in Amazon's store than the prices they charge elsewhere.

Plaintiffs argue that courts condemn MFNs "misused to anticompetitive ends." Opp. 6. But none of the cases they cite address consumer-focused policies. Unlike the policies at issue here, which secure favorable prices for *consumers*, Plaintiffs rely on cases where an alleged monopolist uses an MFN to secure for *itself* prices as favorable as its competitors are receiving, *United States v. Delta Dental of R.I.*, 943 F. Supp. 172 (D.R.I. 1996), or prices even more favorable, *United States* v. *Blue Cross Blue Shield of Mich.*, 809 F. Supp. 2d 665 (E.D. Mich. 2011).[2] Plaintiffs also rely on *United States* v. *Apple*, where the court found that an MFN provision was among the tools that Apple used to move publishers to an agency pricing model and to "consciously orchestrate[] a conspiracy" among publishers to fix prices for e-books. 791 F.3d 290, 316 (2d Cir. 2015). But the MFN, standing alone, was not held to be unlawful or anticompetitive; the decision said "nothing about [the MFNs'] broader legality," *id.* at 320, describing MFNs as "otherwise lawful contract terms," *id.* at 319. There is no claim here, as there was in *Apple,* that Amazon used its pricing policies to orchestrate a conspiracy among third-party sellers.

Finally, Plaintiffs argue that the cases Amazon has cited on consumer price protections are inapposite because they either do not use the term "MFN," or involve insurers purchasing on behalf of customers. Opp. 7–9. It is the policies' characteristics, not their labels, that matter. The policies

---

[2] Although the defendants in these cases claimed their policy of obtaining lower costs for themselves benefited consumers, any benefit was indirect and theoretical because it depended on the defendant passing on its savings to its customers. By contrast, Amazon directly seeks lower consumer prices, even though it results in lower commissions to Amazon on each third-party sale.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 3

in the cases Amazon cites were upheld as a matter of law because they required that firms not charge *consumers* more than they were already being charged for goods or services. Amazon's former price parity clause and its Fair Pricing Policy protect consumers in precisely the same way.

### B. Amazon's Fair Pricing Policy Prohibits Price-Gouging.

Amazon's Fair Pricing Policy is also procompetitive as a matter of law because it prohibits price gouging—setting prices on Amazon that are "significantly higher" than prices elsewhere—the same conduct that state statutes prohibit using similar language. Mot. 10–11 & nn.6, 7. Plaintiffs urge the Court to disregard the policy's plain language because the CAC alleges it has the same effect as the former price parity clause. Opp. 5–6. But Plaintiffs' allegations contradict the plain terms of the Fair Pricing Policy, which applies only to prevent sellers from charging customers "significantly higher" prices. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 577 (2007) ("A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")). Nothing in the policy's plain text requires third-party sellers to set prices on Amazon that are equal to the prices they set elsewhere. The Court should "not accept as true allegations contradicting documents that are referenced in the complaint." *Lazy Y Ranch Ltd.* v. *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Sudunagunta* v. *Nantwest, Inc.*, 2017 WL 8811116, at *8 (C.D. Cal. May 16, 2017) (same).

Plaintiffs concede that, to the extent Amazon "punishes third-party sellers," it is only when they set prices "significantly higher than recent prices offered on or off Amazon." Opp. 6. None of Plaintiffs' cited cases holds that a policy protecting consumers from "significantly higher" prices violates the antitrust laws.[3] Such a holding would be counter to law and common sense.

### II. Plaintiffs Cannot Allege Concerted Action, Requiring Dismissal of the Section 1 Claims.

Plaintiffs argue that millions of third-party sellers individually agreeing to be bound by the Business Solutions Agreement containing the former parity provision, or the separately published Fair Pricing Policy, is "concerted action" among all of them for a Section 1 claim. Opp. 9–10.

---

[3] A ruling that the Fair Pricing Policy is lawful and procompetitive would significantly affect the scope of discovery, should any of Plaintiffs' claims based on the former price parity clause survive dismissal.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

But that is not what the CAC alleges.  The CAC alleges that Amazon unilaterally imposed the parity provision and Fair Pricing Policy on third-party sellers, CAC ¶¶ 13, 15, and that Amazon has the power to change them unilaterally, *id*. ¶ 168; *see also* Mot. 13.  Plaintiffs even argue that third-party sellers "participate" in the policies "involuntarily or under coercion."  Opp. 9–10.

Ninth Circuit law is clear, and consistent with Supreme Court holdings, that *complying* with a unilateral policy, even if contained in an enforceable contract, does not constitute "a 'conscious commitment to a common scheme designed to achieve an unlawful objective.'" *Toscano* v. *Pro. Golfers Ass'n*, 258 F.3d 978, 984–85 (9th Cir. 2001) (quoting *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)).  Under Plaintiffs' misguided definition of concerted action, every set of terms and conditions would be concerted action under Section 1.

Plaintiffs' efforts to distinguish *Toscano* fail.  That district court held "the existence of a contract between a party who announces his terms and a party who acquiesces in them does not, without more, give rise to an inference of concerted action under § 1." *Toscano* v. *PGA Tour, Inc.*, 70 F. Supp. 2d 1109, 1115 (E.D. Cal. 1999).  In affirming the decision, the Ninth Circuit reasoned that the alleged co-conspirators' acceptance of the contract showed only that they "accepted the fact that the tournaments would be operated according to the PGA Tour's rules and regulations, not that they agreed to use those rules to restrain trade." *Toscano*, 258 F.3d at 984.  Here, Plaintiffs allege the same fact pattern:  third-party sellers "acquiesced" in the challenged policies that Amazon unilaterally announced (without third-party sellers' participation).  *E.g*. CAC ¶ 106–07. *Toscano* is binding on this Court; *Delta Dental*, 943 F. Supp. 172, an earlier out-of-circuit district court decision inconsistent with *Toscano*, does not control.

Plaintiffs try to avoid *Toscano*, and the other cases Amazon cites (Mot. 12–13), by arguing they do not apply to horizontal price-fixing agreements.  But Plaintiffs ignore that the CAC does not allege that Amazon's policies came into force by *agreement* among millions of third-party sellers and Amazon.[4]  To the contrary, the Fair Pricing Policy puts third-party sellers on notice

---

[4] The alleged restraints are also "not price-fixing," *Blue Cross & Blue Shield United of Wis*. v. *Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995), nor are they horizontal.  Mot. 14-15.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 5

that, if Amazon sees a practice that harms customer trust, such as price gouging, Amazon may take *unilateral* action against that third-party seller.

Plaintiffs also argue that Amazon's cases are inapposite because they involve intrabrand restraints,[5] not agreements between competitors. Opp. 10–11. But Plaintiffs cite no case holding that that distinction matters. The applicable cases hold that Amazon announcing the terms on which it will deal with others is not concerted action. Mot. 12–13.

**III. *Per Se* Treatment Does Not Apply to Plaintiffs' Section 1 Claims.**

"Whether a plaintiff's alleged facts comprise a *per se* claim is normally a question of legal characterization that can often be resolved by the judge on a motion to dismiss." *Prime Healthcare Servs., Inc.* v. *Serv. Empls. Int'l Union*, 2012 WL 3778348, at \*2 (S.D. Cal. Aug. 30, 2012) (internal quotation marks, citation omitted).[6] Plaintiffs do not dispute that "[m]ost restraints challenged under the Sherman Act . . . are subject to the rule of reason." *Nat'l Collegiate Athletic Ass'n* v. *Alston*, 141 S. Ct. 2141, 2155 (2021) (quoting *Ohio* v. *Am. Express Co.*, 138 S. Ct. 2274, 2284 (2018)). In determining whether to deviate from the presumption that the rule of reason applies, a "court cannot consider the particular effects of Defendants' conduct in the case before it, but must instead consider whether conduct like the Defendants', *in general,* has manifestly anticompetitive effects and lack[s] any redeeming virtue." *Penn. Ave. Funds* v. *Borey*, 569 F. Supp. 2d 1126, 1143 (W.D. Wash. 2008) (citation omitted).

Plaintiffs do not cite a single case applying *per se* analysis to an MFN provision. Even in the cases Plaintiffs cite involving MFNs that provided favorable pricing to an alleged monopolist itself (not consumers), courts applied the rule of reason. *E.g. Blue Cross Blue Shield of Mich.*, 809 F. Supp. 2d at 665; *see* Areeda & Hovenkamp ¶ 1807B1 (4th ed. 2021) ("a purely vertical, unilaterally imposed MFN clause is a vertical restraint, ordinarily assessed under the rule of

---

[5] "[I]ntrabrand competition is the competition between the distributors—wholesale or retail—of the product of a particular manufacturer." *Cont'l T. V., Inc.* v. *GTE Sylvania Inc.*, 433 U.S. 36, 52 n.19 (1977).

[6] In arguing that this Court should decide "after discovery" whether to apply the *per se* rule or rule of reason, Opp. 12, Plaintiffs cite *In re Wholesale Grocery Products Antitrust Litig.*, 752 F.3d 728, 733 (8th Cir. 2014), but that case notes which rule applies "'is entirely a question of law.'" (citations omitted).

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

reason."). That is dispositive and requires dismissal of Plaintiffs' *per se* claim.

Plaintiffs try to overcome the absence of any case law supporting application of the *per se* rule here by citing: (1) cases alleging naked horizontal agreements among competitors; and (2) a case involving a hub-and-spokes conspiracy. In the horizontal agreement cases, the *per se* rule was applied not solely because the agreements were horizontal, but because they involved price fixing or market allocation; other allegedly anticompetitive agreements between or among horizontal competitors "do not fall within the narrow category of activity that is *per se* unlawful under § 1 of the Sherman Act." *Texaco* v. *Dagher*, 547 U.S. 1, 8 (2006).[7] The cases on which Plaintiffs rely all involve the narrow category of activity that is *per se* unlawful. *Palmer* v. *BRG of Georgia, Inc.*, involved a naked horizontal agreement among competitors to allocate markets. 498 U.S. 46 (1990). The quoted portion of *Leegin Creative Leather Products, Inc.* v. *PSKS, Inc.*, referenced a "horizontal cartel" to increase prices. 551 U.S. 877, 893 (2007). And *Starr* v. *Sony BMG Music Entertainment* involved horizontal competitors agreeing with one another to use MFNs to enforce a wholesale price floor. 592 F.3d 314, 320, 323–24 (2d Cir. 2010). These cases are a far cry from a store's low-price provision designed to protect its consumers from high prices.

The CAC also does not allege a hub-and-spokes conspiracy. In contrast to *Apple*, in which Apple orchestrated a price-fixing conspiracy among publishers (*see* § I.A *supra*), the CAC alleges millions of separate vertical relationships between Amazon and each of its third-party sellers, but no interaction between or among those sellers. Plaintiffs have alleged, at most, a "rimless wheel"— "a collection of purely vertical agreements"—which cannot, as a matter of law, give rise to a *per se* claim. *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1193 n.3 (9th Cir. 2015). Competition between Amazon and third-party sellers in a different context does not change this vertical relationship. *Dimidowich* v. *Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986) ("Although a manufacturer's relationship with its distributors has an horizontal aspect when

---

[7] *Krehl* v. *Baskin-Robbins, Ice Cream Co.*, 664 F.2d 1348, 1356 (9th Cir. 1982), held dual-distributor relationships should *not* be subject to the *per se* rule because of the absence of Supreme Court or Ninth Circuit precedent "squarely" addressing "whether dual distribution systems fall within the rule of per se illegality."

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 7

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

it acts as a distributor itself, it remains primarily a vertical relationship."); Mot. 15.

## IV. Plaintiffs' Alleged Product Markets Are Facially Unsustainable.

Plaintiffs agree they must plead facially sustainable relevant markets, but their claims depend on alleged markets that defy how consumers shop. Whether purchasing products online, in a physical store, or a hybrid channel: "To shoppers, it's all just 'shopping.'" CAC ¶ 96 n.115.[8]

### A. Plaintiffs Implausibly Allege Exclusively Online Markets of Millions of Non-Interchangeable Consumer Products.

Plaintiffs allege facially implausible markets—Online Retail Sales and Online Retail Marketplaces—that do not reflect the "commercial realities" of how consumers shop. *United States* v. *Grinnell Corp.*, 384 U.S. 563, 572 (1966). The alleged markets are under-inclusive because consumers purchasing baby wipes will find reasonable substitutes in their local grocery store or pharmacy, but Plaintiffs' market definition excludes those offline substitutes. And they are also over-inclusive because they include 12 million consumer products ranging from golf balls to cereal that cannot be used for the same purpose. Plaintiffs seek to justify these alleged markets by arguing that shopping online has "distinctive characteristics" and that "clustering applies to Amazon." Opp. 15, 20. Neither argument cures these fatal flaws.

An alleged market that does not "encompass the product at issue as well as all economic substitutes of the product" must be dismissed for being "facially unsustainable." *Spindler* v. *Johnson & Johnson Corp.*, 2011 WL 12557884, at *2 (N.D. Cal. Aug. 1, 2011) (quoting *Newcal Indus., Inc.* v. *Ikon Office Sol'n*, 513 F.3d 1038, 1054 (9th Cir. 2008)). Plaintiffs' alleged markets are "facially unsustainable" for at least two reasons: First, Plaintiffs fail to allege any facts showing how the "distinctive characteristics" of online shopping affect whether customers view identical products offered online and in physical stores as functional substitutes. In other words, Plaintiffs do not explain why consumers would not switch back and forth between online and physical stores

---

[8] Plaintiffs selectively quote from an article, claiming it addresses "key differences" between "online and brick-and-mortar retailers." Opp. 16 & n.18 (citing Anna Johansson, *6 Differences Between E-Commerce & Brick-and-Mortar Stores*, RetailNext (Mar. 27, 2018), https://retailnext.net/blog/6-differences-between-e-commerce-brick-and-mortar-stores). But the article explains while it is "worthwhile to understand [these differences] *if you're planning to launch a retail business*," to *consumers* "it's all just 'shopping.'" CAC ¶ 96 n.115 (emphasis added)*.*

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 8

in response to changes in price or quality.

Second, Plaintiffs' use of the term "clustering" does not cure the fatal deficiencies in these alleged markets. Plaintiffs cannot aggregate 12 million non-interchangeable products into a single cluster market absent some allegations addressing the "critical question that must be answered when determining whether a particular product should be included in a cluster market: are the items subject to the same competitive conditions?" *Fed. Trade Comm'n* v. *Staples, Inc.*, 190 F. Supp. 3d 100, 123 (D.D.C. 2016). Plaintiffs do not, and cannot, make such an allegation. *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1181 (W.D. Wash. 2021) (granting motion to dismiss where alleged cluster market ignored "the 'definite rule' of antitrust law that a relevant market must include commodities reasonably interchangeable by consumers").

Plaintiffs' reliance on *Federal Trade Commission* v. *Whole Foods Market, Inc.*, 548 F.3d 1028 (D.C. Cir. 2008), only demonstrates why the CAC must be dismissed. There, the Court and the FTC defined a market of retailers selling a defined *package* of products (premium, natural and organic foods) to "a central group of customers for whom 'only [that package] will do'"—"a core group of particularly dedicated 'distinct customers' paying 'distinct prices." *Id.* at 1038–39 (citation omitted). "What motivates antitrust concern for such customers is the possibility that 'fringe competition' for individual products within a package may not protect customers who need the whole package." *Id.* at 1038 (citation omitted). Here, Plaintiffs have not alleged a core group of customers purchasing a defined package of products such that the sale of the package is itself a relevant market. Plaintiffs allege that they purchased a wide variety of goods from Amazon, ranging from electronics to clothing to groceries. CAC ¶¶ 33–41, 64–65.[9]

Plaintiffs quote from a recent treatise stating that cluster market analysis "is one way" to examine whether Amazon has market power "in retailing." Opp. 20–21 (quoting Areeda &

[9] Plaintiffs mischaracterize *PepsiCo, Inc.* v. *Coca Cola Co.*, 114 F. Supp. 2d 243, 245–55 (S.D.N.Y. 2000), as standing for the proposition that "markets can be defined by retailers' method of sale" alone. Opp. 20. The court described methods of sale as one potential product characteristic in its analysis of the *Brown Shoe* "practical indicia" in determining whether "fountain syrup delivered by an independent foodservice distributor" could be a distinct submarket (which it was not). *PepsiCo*, 114 F. Supp. 2d at 254–55. A case on fountain syrup does not justify lumping millions of non-interchangeable consumer products in a single market.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 9

Hovenkamp ¶ 565c2).  But Plaintiffs have not alleged a retailing market in which the "array of products" Amazon sells is the product consumers demand.  And as the treatise makes clear, "[c]lustering noncompeting products for purposes of market-power analysis requires more than the simple observation that the products are sold in the same store or on the same website."  Areeda & Hovenkamp ¶ 565c2.  The CAC does not allege facts demonstrating either that all products in the alleged markets are subject to similar competitive conditions or that a core group of dedicated distinct customers are paying distinct prices for all such products.

**B.  Plaintiffs Impermissibly Add Allegations in Their Opposition, and in Any Event, Those Allegations Are Deficient.**

Plaintiffs' proposed Online Retail Marketplace market also fails because the CAC does not plausibly allege a distinct market of online marketplaces (excluding single-merchant online retailers).  Plaintiffs attempt to cure this deficiency by making arguments that contradict the CAC's allegations.  But, in "determining the propriety of a Rule 12(b)(6) dismissal, 'a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.'"  *Capitol W. Appraisals, LLC* v. *Countrywide Fin. Corp.*, 759 F. Supp. 2d 1267, 1273 (W.D. Wash. 2010) (citation omitted).

First, Plaintiffs deny, Opp. 15, that their proposed Online Retail Marketplace market is necessarily a proposed submarket of the Online Retail Sales Market, but the CAC defines that market as a subset of a "*broader market* for U.S. online retail sales."  CAC ¶ 92 (emphasis added).  This market fails because it is not economically distinct.  Mot. 20–21.

Second, Plaintiffs argue that "online retail marketplaces sell *marketplace services* to third-party merchants and consumers."  Opp. 18.  But consumers do not shop for "marketplace services," they shop for goods, and Plaintiffs' sole claimed injury relates to the prices they pay for goods.  CAC ¶¶ 151, 164.  The CAC ignores the alternative sellers consumers would plausibly turn to in the event of a price change and lacks any factual allegations to support the idea that consumers do not view goods in "single merchant online stores" to be substitutes for those in online marketplaces.  As a matter of common sense, consumers can buy the same toothpaste and cereal

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 10

from a single merchant online store such as Safeway as from an online marketplace.  The Court is not "require[d] to ignore its common sense."  *McCagg* v. *Marquis Jet Partners, Inc.*, 2007 WL 2454192, at *6 (S.D.N.Y. July 27, 2007) (rejecting implausible product market).

Third, Plaintiffs argue that "Online retail marketplaces have 'distinct customers, distinct prices,' and 'specialized vendors' because only online retail marketplaces compete for third-party merchants."  Opp. 18–19.  But these conclusory arguments in no way refute that for consumers "it's all just shopping."  CAC ¶ 96 n.115.  "Whether one product is reasonably interchangeable for another depends not only on the ease and speed with which customers can substitute it and the desirability of doing so, but also on the cost of substitution which depends most sensitively on the price of the products."  *Whole Foods, Inc.*, 548 F.3d at 1037 (citation omitted).  Plaintiffs fail to allege any facts addressing cross-elasticities of demand or the cost of substitution between online retail marketplaces and specialized vendors, much less for 12 million consumer goods.

Finally, Plaintiffs attempt to redefine their alleged Online Retail Marketplaces market as a "two-sided transaction platform market," Opp. 19, but the CAC fails, as a matter of law, to allege such a market:  it does not contain factual allegations addressing competition on both sides of the alleged platform (i.e., sellers of 12 million goods and consumers of such goods).  *Am. Express*, 138 S. Ct. at 2287 ("Evaluating both sides of a two-sided transaction platform is also necessary to accurately assess competition"); *US Airways,* 938 F.3d at 57 ("In cases involving two-sided *transaction* platforms, the relevant market must, as a matter of law, include both sides of the platform."); *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 344–45 (E.D.N.Y. 2019) (assessing interchangeability from the perspective of merchants and cardholders); *Coronavirus Rep.* v. *Apple, Inc.*, 2021 WL 5936910, at *12 (N.D. Cal. Nov. 30, 2021) (dismissing complaint for failure to evaluate "both sides of a two-sided transaction platform").

## V.     Plaintiffs Fail to Establish Antitrust Standing.

In arguing their direct-purchaser status establishes antitrust injury, Opp. 21, Plaintiffs ignore the additional requirements of antitrust standing—an injury, which is neither remote nor speculative, and which is linked directly to alleged anticompetitive conduct rather than through a

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 11

complex, multi-step chain of causation. *Lucas* v. *Bechtel Corp.*, 800 F.2d 839, 844–45 (9th Cir. 1986). Whether a plaintiff "suffered a special kind of antitrust injury" is a separate question from whether that plaintiff is "an efficient enforcer of the antitrust laws." *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 138 (2d Cir. 2021). Although both are required for antitrust standing, Plaintiffs conflate these independent requirements and fail to show they have pled any injury proximately caused by the alleged anticompetitive conduct.

Plaintiffs rely on *Apple* v. *Pepper*, but the "sole question presented" there was whether purchasers of iPhone apps were "direct purchasers from Apple." 139 S. Ct. 1514, 1520 (2019). Amazon does not seek dismissal because Plaintiffs are not direct purchasers, but because they lack antitrust standing: an *injury flowing directly* "from the alleged antitrust violation." *Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th at 139–41; Mot. 23. The injury must occur "at the first step following" the defendant's alleged anticompetitive conduct. *Id.* at 140. Plaintiffs rely on multiple CAC paragraphs to show a direct injury, but they describe a multi-step causal chain with Plaintiffs' alleged injury occurring far down the chain. Opp. 23. For example, the CAC alleges that the so-called MFNs cause Amazon and other online marketplaces to charge supracompetitive third-party seller fees. CAC ¶¶ 12, 102. This is the first step in the causal chain—where the injury would need to be—but this is not where Plaintiffs suffered their alleged injury. In the next steps, as linchpins to their theory, the CAC alleges that other competing marketplaces would charge lower commissions; after that, the next step would be that in response to lower commissions, third-party sellers would lower their prices. *E.g.* CAC ¶ 102. This purported injury is far too speculative and indirect. *Lucas*, 800 F.2d at 844.[10]

## CONCLUSION

The Court should grant the motion and dismiss Plaintiffs' claims with prejudice.

---

[10] Neither *Shane Grp., Inc.* v. *Blue Cross Blue Shield of Mich.*, 2012 WL 5990219, at \*4 (E.D. Mich. Nov. 30, 2012), nor *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at \*14 (S.D.N.Y. Mar. 28, 2014), addressed whether the claimed injury was sufficiently direct.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 12

DATED this 18th day of January, 2022.

Davis Wright Tremaine LLP

*s/ Stephen M. Rummage*
Stephen M. Rummage, WSBA #11168
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
E-mail: steverummage@dwt.com
E-mail: maryannalmeida@dwt.com


Paul, Weiss, Rifkind, Wharton & Garrison LLP

*s/ Karen L. Dunn*
Karen L. Dunn (*pro hac vice)*
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Martha L. Goodman (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C.
Telephone: (202) 223-7300
Fax: (202) 223-7420
E-mail:  kdunn@paulweiss.com
E-mail:  wisaacson@paulweiss.com
E-mail:  amauser@paulweiss.com
E-mail:  mgoodman@paulweiss.com
E-mail:  ksmith@paulweiss.com

Attorneys for AMAZON.COM, Inc.

REPLY IN SUPPORT OF
MOTION TO DISMISS (2:21-cv-00693-RSM) - 13