1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELIZABETH DE COSTER et al., on behalf of
themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware
corporation,

Defendant.

Case No. C21-693RSM

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO
DISMISS

## I.      INTRODUCTION

This matter comes before the Court on Defendant Amazon.com, Inc. ("Amazon")'s Motion to Dismiss, Dkt. #35.  Plaintiffs have filed an opposition brief, Dkt. #39.  The parties have filed numerous notices of supplemental authority.  Dkts. #44, #45, #47, #51, #52, and #55.

The Court can rule on this Motion without oral argument.  For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Amazon's Motion.

## II.      BACKGROUND

For purposes of this 12(b)(6) Motion, the Court will accept all facts in the Consolidated Amended Complaint ("CAC" or "Amended Complaint"), Dkt. #20, as true.  Unless stated otherwise, the following facts are drawn from that pleading.

Defendant Amazon operates the largest online retail marketplace in the United States. Amazon sells its own goods, but also designed its marketplace to be a platform where third-party merchants can register and list their goods for Amazon to sell.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 1

Third-party merchants post their products on the platform, which Amazon presents to users together with its own goods according to a certain algorithm that takes the form of a ranking list.

At the time the pleading was drafted, Amazon's marketplace accounted for over 50% of all online retail sales revenue in the United States. By comparison, Amazon's two closest competitors, eBay and Walmart, accounted for only 6.1% and 4.6%, respectively, of that revenue.

Many third-party merchants listing their goods on Amazon's marketplace also sell their goods on other platforms—including on their own websites and on competing online marketplaces.

Amazon competes both (a) as a retailer against the third-party merchants that list their goods on Amazon's marketplace, and (b) as a marketplace, against other online retail marketplaces, such as eBay and Walmart, where third-party merchants can list their goods.

Amazon is critical to the financial success of its third-party merchants. Almost half of the third-party merchants who list their goods on Amazon's marketplace generate between 81% and 100% of their revenues on it.

The Amended Complaint asserts that Amazon charges higher fees for third-party merchants than competitor marketplaces and that these inflated fees are passed on to customers like Plaintiffs through higher prices.

In a competitive market, third-party merchants would be able to sell their products for less in competitor marketplaces.  Amazon bars this type of competition by imposing on third-party merchants Platform "Most Favored Nation ("MFN") policies, or did so during the

relevant time period.  Amazon's MFN policies forbid third-party merchants from listing their goods anywhere else on the internet at prices lower than their Amazon list prices.

An investigation by the House of Representatives Judiciary Committee's Subcommittee on Antitrust, Commercial, and Administrative Law (the "House subcommittee on antitrust") found that "Amazon has a history of using MFN clauses to ensure that none of its suppliers or third-party sellers can collaborate with an existing or potential competitor to make lower-priced or innovative product offerings available to consumers."

Amazon imposes its MFN policies on third-party merchants through the Amazon Business Solutions Agreement (BSA).  Every third-party merchant that registers to list goods on Amazon's marketplace must "agree[] to the terms of the [BSA] and the policies incorporated in that agreement."

Until March 2019, Amazon enforced its MFN policies through BSA's "Price Parity Clause," which expressly prohibited third-party merchants from listing goods on other online retail platforms—whether marketplaces or single-merchant websites—at prices lower than their Amazon list prices. In late 2013, because of German and United Kingdom antitrust proceedings, Amazon voluntarily abandoned its price parity clause on an EU-wide basis. Amazon continued to enforce that clause in the United States for six more years.

Even after withdrawing this clause, Amazon continues to enforce MFN-type policies through its so-called "Fair Pricing" Policy.  This policy in the BSA states that, if a third-party merchant engages in pricing practices with regard to "a marketplace offer that harms customer trust," Amazon may impose sanctions.  According to the policy, a "pricing practice that harms customer trust" occurs if a merchant lists goods on a competing online retail platform at prices that are significantly below its Amazon list prices.  Sanctions include making the merchant's

product ineligible for a feature (the "Buy Box" button) that would make the product the most visible and easiest to purchase among similar goods; removing the third-party merchant's goods from Amazon's marketplace; suspending shipping options for the merchant's goods; and terminating or suspending the merchant's ability to have any goods sold on Amazon's marketplace.

The intent and effects of the "Fair Pricing" Policy are the same as those of the former Price Parity Clause.  These effects can be anticompetitive by, e.g., preventing merchants from listing their goods at lower prices on other platforms that charge lower (or no) fees, and preventing other online retail marketplaces from competing with Amazon by hosting those third-party merchants' products at lower prices.  Taking these pled facts as true, Amazon's MFN policies cause Amazon customers to pay more for goods purchased on its marketplace than they would pay in a competitive market.

Amazon enforces these policies by, *e.g.*, systematically monitoring the prices listed by third-party merchants on other online retail platforms.

Named Plaintiffs are residents of Maryland, Washington, D.C., Illinois, Texas, Tennessee, and Connecticut who purchased numerous goods from Amazon's marketplace, including those listed by third-party merchants.  They bring this action on behalf of themselves, and as a class action on behalf of all persons who, on or after May 26, 2017, purchased one or more goods on Amazon's marketplace.

The Amended Complaint includes causes of action for per se and not per se violation of the Sherman Act under 15 U.S.C. § 1 (First and Second Causes of Action), violation of the Sherman Act under 15 U.S.C. § 2 for monopolization (Third Cause of Action), and violation of the Sherman Act under 15 U.S.C. § 2 for attempted monopolization (Fourth Cause of Action).

### III.   DISCUSSION

**A.  Legal Standard under Rule 12(b)(6)**

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted).  However, the court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id*. at 678.  This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Absent facial plausibility, a plaintiff's claims must be dismissed.  *Id*. at 570.

**B.  Analysis**

Amazon's first argument for dismissal is that its MFN policies are legal as a matter of law.  Dkt. #35 at 16.  Amazon recharacterizes the policies found in the Amended Complaint as a "Retail Competitive Price Provision" and an "Anti-Gouging Policy."  *Id*.  Amazon argues that its policies "provide for competitive prices to consumers, rather than for itself" and that "[n]o court has ever condemned competitive price policies like these."  *Id*.

The fact that no Court has ever found a policy like these to violate the Sherman Act does not, in itself, render these claims implausible.  Amazon goes on to argue that certain cases

1   have found that "competitive price provisions favoring consumers… do not violate the antitrust

2   laws." *Id.* (citing *Kartell v. Blue Shield of Mass. Inc.*, 749 F.2d 922, 928-29 (1st Cir. 1984)).

3        The Court finds that the facts alleged in this case are not sufficiently analogous to those

4   in *Kartell* or its progeny of insurance cases.  Making all inferences in the light most favorable

5   to the non-moving party, Plaintiffs' facts are adequate to escape the legal conclusions of those

6

7   cases.  To the extent Amazon is asking the Court to construe the facts in an unfavorable light,

8   such is contrary to Rule 12(b)(6) and premature given the undeveloped factual record.  *See,*

9   *e.g.,* Dkt. #35 at 18-19 ("…to the extent Plaintiffs' claims are based on the MFPP, they should

10  be dismissed because the CAC's characterization of the policy as an MFN is demonstrably

11  incorrect…. The Court should hold the MFPP procompetitive as a matter of law because it

12
    benefits consumers").
13

14       Amazon's second point is that the First Cause of Action fails to allege any "concerted

15  action."  *Id.* at 19.  It argues "[c]ourts routinely dismiss Section 1 claims where the claim rests

16  only on one party's establishment or enforcement of contract terms or policies that another
17
    party is required to follow."  *Id.* at 20.  Amazon cites to, *inter alia*, *Sambreel Holdings LLC v.*
18
19  *Facebook, Inc.*, 906 F. Supp. 2d 1070, 1076 (S.D. Cal. 2012) where "the plaintiff alleged that

20  Facebook's contract with Application Developers 'includes a provision that obligates

21  Application Developers to use only the Advertising Partners that have been approved by

22  Facebook,' and…. The court held the complaint lacked 'sufficient facts to support the
23
    allegation that there was concerted effort among the Application Developers and Facebook, as
24
25  is required by the express terms of Sherman Act § 1, as opposed to unilateral action on the part

26  of Facebook.'"  *Id.*  Plaintiffs respond that "Amazon seeks to pass off its binding agreements

27  containing price restrictions with third-party merchants as if the conduct at issue were nothing

28

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 6

more than Amazon's own 'independent' or 'unilateral' conduct…. But here the third-party merchants are active participants in the price restraint, even if Amazon is the one driving it." Dkt. #39 at 17.  Plaintiffs run through Amazon's other cited cases supporting its argument and conclude:

> These cases do not control here, because Amazon's MFN policies are neither vertical price restraints (they do not place conditions on the resale of Amazon's own products), nor intrabrand price restraints (they restrain competitive pricing across all brands and unbranded goods that third-party merchants sell on Amazon's platform, even though produced and supplied by companies other than Amazon). Put simply, Amazon and each third-party merchant has entered into a horizontal price-fixing agreement that controls how third-party merchants set prices for goods that directly compete with Amazon's goods.  The merchants participate in this conduct—albeit unwillingly—by setting prices in compliance with the agreed-upon price restraint. This conduct plainly satisfies the requirement of a concert of action under Section 1.

*Id*. at 19–20.

For purposes of this Motion to Dismiss, the Court agrees with Plaintiffs that Amazon has failed to demonstrate a lack of concerted action, or that concerted action is implausible. Taking the facts in the light most favorable to Plaintiffs, the third-party merchants are active participants who set their prices and otherwise engage with Amazon's policies in an active, albeit allegedly unwilling, way.   This affects horizontal competitors in a unique way not analogous to the cases cited by Amazon.

Amazon next maintains that the third cause of action, for *per se* violation of Section 1, should be dismissed because that rule is limited to agreements between horizontal competitors. Dkt. #35 at 21–22.  Per se liability is reserved for only those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) (citing *National Soc. of Professional Engineers v.*

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 7

*United States*, 435 U.S. 679, 692, 98 S. Ct. 1355, 55 L. Ed. 2d 637 (1978)).  "Price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are per se unlawful." *Id*.

Plaintiffs argue that "[a]ll the Supreme Court requires for per se liability is an agreement among 'competing retailers' to 'reduce[] competition in order to increase price.'" Dkt. #39 at 20 (citing *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877, 893 (2007)).

Plaintiffs do not allege there is an agreement among competing retailers to reduce competition in order to increase price.  The facts are significantly more complicated than that.  The Amended Complaint essentially includes the "elaborate study of the industry" contemplated by the Court in *Texaco*, *supra*.  As the Court understands it, Plaintiffs allege an unfavorable agreement between Amazon and third-party retailers who use its marketplace, not between Amazon and competing marketplaces.  That Amazon and the third-party retailers sometimes compete within the Amazon marketplace adds a layer of complexity, it does not clarify liability.  Per se liability is not available on these facts.  Accordingly, this cause of action is properly dismissed under Rule 12(b)(6).

Fourth, Amazon argues Plaintiffs "fail to allege facially plausible product markets." Dkt. #35 at 25.   More specifically, Amazon alleges that Plaintiffs have "unnaturally gerrymandered" the relevant market by "excluding physical retailers," *id*., and that Plaintiffs' relevant market "includes products that are not reasonably interchangeable," *id.* at 27.

"Under the rule of reason, plaintiffs must plead a relevant market to state an antitrust claim under Sections 1 or 2 of the Sherman Act." *PBTM LLC v. Football Nw., LLC*, 511 F. Supp. 3d 1158, 1179 (W.D. Wash. 2021).  A "complaint may be dismissed under Rule 12(b)(6)

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 8

if the complaint's 'relevant market' definition is facially unsustainable." *Hicks v. PGA Tour, Inc.*, 897 F.3d 1109, 1120 (9th Cir. 2018) (internal quotation marks omitted).

Plaintiffs counter Amazon's intense and thorough legal arguments on this point with the following:

> … the CAC plausibly alleges two alternative markets: an Online Retail Marketplace Market and an Online Retail Sales Market. CAC ¶¶ 64- 139. The Online Retail Marketplace Market is made up of online platforms, like eBay and Walmart, that provide the services "that enable consumers to buy retail goods listed by multiple independent sellers." *Id*. ¶ 64. The Online Retail Sales Market includes all online retail sales. *Id*. ¶ 69. The contours of these two markets are well supported by Plaintiffs' allegations and by economic consensus.

Dkt. #39 at 23.  Plaintiffs say Amazon is prematurely attacking the facts, and that the proper test at this stage is whether Plaintiffs' markets are "facially unsustainable." *Id*. (citing *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1045 (9th Cir. 2008)).

The Court finds the relevant market definitions in the Amended Complaint sustainable on their face.  Amazon's arguments are fact-based and premature, essentially asking the Court to hear expert testimony at the motion-to-dismiss stage of litigation.  That is not how civil litigation is supposed to proceed and will not serve as a basis for dismissal under Rule 12(b)(6).

Fifth, Amazon assert that "Plaintiffs allege a multi-step causal chain of injury that is too attenuated to plausibly allege antitrust injury."  Dkt. #35 at 30.  Amazon characterizes Plaintiffs claims thusly:

> Plaintiffs contend that Amazon's alleged MFN policies first, "nullified competition by other online retail marketplaces on the basis of fees," which, second, allegedly caused "Amazon to continue to charge supracompetitive fees for the use of its marketplace." CAC ¶ 102. Plaintiffs then allege that, third, "third-party merchants would rationally have set lower prices for their goods on their own websites and on competing online retail marketplaces with lower fees." *Id*. Fourth, "in turn, competing

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 9

> online retail marketplaces would have lowered their fees to compete with Amazon on price, or—if their fees were already lower—better succeeded at driving marketplace-level competition by attracting more third-party merchants and more consumers." *Id*. Fifth, Plaintiffs allege "these market forces would have resulted in competitive pressure that would have forced Amazon to lower its fees," and sixth, "to lower the prices for its own goods." *Id*. Based on this six-step chain of causation, Plaintiffs allege Amazon has "kept overall prices high on its marketplace and, therefore, across all online retail marketplaces." *Id*.

*Id*. at 30–31.

The Court finds that Plaintiffs' allegations, although complicated, are not as complicated as Amazon would have it and are not too attenuated to plausibly allege antitrust injury. In the light most favorable to the nonmoving party, this causal chain could be summarized as Plaintiffs put forth in their Response brief: "Amazon's MFN policies restrain competition in ways that cause consumers to pay supra-competitive prices directly to Amazon." Dkt. #39 at 30. Plaintiffs point to *Apple v. Pepper*, 139 S. Ct. 1514, 1519 (2019) as factually analogous. Plaintiffs argue that "Amazon's argument that third-party merchants make 'independent pricing decisions' also defies the CAC, which alleges that Amazon uses its MFN policies to block third-party merchants from making truly independent pricing decisions. *Id*. at 31 (citing CAC ¶¶ 100-121). Plaintiffs' point is plausible.

Finally, Amazon contends that Plaintiffs' injuries arise from "conduct in a different market," *i.e.* Plaintiffs paid supra-competitive prices for retail goods based on Amazon's actions in a different market toward different actors—policies applied and fees charged to third-party sellers. Dkt. #35 at 32. "Where plaintiffs allege injury in a market other than the market in which anticompetitive conduct is alleged to occur, courts dismiss antitrust claims for lack of antitrust standing." *Id*. (citing *Feitelson v. Google Inc.*, 80 F. Supp. 3d 1019, 1027-28 (S.D. Cal. 2015) ("Plaintiffs allege that they suffered antitrust injury in the form of

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 10

supracompetitive pricing in Android phones, which is not the market in which the alleged anticompetitive conduct occurred.")

The Court finds that Plaintiffs allege a valid injury here, even if third-party merchants also have their own cause of action for lost profits. *See In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009).

## IV.   CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendant Amazon's Motion to Dismiss, Dkt. #35 is GRANTED with respect to Plaintiffs' First Cause of Action. Plaintiffs' First Cause of Action, for Violation of the Sherman Act 15 U.S.C. § 1 Per Se, is DISMISSED. Although leave to amend would typically be granted, it is not granted here as Plaintiffs would have to significantly re-work the pleadings in order to bring this claim. Plaintiffs may move for leave to amend if they so choose. The Motion is DENIED as to all other claims.

2) The parties are to promptly propose a class certification briefing schedule. *See* Dkt. #41.

DATED this 24th day of January, 2022.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS - 11