The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ELIZABETH DE COSTER *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.COM, INC., a Delaware corporation,

Defendant.

No. 2:21-cv-00693-RSM

**PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER TO PREVENT DISCOVERY OF PRESCRIPTIONS AND LIMIT DISCOVERY OF BRICK-AND-MORTAR PURCHASES**

NOTE ON MOTION CALENDAR:
April 14, 2023

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER
Case No. 2:21-cv-00693-RSM

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................... 1

II.   BACKGROUND ............................................................................................................. 2

III.  ARGUMENT .................................................................................................................. 5

        A.    Prescription Medical Purchases Are Not Relevant and Their Production Would Unnecessarily Invade Plaintiffs' Medical Privacy. ............................................................................................................... 6

        B.    Plaintiffs Should Not Be Burdened with Preserving and Producing All Hard-Copy Documents Regarding Brick-and-Mortar Purchases ....................................................................................................... 10

IV.   CONCLUSION ............................................................................................................. 12

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - i
Case No. 2:21-cv-00693-RSM



1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Sales Co. v. Astrazeneca AB,*
2011 WL 1465786 (S.D.N.Y. Apr. 14, 2011)...................................................................8

*In re Asacol Antitrust Litig.,*
2017 WL 11476172 (D. Mass. Jan. 3, 2017)...............................................................8, 11

*In re Cox Enters.,*
2014 WL 104964 (W.D. Okla. Jan. 9, 2014)...............................................................8, 11

*EEOC v. Big Five Corp.,*
2018 WL 2317613 (W.D. Wash. May 22, 2018)...........................................................6, 7

*Freed v. Home Depot U.S.A., Inc.,*
2019 WL 183833 (S.D. Cal. Jan. 14, 2019)......................................................................8

*Prado v. Equifax Info. Servs. LLC,*
331 F.R.D. 134 (N.D. Cal. 2019).................................................................................6, 7

*Rochester Drug Coop. v. Braintree Lab'ys, Inc.,*
2011 WL 13098292 (D. Del. June 15, 2011)...............................................................8, 9

*Saavedra v. Eli Lilly & Co.,*
2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ..................................................................6

*Stanislaus Food Prod. Co. v. USS-POSCO Indus.,*
2012 WL 1940662 (E.D. Cal. May 29, 2012) ..................................................................6

### OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1)..................................................................................................11

Fed. R. Civ. P. 26(b)(2)(C) .........................................................................................5, 11

Fed. R. Civ. P. 26(c)(1)....................................................................................................6

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - ii
Case No. 2:21-cv-00693-RSM


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## I.     INTRODUCTION

Amazon has engaged in a classic defense tactic—bullying individual Plaintiffs with unnecessarily burdensome and potentially embarrassing discovery requests—in this action and in the related action *Frame-Wilson v. Amazon*, 2:20-cv-00424-RAJ. And they've succeeded; several named Plaintiffs in *Frame-Wilson* have recently voluntarily dismissed their claims. Plaintiffs therefore move for a protective order to prevent irrelevant and disproportionate discovery into their protected prescription medical purchases, and to avoid the undue burden of preserving, collecting, reviewing, and producing every hard-copy document related to every brick-and-mortar retail purchase they have made, or will make for some lengthy period into the future.

*First*, Plaintiffs seek to prevent discovery of their *medical prescriptions*, which are subject to obvious privacy concerns that were not waived by filing this lawsuit. Plaintiffs allege that Amazon's anticompetitive rules for its third-party sellers' online pricing caused Plaintiffs to pay inflated online prices for ordinary consumer goods when they made purchases on Amazon. These claims do not include purchases made through a prescription for a simple reason: Amazon *prohibits* prescription sales on Amazon Marketplace. Plaintiffs have not alleged that the highly regulated and restricted medical prescription products market was affected by Amazon's anticompetitive conduct. If Amazon wants to argue that prescription medical purchases are substitutable with non-prescription medical goods available on Amazon Marketplace, it can do so without invading Plaintiffs' medical privacy. Plaintiffs have never alleged that the challenged agreements apply to products that could be *substituted* for those sold on Amazon Marketplace. Nonetheless, to avoid burdening the Court unnecessarily, Plaintiffs proposed that if Amazon produced (in response to Plaintiffs' own requests for production) documents sufficient to show any non-prescription medical products sold on Amazon Marketplace during the Class Period, Plaintiffs would search for and produce records of any identical products that Plaintiffs purchased with a prescription. When Amazon refused and made an unreasonable counterproposal, Plaintiffs were forced to seek a protective order.

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 1
Case No. 2:21-cv-00693-RSM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

*Second*, Plaintiffs seek protection from Amazon's irrelevant, burdensome, and disproportionate demand that they collect, preserve, review, and produce all hard-copy receipts and other indicia of purchases made at brick-and-mortar stores, and continue to do so for a lengthy period. This information has minimal (if any) relevance. Plaintiffs have not placed their brick-and-mortar purchases at issue—Plaintiffs' claims here are for purchases made on Amazon. Nor are they relevant to contest Plaintiffs' market definition: courts have consistently ruled that individual purchases may not be used to determine the existence of a market. Moreover, Amazon incessantly monitors its competitors' prices and thus it owns aggregated data sources that are more relevant and less burdensome for a market definition inquiry than Plaintiffs' individual purchases. Finally, Plaintiffs already offered to conduct a reasonable search to produce electronic records reflecting their brick-and-mortar purchases. This burdensome requirement that Plaintiffs also save and produce *paper copies for the span of a year or more* is not proportionate to the needs of the case and serves as little more than an improper pressure tactic to discourage Plaintiffs from participating in this lawsuit.

Plaintiffs therefore seek a protective order holding that: (1) Plaintiffs need not preserve or produce records of prescription medical purchases (and may redact such information from documents they otherwise produce), and Amazon may not seek further discovery on this topic such as through interrogatories or depositions; and (2) Plaintiffs need not preserve or produce hard-copy paper documents related to brick-and-mortar purchases.

## II.   BACKGROUND

Plaintiffs are proposed consumer class representatives in a putative class action against Amazon for price fixing and monopoly abuse.[1] They allege that Amazon violated antitrust laws by agreeing with its Amazon Marketplace third-party sellers that they would not sell the goods they offer on other online channels at a lower price than they offer on Amazon Marketplace. "Amazon's MFN policies harm competition and cause consumers to pay higher prices than they

---

[1] While Amazon's Requests were initially served on the plaintiffs in the *Frame-Wilson* case, given the overlap in issues between the *Frame-Wilson* and *De Coster* cases, during the parties' 26(f) conference in *De Coster* and a subsequent meet and confer, Amazon informed Plaintiffs that Amazon would seek the same documents from the *De Coster* Plaintiffs. Ex. F (parties' email exchange), at 4-6.

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 2
Case No. 2:21-cv-00693-RSM

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

would in a competitive market (1) for goods listed by third-party merchants on Amazon's marketplace; . . . and (3) for goods listed by Amazon itself, as a retailer, on its marketplace." Consolidated Amended Complaint (ECF 20) ¶ 28, ¶ 89 ("Absent Amazon's MFN policies, American consumers would have purchased more goods at lower prices . . . ."). Plaintiffs have limited their claims to those arising out of online retail purchases on the Amazon Marketplace. *Id.* ¶ 141.

Amazon issued several Requests for Production (RFPs) broadly seeking documents relating to Plaintiffs' retail purchases. Plaintiffs timely objected in writing to Amazon's RFP Nos. 2-7, 9, 11-12, 17, 27, 36 and 46 to the extent that Amazon (1) seeks information which is irrelevant and disproportionate to the needs of the case; (2) seeks production of Plaintiffs' prescription medical purchases, to which Plaintiffs have a recognized privacy right and which they have not placed at issue in this lawsuit; and (3) unduly burdens Plaintiffs to search for, retain, and produce paper records from their purchases at brick-and-mortar stores. Berman Declaration in Support of Motion for Protective Order ("Berman Decl."), Ex. A[2] (Plaintiffs' Resp. and Obj. to Amazon's RFPs). Plaintiffs met with Amazon's counsel on December 15, 2022, January 18 and 30, 2023, February 23, 2023, and April 4, 2023, concerning their objections, and exchanged numerous rounds of clarifying correspondence.

Plaintiffs have a privacy interest in their prescriptions, that has not been waived. Plaintiffs do not seek damages for prescription purchases. Plaintiffs' claims are limited to "goods [purchased] on Amazon's marketplace," ECF 20 ¶ 141, and Amazon's rules prohibit the "sale of … products available only by prescription[.]" Seller Central Help, Restricted Products, https://sellercentral.amazon.com/help/hub/reference/external/200164330 (last visited April 6, 2023). Plaintiffs therefore object to RFP Nos. 2, 4, 6, 9, 11, 12, 17, and 46 to the extent they seek Plaintiffs' prescription medical purchases, which are outside the scope of this case. *See* Ex. A.

Plaintiffs likewise do not allege that the challenged agreements—which apply only to online retail—restrained price competition at brick-and-mortar stores. *See* ECF 20 ¶¶ 65-71, 92-

---

[2] All references to "Ex. __" are to exhibits to the Berman Declaration, unless otherwise indicated.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

99. Because preserving hard-copy receipts from brick-and-mortar purchases is irrelevant to Plaintiffs' claims, overly burdensome, and disproportionate to any possible relevance to Amazon's defenses, Plaintiffs object to RFP Nos. 3, 4, 5, 7, 9, 11, 12, 17, 27, 36, and 46 to the extent they seek such hard-copy documents. Ex. A.

To address Amazon's purported interests in both categories of documents, Plaintiffs proposed compromises. Plaintiffs' own RFPs asked for documents sufficient to identify products sold on Amazon Marketplace. Ex. H (Plaintiffs' RFPs to Amazon and Amazon's Resp. & Obj., at RFP Nos. 49-52, 88-89). Plaintiffs' counsel agreed to crosscheck Amazon's production. If any medical products Plaintiffs purchased online through a prescription were identical to those products sold on Amazon Marketplace without a prescription, Plaintiffs would produce those purchase records. Ex. C (B. Mahoney Letter, dated Jan. 17, 2023), at 3. Amazon refused this compromise without explanation. Instead, Amazon made a mockery of Plaintiffs' privacy request. Plaintiffs had already agreed to produce receipts of *non-prescription* medical purchases. To avoid producing *prescription* records, Amazon demanded that Plaintiffs (1) log every Plaintiffs' medical prescription purchases, and (2) disclose them collectively by excluding such products from the Class Definition. This not only violates Plaintiffs' medical privacy, it also potentially excludes bona fide Class Products, *i.e.*, products available without a prescription on Amazon Marketplace or other online retail sites, even if Plaintiffs personally purchased them through a prescription. Ex. D (Goodman letter, dated Feb. 13, 2023), at 2; *as clarified by* Ex. F, (Goodman email, dated March 20, 2023); *as further clarified by* Ex. G (Goodman letter, dated March 31, 2023), at 2. And only if Plaintiffs agreed to this proposal would Amazon agree to withdraw its request for "'*anonymous reviews Plaintiffs may have posted' about their prescription medical purchases*," Ex. G, at 3 (emphasis added)—an incredibly invasive request with *no bearing whatsoever on any aspect of this lawsuit*, designed only to humiliate and burden.

Amazon's proposal is atrocious. Plaintiffs' privacy interests are not protected by the inherent collective disclosure of their prescriptions that comes with excluding such products from the class. Asking Plaintiffs to log and publicly disclose prescriptions, potentially used to treat cancer, psychological or behavioral disorders, or urological or gynecological conditions, is

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 4
Case No. 2:21-cv-00693-RSM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

entirely unwarranted and distressing. Plaintiffs have already agreed to produce responsive documents relating to any medical products they purchased without a prescription (even if such products are also sometimes prescribed by a doctor). Their purchases through a medical prescription are irrelevant to this case because Amazon Marketplace *does not allow* prescription purchases. Nor have Plaintiffs waived their right to claim class damages for nonprescription purchases of products sold on Amazon that are also sometimes prescribed by doctors. Ex. C, at 2-3; Ex. E (Mahoney letter, dated March 21, 2023), at 3.

As a compromise for producing documents regarding brick-and-mortar purchases, Plaintiffs agreed to search their *electronic* records, including emails, and credit card and other financial statements that will reflect both online and brick-and-mortar purchases. Plaintiffs also proposed to produce a reasonable set number of paper receipts, or produce paper receipts from specific retailers. This proposal mitigates the burdens associated with collecting, preserving, reviewing, and producing all hard-copy receipts for a long period of time. Amazon rejected this proposal too, and, after months of demanding that Plaintiffs preserve and produce all paper brick-and-mortar receipts *throughout the entirety of this years-long litigation*, the day Plaintiffs intended to file this motion Amazon revised its counterproposal to instead demand that each named Plaintiff not only preserve and produce new hard-copy receipts and other paper documents relating to brick-and-mortar purchases for at least a year, but also that they must each spend eight hours (a full business day) searching their homes, offices, cars, or other locations for existing paper receipts (or if less than eight hours, provide Amazon an explanation of where they searched and for how long). Ex. D, at 3; Ex. G (Goodman Letter, dated March 31, 2023), at 3.

### III.   ARGUMENT

"On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; … [or] (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Rule 26(b)(2)(C). In addition, "[t]he court may, for good cause, issue an order to protect a party . . . from annoyance, embarrassment, oppression, or undue

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

burden or expense, including" an order to bar discovery into certain matters or to limit discovery that is embarrassing, oppressive, or unduly burdensome. Rule 26(c)(1). "Courts recognize that legitimate privacy interests are a consideration in evaluating proportionality." *Prado v. Equifax Info. Servs. LLC*, 331 F.R.D. 134, 137 (N.D. Cal. 2019) (noting availability of protective orders under Rule 26(c)(1)); *Stanislaus Food Prod. Co. v. USS-POSCO Indus.*, 2012 WL 1940662, at *6 (E.D. Cal. May 29, 2012) ("Federal courts generally recognize a right of privacy that can be raised in response to discovery requests.").

As detailed below, the discovery Amazon seeks is not sufficiently relevant to the parties' claims and defenses to justify the burden imposed.

**A.      Prescription Medical Purchases Are Not Relevant and Their Production Would Unnecessarily Invade Plaintiffs' Medical Privacy.**

"[T]he prescription drug market is heavily regulated and restricted" and does not operate like "markets for ordinary consumer goods[.]" *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *5 (C.D. Cal. Dec. 18, 2014). Amazon's request that Plaintiffs produce *prescription medical purchase* documentation is irrelevant to this action regarding anticompetitive restraints in the market for ordinary consumer goods and is therefore not within the scope of permissible discovery. Amazon's requests implicate serious privacy concerns. For example, Amazon's request would require disclosure of prescription purchases relevant to a "patient's sexual and gynecological history"—records of the "highest sensitivity." *Prado*, 331 F.R.D. at 137 (quotation marks omitted); *id*. at 138 ("In light of these significant privacy interests, courts rightly deny speculative requests . . . as irrelevant and disproportional.").

Filing a lawsuit does not waive a plaintiff's medical privacy right unless it squarely places the plaintiff's physical or mental condition in issue. *EEOC v. Big Five Corp.*, 2018 WL 2317613, at *3-4 (W.D. Wash. May 22, 2018). Plaintiffs have not done so here. They do not claim any physical or mental harm and do not assert economic damages in connection with any

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 6
Case No. 2:21-cv-00693-RSM

purchases made through a prescription. On the contrary, Amazon *prohibits* third-party sellers from selling prescription products, *supra* page 3.[3]

Courts faced with analogous discovery requests have denied them. For example, the *Prado* court rejected an unwarranted request for medical records. The court "question[ed] [the defendant's] continued demand for the [plaintiff's medical] records" given "the private and highly sensitive nature of the medical records—and their lack of relevance[.]" *Prado*, 331 F.R.D. at 138. The Court commented that the defendant had "to know that the potential for embarrassment or oppressiveness in allowing it to probe [medical concerns] is significant" and openly "wonder[ed] if that [was] [the defendant's] objective." *Id*. It concluded that "[i]ntrusive and irrelevant discovery into highly private and sensitive aspects of plaintiffs' lives that chills their willingness to bring [private-attorney-general] claims burdens not only the individual plaintiffs but also the public's interest in seeing the [private-attorney-general statutes] enforced." *Id*. at 138-39. Here too, Amazon's relevance arguments do not justify the severe discomfort its requests inflict. *See also Big Five Corp*., 2018 WL 2317613, at *3 ("the Court agrees with Plaintiff that because he has not requested damages for any physical injury . . . [thus] any 'pure' medical records are irrelevant and not subject to discovery").

Despite Plaintiffs' overwhelming interest in maintaining the privacy of their prescriptions, Amazon claims that it needs discovery of them (i) to dispute Plaintiffs' allegations of the relevant product market in which to assess Amazon's conduct, and (ii) because "prescription drugs or devices may be substitutes" for "products also sold by third party sellers in Amazon's store." Ex. B (M. Goodman Letter, dated Dec. 24, 2022), at 2. As examples, Amazon points to prescription Vicodin as a substitute for over the counter Tylenol. Ex. D, at 2; *see also* Ex. B, at 2. Plaintiffs' purchases of potential product substitutes are irrelevant to Plaintiffs' claims because the challenged pricing rules do not even apply to "substitute" products. ECF 20, ¶¶ 16, 19-20, 22, 141. Amazon's argument that it is entitled to learn about all "prescription drugs

---

[3] And Amazon refused Plaintiffs' reasonable offer to limit production to Plaintiffs' online prescription purchases of only those products that are identical to any medical products available on Amazon Marketplace (*i.e.*, *without* a prescription).

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 7
Case No. 2:21-cv-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

or devices" Plaintiffs have purchased because some subset of them "may" be substitutes for non-prescription products, Ex. B, at 2, is wholly speculative, harassing, and an unjustified privacy invasion. *See Freed v. Home Depot U.S.A., Inc.*, 2019 WL 183833, at *5 (S.D. Cal. Jan. 14, 2019) (issuing a protective order for gynecological and psychological records; holding that Plaintiff did not waive her right to maintain the privacy of these records merely by bringing a personal-injury suit, and that the files were not relevant because "Defendants merely speculate that Plaintiff may have discussed her alleged injury with her gynecologist").

Nor are Plaintiffs' "individual" purchasing behavior and "preferences" probative of the relevant product market because "the least reliable evidence in predicting the effects of a hypothetical price increase is subjective testimony by customers that they would or would not defect in response to a given price increase." *In re Cox Enters.*, 2014 WL 104964, at *10 (W.D. Okla. Jan. 9, 2014) (internal quotation marks and citation omitted); *see also In re Asacol Antitrust Litig.*, 2017 WL 11476172, *1, *3 (D. Mass. Jan. 3, 2017) (denying motion to compel "product market discovery" and agreeing with plaintiffs' expert that "[m]arket-wide data are necessary" to evaluate the relevant market "because the behavior of individual market participants cannot be used to measure [product substitution]. It is only by estimating aggregate patterns of substitution … that an economist can accurately describe … market power and market definition.").

As a sophisticated business, Amazon is well aware that there are far more efficient and comprehensive sources of information available that do not invade Plaintiffs' medical privacy. The regulatory histories, therapeutic purposes, warnings and instructions, similarity of regulatory requirements, and consumer buying patterns, all typically dictate the interchangeability of OTC and prescription products. *See Am. Sales Co. v. Astrazeneca AB*, 2011 WL 1465786, at *3-4 (S.D.N.Y. Apr. 14, 2011). Consumer buying patterns can be established through aggregate data sources, *e.g.*, "the IMS wholesale data for prescription drugs, and the ACNielson retail data for OTC drugs." *Rochester Drug Coop. v. Braintree Lab'ys, Inc.*, 2011 WL 13098292, *2 (D. Del. June 15, 2011). Aside from these publicly available sources of information, Amazon has its own comprehensive information about prescription products through its operation of Amazon

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 8
Case No. 2:21-cv-00693-RSM

Pharmacy (a separate site that conducts first-party sales by Amazon, not by third-party sellers), and about nonprescription products through Amazon Marketplace. A former Amazon employee interviewed by the House subcommittee on antitrust explained that "Amazon has access to every piece of data on what products each customer has searched and purchased [or] not purchased" and that Amazon is "using all of the aggregate site data to develop a highly targeted marketing plan for each customer." SUBCOMMITTEE ON ANTITRUST, COMMERCIAL, AND ADMINISTRATIVE LAW OF THE COMMITTEE ON THE JUDICIARY, 116TH CONG., INVESTIGATION OF COMPETITION IN DIGITAL MARKETS, MAJORITY STAFF REPORT AND RECOMMENDATIONS (House Report) at 237 (2022), https://www.govinfo.gov/content/pkg/CPRT-117HPRT47832/pdf/CPRT-117HPRT47832.pdf. Former Amazon employees told Yahoo Finance that Amazon compiles internal data much more sophisticated than what is in the public domain. Krystal Hu, *Revealed: How Amazon uses third-party seller data to build a private label juggernaut*, Yahoo Finance (Sept. 27, 2019), https://finance.yahoo.com/video/revealed-amazon-uses-third-party-183518323.html (last visited April 6, 2023).

Courts faced with analogous discovery requests have denied them. For example, in *Rochester Drug Coop.*, the court denied the defendant's motion to compel production of the plaintiff wholesaler's purchase records of generic and OTC substitutes. 2011 WL 13098292. The court rejected the "argument that the Defendant should be entitled to put together any sales data which shows price elasticity" in the absence of any showing that the defendant could "profitably use this particular data, which accounts for less than one-half of 1% of the overall sales" because "simple price comparisons have limited value." *Id.*, at *3. The same reasoning applies with greater force to Plaintiffs' individual prescription purchases, which do not represent *any calculable percentage* of prescription purchases.

As discussed in Section II, Amazon rejected Plaintiffs' reasonable compromise that they would produce any online purchases of medical products made through a prescription if, according to records requested of Amazon, those purchases matched identical products available without a prescription from Amazon. Amazon's unduly invasive and harassing counterproposal, which requires Plaintiffs to effectively publicly disclose their prescription purchases by logging

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 9
Case No. 2:21-cv-00693-RSM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

them and them excluding such products from the class definition is no solution at all. There is little comfort that collective disclosure would be "anonymized" given there are only a small number of Plaintiffs in the case. Moreover, Plaintiffs should not be required to disclose prescription purchases, when those sales *were not and could not have been made* on Amazon Marketplace. Conversely, carving out products sold on Amazon without a prescription and that class members may have purchased without a prescription on Amazon at a price inflated by the challenged agreements is also an unnecessary concession that harms the class without protecting Plaintiffs' privacy rights. Amazon's proposal appears to have no purpose other than harassment.

The Court should grant Plaintiffs' Motion and bar irrelevant and invasive discovery into Plaintiffs' medical histories.

**B.   Plaintiffs Should Not Be Burdened with Preserving and Producing All Hard-Copy Documents Regarding Brick-and-Mortar Purchases.**

Plaintiffs have not alleged any injuries concerning their purchases at brick-and-mortar stores. To the contrary, they have alleged that brick-and-mortar purchases fall outside the relevant market, and do not seek damages for them. ECF 20 ¶¶ 65-71, 92-99. Plaintiffs therefore objected to Amazon's requests for documents relating to Plaintiffs' brick-and-mortar purchases as irrelevant and improper under the proportionality test. Ex. C, at 2. Plaintiffs explained in their objections, and during the meet-and-confer process, that individual consumers' purchasing conduct is not probative of the relevant market. Nonetheless, to narrow the disputed issues, Plaintiffs offered to search *electronic records* for documents concerning brick-and-mortar purchases, including credit card and other financial statements (which reflect both online and brick-and-mortar purchases) and emails—which would mitigate the burden of collecting, preserving, reviewing, and producing all hard-copy paper receipts from every trip to the grocery store or minimart. Plaintiffs also proposed to produce some set reasonable number of such paper receipts (say 10 or 25), or to produce receipts from an agreed number of retailers. Ex. B, at 3.

As discussed in Section II, Amazon rejected this reasonable proposal. Amazon argued that a numeric limit would not be "representative" of Plaintiffs' hard-copy brick-and-mortar purchases and thus Plaintiffs must bear the burden of preserving and producing both paper and

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 10
Case No. 2:21-cv-00693-RSM


**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

electronic records for a minimum of one year and further that each Plaintiff must also spend eight hours searching his or her home, office, cars, or other locations for existing paper receipts (or, if less than eight hours, submit an explanation to Amazon detailing how they conducted their search and for how long). Ex. D, at 3; Ex. G (Goodman letter, dated March 31, 2023), at 3.

Because Amazon has refused to minimize Plaintiffs' undue burden, Plaintiffs seek a protective order that eliminates the burden of preserving or producing paper copies relating to brick-and-mortar purchases. Under the proportionality test, the Court considers "the needs of the case, . . . the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Regarding the needs of the case and issues at stake, Plaintiffs acknowledge that market definition is an important part of the case. But Plaintiffs' individual purchases at brick-and-mortar stores provide "the least reliable evidence" to analyze the relevant market. *In re Cox Enters.*, 2014 WL 104964, at *10 (internal quotation marks and citation omitted). The "determination of the correct antitrust market must be conducted using market-wide data," such as data from third-party sources or transactional or market surveillance data maintained by Amazon. *In re Asacol Antitrust Litig.*, 2017 WL 11476172, at *3. If Amazon ultimately challenges Plaintiffs' market definition, it seems incredible that Amazon would base its analyses on paper receipts from a few named Plaintiffs.

Regarding the parties' resources and relative access to information, Plaintiffs are individual consumers, and their retail purchases do not provide the aggregate pricing and consumer behavior necessary to evaluate the relevant market. Moreover, Plaintiffs have already committed to providing responsive electronic records (including credit card and other financial statements), which will likely provide information on Plaintiffs' retail transactions at brick-and-mortar stores. Amazon, on the other hand, is the second largest company in the United States. Its resources far exceed those of Plaintiffs, allowing it to obtain (if it does not already have) relevant third-party data concerning consumer behavior and market pricing. Rule 26(b)(2)(C)(i). Further,

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 11
Case No. 2:21-cv-00693-RSM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

as discussed in Section II, Amazon regularly monitors its competitors' prices and consumer purchasing habits. If brick-and-mortar stores are, in fact, its competitors, then Amazon has already amassed aggregate data concerning brick-and-mortar pricing.

In the absence of a protective order, Amazon's demand for paper receipts of Plaintiffs' brick-and-mortar transactions imposes an ongoing and unreasonable obligation on Plaintiffs to retain and produce receipts and other paper records—for at least one year. Amazon would have Plaintiffs save every brick-and-mortar retail receipt, whether for peanuts at a gas station, souvenirs on vacation, or gifts purchased at the mall—requiring constant and daily vigilance and effort from each Plaintiff incommensurate to the paltry probative value. This demand is disproportionate to the needs of this case in light of (1) Plaintiffs' commitment to produce electronic records in their possession concerning their brick-and-mortar transactions, (2) the significant burden on Plaintiffs to retain and produce paper records, and (3) the irrelevance of their individual transactions to damages or to Amazon's purported market definition analysis.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter a protective order holding that: (1) Plaintiffs need not preserve or produce records of prescription medical purchases (and may redact such information from documents they otherwise produce), and that Amazon may not seek further discovery on this topic such as through interrogatories or depositions; and (2) Plaintiffs need not preserve or produce hard-copy paper documents related to brick-and-mortar purchases.



DATED: April 6, 2023

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By _____ */s/ Steve W. Berman* _____
Steve W. Berman (WSBA No. 12536)
By _____ */s/ Barbara A. Mahoney* _____
Barbara A. Mahoney (WSBA No. 31845)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com
barbaram@hbsslaw.com

KELLER POSTMAN LLC

Zina G. Bash (pro hac vice)
111 Congress Avenue, Suite 500
Austin, TX, 78701
Telephone: (512) 690-0990
E-mail: zina.bash@kellerpostman.com

Warren D. Postman (pro hac vice)
Albert Y. Pak (pro hac vice)
1100 Vermont Avenue, N.W., 12th Floor
Washington DC, 20005
Telephone: (202) 918-1123
E-mail: wdp@kellerpostman.com
E-mail: albert.pak@postman.com

Jessica B. Beringer (pro hac vice)
150 N. Riverside, Suite 4100
Chicago, IL 60606
Telephone: (312) 741-5220
Email: jessica.beringer@kellerpostman.com

*Interim Co-Lead Counsel for Plaintiffs and the proposed Class*

KELLER ROHRBACK L.L.P.

By: _____ */s/ Derek W. Loeser* _____
Derek W. Loeser (WSBA No. 24274)
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile: (206) 623-3384
Dloeser@kellerrohrback.com


HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:    */s/ Alicia Cobb*
    Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
Telephone: (206) 905-7000
Email: aliciacobb@quinnemanuel.com

Steig D. Olson (pro hac vice)
David D. LeRay (pro hac vice)
Nic V. Siebert (pro hac vice)
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: steigolson@quinnemanuel.com

Adam B. Wolfson (pro hac vice)
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Email: adamwolfson@quinnemanuel.com

*Interim Executive Committee for Plaintiffs and the proposed Class*

## CERTIFICATE OF LENGTH

I hereby certify that this memorandum complies with the word count limit set forth in Local Civil Rule 7(e) because it contains 4,190 words. In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

    */s/ Steve W. Berman*
    Steve W. Berman

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 14
Case No. 2:21-cv-00693-RSM



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2023, a true and correct copy of the foregoing was filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.

/s/ Steve W. Berman
Steve W. Berman

PLAINTIFFS' MOTION FOR A PROTECTIVE ORDER - 15
Case No. 2:21-cv-00693-RSM

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE   (206) 623-0594 FAX