The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a corporation,<br><br>Defendant. | No. 2:21-cv-00693-JHC<br><br>AMAZON.COM, INC.'S MOTION TO DISMISS<br><br>***Oral Argument Requested***<br><br>NOTE ON MOTION CALENDAR:<br>June 20, 2024 |



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**TABLE OF CONTENTS**


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Procedural History .......... 2

B. Plaintiffs' SC-FOD and "MFN Policies" Allegations. .......... 3

III. LEGAL STANDARD .......... 6

IV. ARGUMENT .......... 6

A. Plaintiffs' First Cause of Action Fails to State a Claim. .......... 6

1. Plaintiffs Fail to Allege an Agreement to Disqualify Uncompetitively Priced Offers. .......... 6

2. The Four Remaining Policies Are Not Alleged to Cause "Substantial Anticompetitive Effects" of their Own. .......... 8

B. Plaintiffs' Second and Third Causes of Action Fail to State a Claim. .......... 12

1. Plaintiffs' Monopolization Claims Based Upon SC-FOD are Untimely. .......... 12

2. Plaintiffs Fail to Allege Substantial Anticompetitive Effects in Support of their Monopolization Claims. .......... 15

3. Plaintiffs Have Not Alleged That Amazon Possesses Monopoly Power in any "Online Retail Sales Market." .......... 17

V. CONCLUSION .......... 18




Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF AUTHORITIES

## CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*,
836 F.3d 1171 (9th Cir. 2016) ....................6, 7

*Am. Needle, Inc. v. Nat'l Football League*,
560 U.S. 183 (2010)....................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*,
9 F.4th 1102 (9th Cir. 2021) ....................8

*Blue Cross Blue Shield United of Wis. v. Marshfield Clinic*,
65 F.3d 1406 (7th Cir. 1995) ....................10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Beneficial Std. Life Ins. Co. v. Madariaga*,
851 F.2d 271 (9th Cir. 1988) ....................13

*Concord Boat Corp. v. Brunswick Corp.*,
207 F.3d 1039 (8th Cir. 2000) ....................15

*Copperweld Corp. v. Indep. Tube Corp.*,
467 U.S. 752 (1984)....................7

*Coronavirus Rep. v. Apple Inc.*,
2021 WL 5936910 (N.D. Cal. Nov. 30, 2021) ....................16

*Crowder v. LinkedIn Corp.*,
2023 WL 2405335 (N.D. Cal. Mar. 8, 2023)....................15

*David Orgell, Inc. v. Geary's Stores, Inc.*,
640 F.2d 936 (9th Cir. 1981) ....................14

*De Coster v. Amazon.com, Inc.*,
2023 WL 372377 (W.D. Wash. Jan. 24, 2023)....................2, 8

*Dimidowich v. Bell & Howell*,
803 F.2d 1473 (9th Cir. 1986) ....................8, 10

*Dreamstime.com, LLC v. Google LLC*,
54 F.4th 1130 (9th Cir. 2022) ....................18



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Eichman v. Fotomat Corp.*,
880 F.2d 149 (9th Cir. 1989) ....................14

*EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*,
2019 WL 3503240 (N.D. Tex. Aug. 1, 2019)....................19

*Fisher v. City of Berkeley*,
475 U.S. 260 (1986)....................7

*Frame-Wilson v. Amazon.com, Inc.*,
591 F. Supp. 3d 975 (W.D. Wash. 2022)....................8

*FTC v. Facebook, Inc.*,
560 F. Supp. 3d 1 (D.D.C. 2021)....................18

*FTC v. Qualcomm Inc.*,
969 F.3d 974 (9th Cir. 2020) ....................8, 9, 15, 16

*Garrison v. Oracle Corp.*,
159 F. Supp. 3d 1044 (N.D. Cal. 2012) ....................15

*Greenberg v. Amazon.com, Inc.*,
No. 2:21-cv-00898 (W.D. Wash.)....................11

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
125 F.3d 1195 (9th Cir. 1997) ....................18

*In re Animation Workers Antitrust Litig.*,
87 F. Supp. 3d 1195 (N.D. Cal. 2015) ....................13, 14, 15

*In re German Automotive Manufacturers' Antitrust Litig.*,
612 F. Supp. 3d 967 (N.D. Cal. 2020) ....................17

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997)....................13

*Legal Econ. Evaluations, Inc. v. Metropolitan Life Ins. Co.*,
39 F.3d 951 (9th Cir. 1994) ....................10

*Malheur Forest Fairness Coal. v. Iron Triangle, LLC*,
2023 WL 6811871 (D. Or. Oct. 13, 2023)....................18

*Ocean State Physicians Health Plan, Inc. v. Blue Cross Blue Shield of Rhode Island*,
883 F.2d 1101 (1st Cir. 1989)....................10

*Pace Indus., Inc. v. Three Phoenix Co.*,
813 F.2d 234 (9th Cir. 1987) ....................14



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
51 F.3d 1421 (9th Cir. 1995) ....................18

*Sambreel Holdings LLC v. Facebook, Inc.*,
906 F. Supp. 2d 1070 (S.D. Cal. 2012)....................8

*Samsung Elec. Co. Ltd. v. Panasonic Corp.*,
747 F.3d 1199 (9th Cir. 2014) ....................14

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) ....................6

*SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,
88 F.3d 780 (9th Cir. 1996) ....................18

*Synthes, Inc. v. Emerge Med., Inc.*,
2012 WL 4473228 (E.D. Pa. Sept. 28, 2012) ....................18

*United States v. Am. Express Co.*,
88 F. Supp. 3d 143 (E.D.N.Y. 2015) ....................15, 16

*United States v. Syufy Enters.*,
903 F.2d 659 (9th Cir. 1990) ....................17

**STATUTES**

15 U.S.C. § 1....................6

15 U.S.C. § 15b....................13



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I. INTRODUCTION

The Court denied Amazon's motion to dismiss the First Amended Complaint ("FAC") because that Complaint alleged (incorrectly) that Amazon's practice of disqualifying uncompetitively priced third-party seller offers from obtaining eligibility for the most visible placement in Amazon's store (the so-called "Featured Offer") occurred under an agreement (Amazon's "Fair Pricing Policy"), which Amazon and its third party sellers joined. Plaintiffs' Second Consolidated Amended Complaint ("SAC") changes that allegation. The SAC no longer identifies the 2017 Fair Pricing Policy as the basis for Featured Offer disqualification. Instead, the SAC identifies an internal Amazon algorithm (Select Competitor–Featured Offer Disqualification ("SC-FOD")) that Amazon unilaterally introduced in 2015 as the basis for Featured Offer disqualification.[1] While Plaintiffs seek to minimize the importance of this change, SAC ¶ 1, it transforms and expands their allegations into a very different Complaint that no longer states a claim upon which relief can be granted.

Specifically, Plaintiffs now claim that Amazon maintains a *de facto* price parity requirement for third-party sellers through Featured Offer disqualification. As alleged, Amazon has used SC-FOD since 2015 to render third-party offers ineligible to become the "Featured Offer" (what Plaintiffs refer to as winning the "Buy Box") when they are priced uncompetitively in Amazon's store relative to a set of competitors Amazon unilaterally selects. SAC ¶¶ 22-24. While uncompetitive third-party offers remain available for purchase in the Amazon store, SC-FOD prevents an offer from becoming the Featured Offer. *Id.* In marked contrast with the FAC, the SAC does not allege that SC-FOD is the product of any agreement.

Accordingly, Amazon's unilateral use of SC-FOD cannot violate Section One of the Sherman Act. Further, Plaintiffs' attempts to challenge SC-FOD under Section Two likewise fail because the claims are untimely and unsupported by allegations of substantial anticompetitive effect.

---

[1] All emphases are added unless otherwise indicated.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

To the extent that Plaintiffs rely upon other alleged practices as constituting agreements, their new allegations also deprive them of any basis to say that those agreements had the substantial anticompetitive effect necessary to state a claim under Section One or Two of the Sherman Act. Based on the amended allegations of the SAC, neither the "Price Parity Clause" ("Parity Clause") that Amazon discontinued in 2019, nor the Fair Pricing Policy, nor two other newly alleged practices (Amazon's Standard for Brands ("ASB"), and Seller Code of Conduct ("Code of Conduct")) are the basis for enforcing an alleged *de facto* price parity requirement through the Featured Offer. Plaintiffs did not add any other allegation that plausibly shows that any of these four practices had any actual anticompetitive effect with regards to the sale of any product in any market, much less a substantial one. In an apparent attempt to obscure that shortcoming, Plaintiffs group SC-FOD with the other four alleged practices under a misleading umbrella name of "Amazon's MFN policies," to which allegations of anticompetitive effect are then attributed. But aside from that false grouping, Plaintiffs have not alleged that these other practices themselves have any actual anticompetitive effect. Thus, even assuming that the alleged practices constitute agreements within the meaning of Section One, the SAC fails to allege facts adequate to show that they actually restrain competition.

Finally, Plaintiffs fail to allege that Amazon possesses monopoly power in one of the two alleged product markets, and the Second Cause of Action should be dismissed in relevant part for that reason as well.

In short, Plaintiffs' SAC does not state a claim upon which relief can be granted, and it should be dismissed as a result.

## II. BACKGROUND

### A. Procedural History

In early 2023, Judge Martinez granted in part and denied in part Amazon's motion to dismiss the FAC.[2] The Court concluded that the two agreements identified in the FAC—the Parity

[2] *De Coster v. Amazon.com, Inc.*, 2023 WL 372377 (W.D. Wash. Jan. 24, 2023) (Martinez, J.).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Clause that was removed from the Business Solutions Agreement ("BSA") in 2019, and the Fair Pricing Policy—had been sufficiently alleged to constitute "concerted action" that was potentially unlawful *if they had the effects attributed to them in the FAC*. *Id.* at *3. In particular, those alleged effects "include[d] making [a] merchant's product ineligible for a feature (the 'Buy Box' button) that would make the product the most visible and easiest to purchase among similar goods" in Amazon's store. *Id.* at *2.

This motion to dismiss does not ask the Court to reconsider any issue that Judge Martinez decided. Instead, it is based upon Plaintiffs' new allegations that SC-FOD operates as the primary vehicle under which Amazon disqualifies uncompetitive offers from eligibility to become Featured Offers. *Compare* FAC ¶¶ 18-22 (alleging the Fair Pricing Policy is a continuation of the former Parity Clause, and is enforced by removing the "Buy Box" from uncompetitively priced offers), *with* SAC ¶¶ 22-28 (deleting references to the Fair Pricing Policy and instead attributing "Buy Box" removal to SC-FOD). None of the arguments presented in this motion were presented to Judge Martinez, because the FAC did not allege, as the SAC now does, the existence of SC-FOD or its relevance to Plaintiffs' theories about Featured Offer disqualification.

**B. Plaintiffs' SC-FOD and "MFN Policies" Allegations.**

To support its new allegation of a *de facto* price parity policy, the SAC focuses overwhelmingly upon Amazon's alleged practice of disqualifying uncompetitively priced offers from eligibility to become Featured Offers. However, the SAC changes Plaintiffs' allegations about how and why disqualification occurs.

At least twenty-five paragraphs of the SAC contain allegations that are about either how important it is to third party sellers to have their offers win the "Buy Box," or the effect on third-party sellers' sales when their offers do not win the Buy Box—either because they are ineligible or because some other offer wins instead. *See* SAC ¶¶ 2, 21-31, 34-36, 63, 71, 104, 124-128, 147, 161, 173.[3] While the SAC briefly describes other practices that are allegedly of concern to third-

[3] Plaintiffs use the term "Buy Box winner" to refer to what Amazon calls the "Featured Offer," i.e., the offer that a customer accepts by clicking the "Buy Now" or "Add to Cart" buttons on a product detail page. *See, e.g.*, SAC ¶ 22 (referring to "the Featured Offer/Buy Box winners"); *id.* ¶ 125 ("The 'Buy



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

party sellers, *id.* ¶ 31 (alleging some brands may lose "selling privileges" if they violate ASB); *id.* ¶ 33 (alleging Amazon may impose unspecified "sanctions" for violations of the Fair Pricing Policy), none of those topics receives remotely as much attention in the SAC as Plaintiffs' allegations about the "Buy Box." The alleged importance of gaining access to the "Buy Box," and the strategies sellers may adopt to maintain their eligibility for it, are the central alleged issues in the SAC.

Some of Plaintiffs' "Buy Box" allegations are entirely new in the SAC. *Id.* ¶¶ 22-28. Most of the others, however, are modified versions of paragraphs that existed in the FAC, but that Plaintiffs have now changed by *deleting* express references to the Fair Pricing Policy as the singular policy responsible for those alleged practices, and replacing them with a reference to an umbrella term: Amazon's "MFN policies." *See, e.g.*, *id.* ¶ 35 (replacing the phrase "'Fair Pricing' Policy" from the allegation formerly in FAC ¶ 19, with "MFN policies").[4] In this regard, the SAC does not merely add new allegations about additional alleged policies or agreements. It *changes* the underlying allegation from a clear assertion that the Fair Pricing Policy is the specific policy pursuant to which Amazon disqualifies uncompetitive offers from eligibility to be the Featured Offer, to a non-specific allegation that such disqualification occurs under one or more of the policies that Plaintiffs refer to collectively as Amazon's "MFN policies."

When the SAC includes an allegation about Amazon's "MFN policies," it is referring to any of five separate things:

---

Box' is the white box on the right side of the product details page where shoppers can click 'Add to Cart' or 'Buy Now.'"). For purposes of this motion, the terms "Buy Box winner" and "Featured Offer" are used interchangeably and convey the same meaning.

[4] *See also id.* ¶ 36 (same for the allegations formerly in FAC ¶ 20); *id.* ¶ 104 (same for former FAC ¶ 87); *id.* ¶ 121 (same for former FAC ¶ 104); *id.* ¶ 124 (same for former FAC ¶ 107); *id.* ¶ 127 (same for former FAC ¶ 110); *id.* ¶ 161 (same for former FAC ¶ 142).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1) The former Parity Clause that Amazon removed in 2019, *see* SAC ¶¶ 16-19;

2) The SC-FOD algorithm adopted in 2015, *id.* ¶¶ 22-28;

3) The ASB program adopted in 2018, *id.* ¶¶ 29-31;

4) The Code of Conduct, *id.* ¶ 32; and

5) The Fair Pricing Policy, *id.* ¶ 33.

However, despite using a single umbrella term to refer to all of these policies collectively in most paragraphs of the SAC, there are at least two clear distinctions between Plaintiffs' allegations about SC-FOD and their allegations about the other four policies.

First, while Plaintiffs make a point of alleging that the other four policies were all incorporated into the BSA entered into between Amazon and its third-party sellers, no equivalent allegation has been, or could be, made about SC-FOD.[5] There is no allegation anywhere in the SAC that the SC-FOD algorithm has been agreed to with any other party. It is instead identified as a practice that Amazon unilaterally "introduced in mid-2015," *id.* ¶ 22, and for which Amazon provides third-party sellers with "limited information" about how it is implemented, *id.* ¶ 25.

Second, of the five practices Plaintiffs label as Amazon's "MFN policies," only SC-FOD is identified as causing Featured Offer disqualification (i.e., "Buy Box" removal). SAC ¶¶ 22-26. As alleged, SC-FOD reflects Amazon's unilateral determination not to confer a "critical listing *benefit*" upon uncompetitively priced third-party offers; specifically, by not placing them in "the most visible" part of its store. *Id.* ¶ 125. Uncompetitive offers remain available for purchase in Amazon's store, and they can be located by customers who choose to click a link—"Other Sellers"— underneath the "Buy Box." *Id.* ¶ 125. But through SC-FOD, Amazon promotes those third-party offers that have earned it by competitively pricing their products. *Id.* ¶¶ 24-25.

In contrast to their allegations about SC-FOD, Plaintiffs do not allege facts to support that any of the other policies that they characterize as "MFN policies" have anything to do with

---

[5] *Compare* SAC ¶¶ 16 (Parity Clause was "included" in the BSA until March 2019); 29 ("ASB … is incorporated by reference in the BSA"); 32 (same for Code of Conduct); 33 (same for Fair Pricing Policy), *with id.* ¶¶ 22-26 (containing no equivalent allegation for SC-FOD).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Featured Offer disqualification or "Buy Box" removal. *See* SAC ¶¶ 16-17, 29-33 (identifying the other four policies, and failing to allege that any are the mechanism for removing the "Buy Box").

## III. LEGAL STANDARD

A court should grant a Rule 12(b)(6) motion to dismiss when the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[M]ere conclusory statements[] do not suffice" as "allegations [that] are conclusory a[re] not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009). In addition to evaluating the sufficiency of factual allegations, a "statute-of-limitations defense, if apparent from the face of the complaint, may properly be raised in a motion to dismiss." *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (quotation omitted).

## IV. ARGUMENT

### A. Plaintiffs' First Cause of Action Fails to State a Claim.

Plaintiffs' First Cause of Action, alleging an unreasonable restraint of trade in violation of Section One of the Sherman Act—fails for two reasons: (1) SC-FOD, the mechanism by which Amazon is alleged to disqualify offers from being eligible to be featured in its store, is a unilateral action and not the product of an agreement; and (2) the remaining alleged practices misleadingly titled as Amazon's "MFN policies" are not alleged to cause a substantial anticompetitive effect.

#### 1. Plaintiffs Fail to Allege an Agreement to Disqualify Uncompetitively Priced Offers.

Foundational to maintaining a claim under Section One of the Sherman Act for a "contract, combination … or conspiracy[] in restraint of trade," 15 U.S.C. § 1, is demonstrating the existence of an agreement. Only once an agreement has been established does the inquiry proceed to determine whether it is an "unreasonable restraint of trade." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). Without an agreement, "there can be no liability under § 1," regardless of any alleged anticompetitive effects. *Fisher v. City of Berkeley*, 475 U.S. 260,



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

266 (1986). Plaintiffs' claim, which hinges on the alleged anticompetitive effects arising from Amazon's unilateral adoption and application of SC-FOD, fails at the first step.

Plaintiffs' *de facto* parity allegations assert that the threat of losing eligibility for the Featured Offer due to uncompetitive pricing, pressures third-party sellers—not into making their offers more competitive on Amazon, but into reducing the price competitiveness of their offers in other stores. SAC ¶¶ 36-39. The mechanism Amazon allegedly "use[s] to achieve that goal" is SC-FOD. *Id.* ¶ 22.

Entirely absent from Plaintiffs' SAC, however, is *any* allegation that SC-FOD is itself part of any agreement between Amazon, its third-party sellers, or anyone else. Rather, SC-FOD is alleged to be a "tool" or "algorithm" that Amazon "introduced" in 2015 to disqualify uncompetitively priced offers from winning the "Buy Box." SAC ¶¶ 22, 24, 26. While Plaintiffs allege that the four other practices identified in the SAC were each incorporated into the BSA, *id.* ¶¶ 16, 29, 32, 33, nowhere do they allege the same for SC-FOD. That deficiency dooms Plaintiffs' attempt to shoe-horn their numerous "Buy Box" allegations into a claim under Section One, because that statute "does not reach conduct that is 'wholly unilateral.'" *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984).

Notably, Plaintiffs tout the "[s]imilar[ity]" between their amended allegations and the complaint by the Federal Trade Commission and State Attorneys General ("FTC/States"). SAC ¶ 2 & n.2. However, they ignore that the FTC/States complaint does *not allege* a violation of Section One of the Sherman Act, but rather allege that such conduct violates Section Two of the Act.

In drafting the Sherman Act, "Congress 'treated concerted behavior more strictly than unilateral behavior.'" *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 190 (2010) (quoting *Copperweld*, 467 U.S. at 768). Amazon's unilateral practice of vigorously competing with other stores and earning customer trust by making competitive offers more "visible" in its store, and uncompetitive offers comparatively less so, SAC ¶ 34, 71, 125, is exactly the kind of independent decision making upon which competition depends. To condemn it under Section One would be contrary to law and would stifle competition by depriving competitors in the marketplace



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

of the "right to control [their] own product[s]" and "the manner in which [they] will be viewed." *Sambreel Holdings LLC v. Facebook, Inc.*, 906 F. Supp. 2d 1070, 1075-76 (S.D. Cal. 2012).

**2. The Four Remaining Policies Are Not Alleged to Cause "Substantial Anticompetitive Effects" of their Own.**

Consistent with Judge Martinez's prior order, Plaintiffs' Section One claim is subject to the rule of reason. *De Coster*, 2023 WL 372377, at *4; *see also Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d 975, 987 (W.D. Wash. 2022) (determining agreements between Amazon and its third-party sellers are subject to the rule of reason). Plaintiffs have "the initial burden to prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market." *Aya Healthcare Servs., Inc. v. AMN Healthcare, Inc.*, 9 F.4th 1102, 1111 (9th Cir. 2021) (quoting *Ohio v. Am. Express Co.*, 585 U.S. 529, 541 (2018)); *see also FTC v. Qualcomm Inc.*, 969 F.3d 974, 991 (9th Cir. 2020) (same). Even assuming that Plaintiffs' allegations regarding the Parity Clause, ASB, Fair Pricing Policy, and/or Code of Conduct constitute "agreements" for purposes of Section One, Plaintiffs have not met their burden.[6]

Plaintiffs do not seek to resurrect their previously dismissed *per se* horizontal price-fixing claim, SAC ¶ 1, but nevertheless continue to allege that Amazon and its third-party sellers are "horizontal competitors," *id.* ¶ 164. But the *allegations* of the SAC pertain to a "vertical relationship, in which Amazon is not competing with third-party sellers, but rather setting requirements as a condition for platform access." *Frame-Wilson*, 591 F. Supp. 3d at 987; *see also Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1481 (9th Cir. 1986) (where parties have both vertical and horizontal relationships, the rule of reason governs claims directed at the vertical aspect of their relationship).

Under these circumstances, the rule of reason applies and Plaintiffs fail to allege the necessary "substantial anticompetitive effect" arising from any of their alleged vertical

---

[6] Judge Martinez previously concluded that the former Parity Clause and the Fair Pricing Policy were adequately alleged to be the product of agreements. *De Coster*, 2023 WL 372377, at *3-4. Amazon does not seek reconsideration of that ruling for purposes of this motion to dismiss. Likewise, this motion assumes, without conceding, that the newly-identified ASB program and Code of Conduct would be treated as agreements under the same analysis.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

agreements. *Qualcomm Inc.*, 969 F.3d at 991 (quoting *Am. Express Co.*, 585 U.S. at 541). The SAC principally attempts to allege anti-competitive effect through its dozens of allegations about the importance of the Featured Offer or "Buy Box,"[7] but it fails to allege facts showing that the Parity Clause, ASB, Fair Pricing Provision, and/or Code of Conduct have anything to do with disqualifying third-party sellers from access to the Featured Offer or Buy Box. Shorn of those allegations, any remaining attempts to allege anticompetitive effects in the Online Retail Marketplace Market or the Online Retail Sales Market that are attributable to these policies are vague, conclusory, and entirely insubstantial.[8] Plaintiffs allege no facts of anticompetitive effect at all, save for the claims of one small toy-business owner. SAC ¶ 120. That is insufficient to plausibly allege that Amazon's policies, which encourage competitively-priced offers in its store, somehow *raised* prices market-wide across diverse product categories.

***Parity Clause.*** Plaintiffs allege that an old Parity Clause created a contractual obligation that "expressly prohibited third-party merchants from listing goods on other online retail platforms … at prices lower than their Amazon list prices" until it was removed in March 2019. SAC ¶ 17. Conspicuously absent from the SAC, however, is any allegation of how, if at all, that provision was enforced, much less that it was enforced via removal of the "Buy Box."

Plaintiffs' only attempt to allege impact specific to the Parity Clause is to claim that in 2013, nearly a decade before the initial Complaint was filed, the "German competition authority … concluded that Amazon's *MFN policies* had anticompetitive effects …." SAC ¶ 17; *see also id.* at ¶ 37 & n.62 (alleging that those findings were made in 2013).[9] That alleged finding of anticompetitive effects was made under a legal standard that is inconsistent with the governing principles of federal antitrust law. *Compare* SAC ¶¶ 142-43 (alleging that the German regulators

[7] *See* SAC ¶¶ 2, 21-31, 34-36, 63, 71, 104, 124-128, 147, 161, 173.

[8] This issue was not presented to, or decided by, Judge Martinez in Amazon's previous motion to dismiss. Amazon is raising that issue now both because Plaintiffs' SAC changes their allegations about the Fair Pricing Policy, and because it injects two additional policies without alleging facts adequate to show that they have anticompetitive effects.

[9] As an initial matter, that is an obvious exaggeration because the only one of Amazon's so-called "MFN policies" that either was alleged to have existed in 2013, or that was under scrutiny by German regulators, is the former Parity Clause itself. SAC ¶ 17; *see also id.* at ¶ 37 & n.62.



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

viewed Amazon's relationship with third-party sellers as a "hardcore" and "horizontal price-fixing agreement" because it was not "*purely* vertical" in nature), *with Dimidowich*, 803 F.2d at 1481 (explaining that under federal antitrust law, mixed horizontal and vertical relationships are subject to the rule of reason when the challenged restraint relates to the vertical aspect of the relationship). Indeed, far from constituting a "hardcore" antitrust violation, federal antitrust law regards price parity clauses as "standard devices by which buyers try to bargain for low prices, by getting the seller to agree to treat them as favorably as any of their other customers." *Blue Cross Blue Shield United of Wis. v. Marshfield Clinic*, 65 F.3d 1406, 1415 (7th Cir. 1995); *see also Ocean State Physicians Health Plan, Inc. v. Blue Cross Blue Shield of Rhode Island*, 883 F.2d 1101, 1110 (1st Cir. 1989) ("[A] policy of insisting on a supplier's lowest price … tends to further competition on the merits" and is not illegal). Plaintiffs cannot satisfy their burden of alleging a "substantial" anticompetitive effect under the rule of reason by relying upon a foreign regulator's condemnation of conduct as *per se* illegal under foreign laws.

***Amazon Standards for Brands.*** Plaintiffs allege that the ASB program is enforced by temporarily or permanently suspending a violating brand's ability to operate as a seller in Amazon's store. *Id.* ¶ 31. While Plaintiffs characterize that alleged penalty as "dire," *id.*, it is nevertheless facially distinct from the alleged "Buy Box" removal.

Plaintiffs further allege that Amazon "removed selling privileges" for certain brands that "failed to meet" its competitiveness targets under ASB. *Id.* To whatever extent that might suffice to show injury to those individual sellers, it does not suffice as an allegation of injury to *competition*, which is the sole concern of the antitrust laws. *Legal Econ. Evaluations, Inc. v. Metropolitan Life Ins. Co.*, 39 F.3d 951, 954 (9th Cir. 1994) ("The antitrust laws were enacted for 'the protection of *competition*, not *competitors*.'" (emphasis in original) (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962))). Plaintiffs do not allege that the loss of selling privileges for any individual brand or collection of brands reduced overall competition in the alleged relevant markets. And plaintiffs similarly fail to explain how the loss of some third-party



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

sellers among the alleged "2.3 million third-party merchants" in Amazon's store, SAC ¶ 65, could cause harm to *competition* in the market as a whole.

***Fair Pricing Policy.*** Plaintiffs no longer allege that "Buy Box" removal or Featured Offer disqualification occurs as a result of the Fair Pricing Policy. At most, they try to group the Fair Pricing Policy with the other so-called "MFN policies" that have nothing to do with those alleged practices.

Plaintiffs further allege that the Fair Pricing Policy prohibits merchants from "list[ing] goods on a competing online retail platform at prices that are significantly below … Amazon list prices." SAC ¶ 33.[10] But the only enforcement provision specifically attributed to that policy is the allegation that Amazon may impose "sanctions" upon a seller that "harms customer trust" in violation of the policy, *see id.*, without specifying what those sanctions are. That does not suffice to allege a "substantial" anticompetitive effect from the Fair Pricing Policy. While Plaintiffs seek to allege that the Fair Pricing Policy is part of a collection of practices that "prohibit" charging higher prices on Amazon than in other stores, *id.* ¶ 39, all that they actually allege is that there is a "disincentive" to price lower on Amazon, *id.*, because uncompetitive offers receive less "visible" placement as a result of the independent operation of SC-FOD, *id.* ¶¶ 34, 71, 125. Individual third-party sellers can plainly decide how best to optimize their pricing across the various channels in which they sell based on what they see as the optimal pricing and selling strategy for their products.

***Seller Code of Conduct.*** Finally, Plaintiffs' allegations about the Code of Conduct similarly fail to allege substantial harm to competition. Plaintiffs identify one specific practice that Amazon considers to be a violation of that policy, *id.* ¶¶ 32, 124, without alleging how, if at

---

[10] Plaintiffs also mischaracterize the policy, which actually prohibits "[s]etting a price on a product or service [on Amazon] that is *significantly* higher than recent prices offered on or off Amazon." Compl. ¶ 33 n.56 (quoting the Fair Pricing Policy). Read as intended, the Fair Pricing Policy prohibits sellers from price gouging on Amazon, an indisputably lawful goal that is mandated by the laws of many states in which Amazon operates. Indeed, Plaintiffs' counsel is concurrently pursuing a separate lawsuit against Amazon charging that it violated Washington state law by not sufficiently preventing price gouging. *See Greenberg v. Amazon.com, Inc.*, No. 2:21-cv-00898 (W.D. Wash.). Plaintiffs' Complaint in that matter acknowledges that Amazon's Fair Pricing Policy is related to the prevention of price gouging. *Id.* Compl. (Dkt. 19) ¶ 90. That case is currently before the Washington Supreme Court on a certified question. *Id.* (Dkt. 51).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

all, Amazon addresses such a violation. Indeed, the Code of Conduct is only specifically mentioned in the above two paragraphs of the SAC, *id.*, neither of which allege that it is enforced by disqualifying individual offers from eligibility to access the "Buy Box."

In summary, Plaintiffs fail to satisfy the necessary elements of a Section One Sherman Act claim for any of their five alleged "MFN policies." SC-FOD is Amazon's unilateral action, not the product of any agreement with or among sellers. And the remaining policies are not alleged to have a "substantial anticompetitive effect" on competition in the market necessary to state a claim. Plaintiffs' Section One claim should be dismissed in whole.

**B. Plaintiffs' Second and Third Causes of Action Fail to State a Claim.**

Plaintiffs' Second Cause of Action, alleging monopolization in violation of Section Two of the Sherman Act, fails for three distinct reasons: (1) Plaintiffs' challenges to SC-FOD are untimely; (2) the SAC fails to allege that the challenged practices, including SC-FOD, had substantial anti-competitive effects; and (3) Plaintiffs' allegations of monopoly power are facially inadequate as applied to the alleged "Online Retail Sales Market."

Likewise, Plaintiffs' Third Cause of Action, for attempted monopolization, fails for both the first and second reasons.

**1. Plaintiffs' Monopolization Claims Based Upon SC-FOD are Untimely.**

Plaintiffs allege that Amazon "introduced [SC-FOD] in mid-2015," and that ever since that time, it has consistently refused to place offers that it considers to be uncompetitively priced in the "most visible" portion of its store. SAC ¶¶ 22, 34. Even assuming that Plaintiffs' new allegations about SC-FOD relate back to the filing of the original Complaint in May 2021—something the Court need not decide—Plaintiffs' allegations based upon that practice are untimely and cannot support a monopolization or attempted monopolization claim.

All of Plaintiffs' Sherman Act claims are "forever barred unless commenced within four years after the cause of action accrued." 15 U.S.C. § 15b. In antitrust cases, accrual occurs on the date the alleged anticompetitive act causes injury, not the date on which the plaintiff discovers its injury. *See Beneficial Std. Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274-75 (9th Cir. 1988)



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

(explaining that in “actions governed by 15 U.S.C. § 15b, the plaintiff’s knowledge is generally irrelevant to accrual, which is determined according to the date on which injury occurs”); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 188 (1997) (accrual occurs “when a defendant *commits an act* that injures a plaintiff’s business” (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971))); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1209 (N.D. Cal. 2015) (“[T]he U.S. Supreme Court and Ninth Circuit have clearly held that claims under the Sherman Act are subject to an injury rule, rather than a discovery rule.”).[11]

According to Plaintiffs, the purpose and effect of SC-FOD was to elevate prices in Amazon’s store from mid-2015 until the present. SAC ¶¶ 22, 37-39. Accordingly, Plaintiffs and the class on whose behalf they purport to sue suffered their injury more than six years before their first Complaint was filed in mid-2021, and their claim is untimely as a result. *See Animation Workers*, 87 F. Supp. 3d at 1210 (claims brought by putative class of animation workers allegedly injured by non-solicitation agreements were untimely when brought more than four years after the agreements were first implemented).

Plaintiffs cannot salvage their untimely claims by arguing that each instance in which Amazon applied SC-FOD to disqualify an uncompetitively priced offer from eligibility for the “Buy Box” constitutes a new overt act that restarts the statute of limitations. In this Circuit, “two elements characterize an overt act which will restart the statute of limitations: 1) It must be a new and independent act that is not merely *a reaffirmation of a previous act*; and 2) it must inflict new and accumulating injury on the plaintiff.” *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th Cir. 1987); *Animation Workers*, 87 F. Supp. 3d at 1212 (same).

Giving Plaintiffs the benefit of every favorable inference, they have alleged that SC-FOD is a limited form of refusal to deal in which Amazon determined in 2015 that it would only extend a “critical listing benefit,” SAC ¶ 125, to those third-party offers that are priced at or below the

---

[11] In addition to those courts, “the overwhelming majority of Circuits have explicitly held that antitrust claims are subject to a pure injury rule, not a discovery rule.” *Animation Workers*, 87 F. Supp. 3d at 1210 (collecting cases).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

prices at which equivalent products are available for purchase in the market, *id.* ¶¶ 24-25. When offers meet that standard, Amazon is willing to make them eligible for placement in the "most visible" corners of Amazon's store. *Id.* ¶ 34. Offers that are *eligible* to be featured are not automatically featured; instead, they must compete with offers from other sellers for the same product, adding another layer of competition and incentive to price competitively. When such offers do not meet the standard Amazon has set for products in its store, then Amazon is not willing to give them that highly visible placement. *Id.* As the Ninth Circuit has explained, the "*prime example* in [this] circuit" of conduct that does not restart the statute of limitations, is when a defendant that has made an "initial refusal to deal" outside the statute of limitations, adheres to and continues that refusal to deal into the limitations period. *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014). Subsequent refusals to deal based upon an initial decision made outside the limitations period are not new overt acts at all, but rather are the "unabated inertial consequences of [the] pre-limitations action." *Id.* (quoting *In re Multidistrict Vehicle Air Pollution*, 591 F.2d 68, 72 (9th Cir. 1979)); *see also David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 937-38 (9th Cir. 1981) (plaintiff's antitrust claim was untimely because the defendant's original refusal to deal occurred more than four years before the complaint was filed, and each subsequent refusal to deal was merely a "reaffirmation" of that original decision); *Eichman v. Fotomat Corp.*, 880 F.2d 149, 160 (9th Cir. 1989) ("[T]he passive receipt of profits from an illegal contract by an antitrust defendant is not an overt act of enforcement which will restart the statute of limitations.").[12]

Because Plaintiffs allege that "Amazon has maintained without change [the] overarching policy" embodied by SC-FOD, SAC ¶ 20, its continued use of that practice to the present does not restart the statute of limitations. Plaintiffs' claims based on SC-FOD are untimely as a result. *See Animation Workers*, 87 F. Supp. 3d at 1212 (dismissing workers' class claims as untimely);

[12] Other circuits follow the same principles. *See Concord Boat Corp. v. Brunswick Corp.* 207 F.3d 1039, 1052 (8th Cir. 2000) ("[A]cts that 'simply reflect or implement a prior refusal to deal or acts that are merely unabated inertial consequences (of a single act) do not restart the statute of limitations.'" (quoting *DXS, Inc. v. Siemens Med. Sys., Inc.*, 100 F.3d 462, 467-68 (6th Cir. 1996))).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1070-72 (N.D. Cal. 2012) (same); *Crowder v. LinkedIn Corp.*, 2023 WL 2405335, *3 (N.D. Cal. Mar. 8, 2023) (same for class of consumers).

**2. Plaintiffs Fail to Allege Substantial Anticompetitive Effects in Support of their Monopolization Claims.**

For all of the same reasons stated in Section IV.A.2, *supra*, Plaintiffs have failed to allege that the four alleged policies other than Amazon's unilateral use of SC-FOD have had any impact, much less a "substantial" negative impact, on competition in their alleged relevant markets. *Qualcomm*, 969 F.3d at 991.

Plaintiffs' allegations concerning SC-FOD likewise are insufficient to show a substantial harm to competition. As an initial matter, the alleged practice of making competitively priced offers "the most visible and easiest to purchase" in Amazon's store, SAC ¶ 134, has facially procompetitive attributes that should not be presumed to have harmed competition in the absence of well-pleaded facts that such harm actually occurred. "As a general matter, [retail] steering is both pro-competitive and ubiquitous." *United States v. Am. Express Co.*, 88 F. Supp. 3d 143, 150 (E.D.N.Y. 2015), *rev'd other grounds*, 838 F.3d 179 (2d Cir. 2016), *aff'd* 585 U.S. 529 (2018). "Merchants routinely attempt to influence customers' purchasing decisions, whether by placing a particular brand of cereal at eye level rather than on a bottom shelf, discounting last year's fashion inventory, or offering promotions such as 'buy one, get one free.'" *Id.*

Plaintiffs' allegation that Amazon creates a "critical listing benefit for third-party merchants" when it places their offers in the "Buy Box," SAC ¶ 125, is an allegation that Amazon increases the competitiveness of those offers, which in turn makes Amazon more competitive against other retail stores. That the same benefit cannot be given to all offers simultaneously—a "most visible" placement, *id.*, necessarily requires a less visible placement for something else—does not show harm to *competition*. *Coronavirus Rep. v. Apple Inc.*, 2021 WL 5936910, at *13 (N.D. Cal. Nov. 30, 2021) ("The effect of 'suppression' in search rankings affects the relative positions among products in the market; but there is no showing of harm to competition across the market."), *aff'd*, 85 F.4th 948 (9th Cir. 2023).



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiffs' theory is that Amazon's disqualification of uncompetitively priced offers from eligibility for the "Buy Box" creates a *de facto* parity requirement because sellers will raise their off-Amazon prices to create a false appearance of competitive pricing. SAC ¶¶ 25, 125-32. But despite that theory, the SAC contains only paper-thin allegations substantiating the alleged anticompetitive effect. Plaintiffs allege that there are 2.3 million third-party sellers in Amazon's marketplace, *id.* ¶ 65, yet they identify only a *single* third-party seller that allegedly sets higher prices in other marketplaces to improve his chances of being in the "Buy Box" on Amazon, *id.* ¶¶ 128, 132. Even then, Plaintiffs allege that this specific seller makes substantially all of his sales (98%) through Amazon, *id.* ¶ 128, such that the alleged pressure to raise prices in other stores applies to a *de minimis* volume of that seller's products, and the seller is just one of the millions of alleged third-party sellers on Amazon, and sells products in only a single category (children's toys) among the thousands—including personal care, clothing, and furniture—that are in Plaintiffs' alleged market definition that ranges from paper towels to toothpaste to t-shirts. That allegation is incapable of showing a "substantial anticompetitive effect" on the market as a whole. *Qualcomm Inc.*, 969 F.3d at 991.

As discussed above, Plaintiffs' allegation that German regulators deemed the former Parity Clause a "hardcore" antitrust violation under their laws, does not support a finding that either that clause, or the alleged *de facto* "MFN policies" that allegedly replaced it, had actual anticompetitive effects in the alleged US markets for "Online Marketplaces" or "Online Retail Sales." *Supra* at 9-10. Plaintiffs' allegations indicate that German regulators relied upon a market share allegation that would be legally insufficient to show monopoly power under US law. *See* SAC ¶ 141 (alleging a "30-40% share of the market … in Germany"); *but see infra* § IV.B.3 (market shares under 65% are insufficient to show monopoly power). And there is no indication in Plaintiffs' allegations that the foreign regulators found an actual anticompetitive effect sufficient to state a claim under the rule of reason, because they concluded that a vertical MFN policy was tantamount under their law to "horizontal price-fixing." SAC ¶ 144. Because the same conclusion would be untenable as a



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

matter of US antitrust law, *supra* at 10, it fails to provide support for Plaintiffs' allegations of anticompetitive harm under the rule of reason.

Finally, Plaintiffs' allegation that two of the largest online retailers in the country—Amazon and Walmart—charge comparable fees for access to their marketplaces, *see* SAC ¶ 117, fails to suggest any anticompetitive conduct. In any competitive market, similarly efficient firms would be expected to charge similar fees for equivalent services. *See, e.g., In re German Auto. Mfrs.' Antitrust Litig.*, 612 F. Supp. 3d 967, 982 (N.D. Cal. 2020) (allegation that non-competition agreement was evidenced by stable input price was speculative and failed to state a claim).

In short, Plaintiffs have not identified any anticompetitive conduct to sustain a claim.

### 3. Plaintiffs Have Not Alleged That Amazon Possesses Monopoly Power in any "Online Retail Sales Market."

Independent of the foregoing grounds, Plaintiffs' Second Cause of Action fails in relevant part to the extent that it alleges monopolization of the alleged "Online Retail Sales Market." SAC ¶¶ 106-113, 179. Plaintiffs' monopoly power allegations do not state a claim for monopolization.

"Antitrust violations must be judged on a market-by-market basis." *United States v. Syufy Enters.*, 903 F.2d 659, 672 n.22 (9th Cir. 1990). "In order to state a claim for monopolization under Section 2 of the Sherman Act, a plaintiff must prove: (1) Possession of monopoly power in the relevant market; (2) willful acquisition or maintenance of that power; and (3) causal antitrust injury." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (quoting *Pac. Express, Inc. v. United Airlines, Inc.*, 959 F.2d 814, 817 (9th Cir. 1992)). "To demonstrate market power circumstantially, a plaintiff must: (1) define the relevant market, (2) show that the defendant owns a *dominant share* of that market, and (3) show that there are significant barriers to entry and show that existing competitors lack the capacity to increase their output in the short run." *Rebel Oil Co., Inc. v. Atl. Richfield Co.*, 51 F.3d 1421, 1434 (9th Cir. 1995).[13] "Courts generally require a 65% market share to establish a *prima facie* case of market

---

[13] A plaintiff may alternatively prove market power with "direct proof" of reduced output or increased prices, *id.*, but Plaintiffs have not alleged such facts in support of their monopolization claim. What



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

power" for purposes of alleging a monopolization claim. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th Cir. 1997); *see also Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 n.5 (9th Cir. 2022) (same).

Plaintiffs' allegation that Amazon "control[s] over 50%" of the alleged "Online Retail Sales Market," SAC ¶ 107, is facially inadequate.[14] "Because the general market share requirement for a monopolization claim is 65%, a bare assertion that market share 'exceeds 60%' or constitutes 'a majority' does nothing but restate the market share requirement without any facts about what the defendant's market share actually is." *Malheur Forest Fairness Coal. v. Iron Triangle, LLC*, 2023 WL 6811871, at *9 (D. Or. Oct. 13, 2023) (citing *Image Tech. Servs.*, 125 F.3d at 1206). In like circumstances, courts routinely dismiss monopolization claims supported by allegations that the defendant controls "over 50%" (and sometimes higher) of the alleged relevant market. *See, e.g., FTC v. Facebook, Inc.*, 560 F. Supp. 3d 1, 18 (D.D.C. 2021) (allegation that defendant controlled "60%-plus" of the alleged market failed to state a monopolization claim); *Synthes, Inc. v. Emerge Med., Inc.*, 2012 WL 4473228, at *11 (E.D. Pa. Sept. 28, 2012) (same for allegation of "over 50% market share"); *EuroTec Vertical Flight Sols., LLC. v. Safran Helicopter Engines S.A.A.*, 2019 WL 3503240, at *3 (N.D. Tex. Aug. 1, 2019) (same).

Accordingly, the Court should dismiss Plaintiffs' Second Cause of Action, in relevant part, for the additional reason that it fails to allege that Amazon possesses monopoly power in the alleged "Online Retail Sales Market."

## V. CONCLUSION

Plaintiffs' Second Consolidated Amended Complaint should be dismissed in full.

---

Plaintiffs characterize as "direct evidence" of harm to competition in the alleged "Online Retail Marketplace" market, SAC ¶¶ 99-105, is both inadequate and specific to that first alleged market.

[14] *See also id.* ¶¶ 6 (alleging "over 50%" share), 170 ("over 50%"), 179 ("over 50%").



Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dated this 22nd day of May, 2024.

DAVIS WRIGHT TREMAINE LLP

*/s/ John A. Goldmark*
John A. Goldmark, WSBA #40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
Email: JohnGoldmark@dwt.com
Email: MaryAnnAlmeida@dwt.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

Karen L. Dunn (*pro hac vice)*
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C. 20006-1047
Telephone: (202) 223-7300
Fax: (202) 223-7420
E-mail: kdunn@paulweiss.com
E-mail: wisaacson@paulweiss.com
E-mail: amauser@paulweiss.com
E-mail: ksmith@paulweiss.com

*Attorneys for Amazon.com, Inc*

*I certify that this memorandum contains 6,805 words, in compliance with the Local Civil Rules.*