1

2

3

4

5

6

7                                                    The Honorable John H. Chun

8                           UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
9                                     AT SEATTLE

10

11   ELIZABETH DE COSTER *et al.*, on behalf of
     themselves and all others similarly situated,
12                                                    No. 2:21-cv-00693-JHC

13                Plaintiffs,                         **DEFENDANT AMAZON.COM INC.'S**
                                                      **UNOPPOSED MOTION REGARDING**
14           v.                                       **REDACTIONS TO SEALED ORDER**
                                                      **DENYING MOTION TO DISMISS**
15   AMAZON.COM, INC., a Delaware corporation,

16                Defendant.                          NOTE ON MOTION CALENDAR:
                                                      December 2, 2024
17

18   DEBORAH FRAME-WILSON, et al., on behalf
     of themselves and all others similarly situated,
19                                                    No. 2:20-cv-00424-JHC

20                Plaintiffs,

21           v.

22   AMAZON.COM, INC., a Delaware corporation,

23                Defendant.

24

25

26

27

AMAZON'S UNOPPOSED MOTION RE: REDACTIONS TO ORDER          Davis Wright Tremaine LLP
DENYING MTD (2:21-cv-00693-JHC, 2:20-cv-00424-JHC)              LAW OFFICES
                                                            920 Fifth Avenue, Suite 3300
                                                             Seattle, WA 98104-1610
                                                       206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

On November 19, 2024, the Court entered an Order denying Amazon's Motion to Dismiss the Second Amended Complaint in *De Coster* (Dkt. 125) and the Third Amended Complaint in *Frame-Wilson* (Dkt. 147). *See De Coster*, Dkt. 228; *Frame-Wilson*, Dkt. 215. The Court provisionally filed the Order under seal and directed "the parties to file a joint statement, on or before December 2, 2024, indicating what redactions, if any, should be included in the public version of the Order." *De Coster*, Dkt. 228 at 26.

Of the twenty-five pages in the Court's Order, Amazon seeks to redact six words, *De Coster*, Dkt. 228 at 4:23, 14:12, 15:23, 20:8, which the Court previously sealed in the Second Amended Complaint in *De Coster* and the Third Amended Complaint in *Frame-Wilson*. Attached as Exhibit A is a version of the Court's November 19, 2024 Order with Amazon's requested redactions. The Parties met and conferred pursuant to the Court's Order, and Plaintiffs consent to Amazon's requested redactions.

## II.    ARGUMENT

As explained in Amazon's prior motions to seal, *De Coster*, Dkt. 130; *Frame-Wilson*, Dkt. 157, courts have long recognized that "business information that might harm a litigant's competitive standing" should be sealed. *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). That is what Amazon successfully sought to seal in the Complaints and what Amazon again seeks to seal here. The material Amazon seeks to seal is highly sensitive commercial information that should remain sealed because its disclosure could harm Amazon's standing in the highly competitive retail environment. *See De Coster*, Dkt. 131 (Declaration of Caroline Jones) at ¶¶ 4–10.

### A.    Legal Standard

The Western District of Washington Local Civil Rules permits sealing confidential information upon a showing of "the legitimate private or public interests that warrant the relief sought; the injury that will result if the relief sought is not granted; and why a less restrictive alternative to the relief sought is not sufficient." LCR 5(g)(3)(B). The Court may seal judicial

AMAZON'S UNOPPOSED MOTION RE: REDACTIONS TO ORDER
DENYING MTD (2:21-cv-00693-JHC, 2:20-cv-00424-JHC) - 1

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

records when a party provides a compelling reason to keep information out of the public view. *Kamakana* v. *City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). "What constitutes a 'compelling reason' is 'best left to the sound discretion of the trial court.'" *Ctr. for Auto Safety* v. *Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Nixon*, 435 U.S. at 599); *see also In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (finding "clear error" when a trial court did not seal "confidential and commercially sensitive information").

Courts have long recognized that "business information that might harm a litigant's competitive standing" should be sealed. *Nixon*, 435 U.S. at 598; *see also Burrows* v. *3M Co.*, 2023 WL 13345429, at *2 (W.D. Wash. Jan. 31, 2023) (recognizing "the risk of competitive harm through disclosure of confidential and proprietary information warrants maintaining documents under seal, even in light of the general presumption of public access to judicial documents"). Further, sealing is warranted when disclosure would adversely affect future internal business deliberations, *see In re Zillow Grp., Inc. S'holder Derivative Litig.*, 2019 WL 3428664, at *2 (W.D. Wash. July 30, 2019), or when the information consists of "nonpublic information regarding litigants' sales, cost, profit, and market share data," *Eko Brands, LLC* v. *Adrian Rivera Maynez Enters., Inc.*, 2018 WL 11433938, at *1 (W.D. Wash. Oct. 12, 2018).

### B.    Amazon Has A Compelling Interest In Keeping The Details Of Its Proprietary, Internal Processes Under Seal

Of the more than 25 pages in the Court's Order, Amazon seeks to seal six words that contain highly confidential and competitively sensitive information, the disclosure of which could cause significant harm to Amazon as the material purportedly describes specific details regarding its proprietary, internal processes. Jones Decl. ¶¶ 7–9 (*De Coster*, Dkt. 131).

The Court's Order quotes material from Plaintiffs' complaints that purport to describe details of Amazon's confidential and proprietary business processes that, if published, would "harm [Amazon's] competitive standing." *Nixon*, 435 U.S. at 598; *see also De Coster*, Dkt. 228 at 4:23, 14:12, 15:23, 20:8. Amazon devotes significant resources to developing these proprietary processes and does not disclose those details publicly. Jones Decl. ¶ 7. Moreover, if the internal

AMAZON'S UNOPPOSED MOTION RE: REDACTIONS TO ORDER
DENYING MTD (2:21-cv-00693-JHC, 2:20-cv-00424-JHC) - 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

processes underlying this program were made public, Amazon's competitors could use them to improve their competing programs and/or alter their systems to thwart Amazon's efforts, thereby gaining an unfair competitive advantage as a result. *Id*. ¶ 8. The Court previously ordered that these portions of Plaintiffs' complaints be filed under seal. *De Coster*, Dkt. 135; *Frame-Wilson*, Dkt. 163.

There is no legitimate reason to make public such commercially sensitive information. To the contrary, the risk of Amazon's competitors using this commercially sensitive information to their own advantage significantly outweighs any public interest in disclosure of these discrete pieces of information, especially in light of the limited nature of Amazon's proposed redactions. *See Kamakana,* 447 F.3d at 1179; *Nixon*, 435 U.S. at 598. Further, there is no less-restrictive alternative than Amazon's proposed redaction. *See* LCR 5(g)(3)(B). Amazon seeks only to seal the specific metrics while allowing all other information to enter the public domain. Jones Decl. ¶ 9.

## III.    CONCLUSION

For the above reasons, Amazon respectfully requests that the Court publicly file its Order denying Amazon's Motion to Dismiss the Second Amended Complaint in *De Coster* (Dkt.125) and Third Amended Complaint in *Frame-Wilson* (Dkt. 147) with the redactions included in Exhibit A.

DATED this 2nd day of December, 2024.

DAVIS WRIGHT TREMAINE LLP

*/s/ John A. Goldmark*
John A. Goldmark, WSBA #40980
MaryAnn Almeida, WSBA #49086
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Telephone: (206) 757-8136
Fax: (206) 757-7136
Email: JohnGoldmark@dwt.com
Email: MaryAnnAlmeida@dwt.com

AMAZON'S UNOPPOSED MOTION RE: REDACTIONS TO ORDER
DENYING MTD (2:21-cv-00693-JHC, 2:20-cv-00424-JHC) - 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

Karen L. Dunn (*pro hac vice*)
William A. Isaacson (*pro hac vice*)
Amy J. Mauser (*pro hac vice*)
Kyle Smith (*pro hac vice*)
2001 K Street, NW
Washington, D.C.
Telephone: (202) 223-7300
Fax: (202) 223-7420
E-mail:  kdunn@paulweiss.com
E-mail:  wisaacson@paulweiss.com
E-mail:  amauser@paulweiss.com
E-mail:  mgoodman@paulweiss.com
E-mail:  ksmith@paulweiss.com

Meredith Dearborn (*pro hac vice*)
535 Mission Street, 24th Floor
San Francisco, CA  94105
Telephone: (628) 432-5100
Fax: (628) 232-3101
E-mail:  mdearborn@paulweiss.com

*I certify that this memorandum contains 905
words, in compliance with the Local Civil Rules.*

*Attorneys for Amazon.com, Inc.*

AMAZON'S UNOPPOSED MOTION RE: REDACTIONS TO ORDER
DENYING MTD (2:21-cv-00693-JHC, 2:20-cv-00424-JHC) - 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# Exhibit A

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELIZABETH DE COSTER et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 2:21-cv-00693-JHC<br><br>SEALED ORDER DENYING MOTION TO DISMISS |
| DEBORAH FRAME-WILSON, et al., on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>Defendant. | CASE NO. 2:20-cv-00424-JHC |

1

## I

### INTRODUCTION

2

3    This antitrust matter comes before the Court on Defendant Amazon.com, Inc.'s Motion to

4    Dismiss. Case No. 21-693, Dkt. # 142.[1]  The Court has reviewed the materials filed in support

5    of and in opposition to the motion, pertinent portions of the record, and the applicable law.  The

6    Court finds that oral argument is unnecessary.  For the reasons below, the Court DENIES the

7    motion.

## II

### BACKGROUND

8

9

10    The factual background in this section derives from allegations in the Second

11    Consolidated Amended Complaint (SCAC) in *De Coster v. Amazon.com*, Case No. 21-693, Dkts.

12    ## 125 (sealed), 126 (redacted), and the Third Amended Complaint (TAC) in *Frame-Wilson v.

13    Amazon.com*, Case No. 20-424, Dkts. ## 147 (sealed), 165 (redacted), which the Court accepts as

14    true on a Rule 12(b)(6) motion to dismiss.[2]

15    Amazon "operates the largest online retail marketplace in the United States" and sells

16    around 12 million goods on its platform.  Case No. 21-693, Dkt. # 126 at 5 ¶¶ 3–4 (redacted);

17    Case No. 20-424, Dkt. # 165 at 40, 42 ¶¶ 94, 100 (redacted).  According to Plaintiffs, the

18    company "accounts for 65% to 70% of sales in the Online Retail Marketplace Market and over

19    50% of the revenue general in the Online Retail Sales Market."  Case No. 21-693, Dkt. # 126 at

20    59 ¶ 179; Case No. 20-424, Dkt. # 165 at 82 ¶¶ 213–14.  Amazon designed its marketplace to be

21

22    [1] The Court granted the Parties' Stipulated Motion Regarding Amazon's Motions to Dismiss the
Amended Complaints and "Amazon's Motion to Dismiss filed in *De Coster v. Amazon.com, Inc.*, No.
2:21-cv-00693-JHC (W.D. Wash.), Dkt. 142, is deemed filed in *Frame-Wilson v. Amazon.com, Inc.*, No.
23    2:20-cv-424-JHC (W.D. Wash.)"  Case No. 21-693, Dkt. # 153 at 6; Case No. 20-424, Dkt. # 169 at 6.
Thus, this Order applies "equally to both *De Coster* and *Frame-Wilson*."  *Id.*

24    [2] This section largely limits the description of the background to allegations in the SCAC and
TAC related to Amazon's Motion to Dismiss.

a platform for third-party sellers to register and list goods for sale. Case No. 21-693, Dkt. # 126 at 5 ¶ 5; Case No. 20-424, Dkt. # 165 at 39 ¶ 92. Third-party sellers "post their products on the platform, which Amazon presents to users together with its own goods according to a certain algorithm that takes the form of a ranking list." Case No. 21-693, Dkt. # 126 at 5 ¶ 5; Case No. 20-424, Dkt. # 165 at 5–6 ¶ 4 (internal quotation omitted).

According to Plaintiffs, Amazon denies its customers the "benefits of lower prices and fees" that would arise in a competitive market; it does so by imposing on third-party sellers "Most Favored Nation" (MFN) policies that cause customers to pay supra-competitive prices. Case No. 21-693, Dkt. # 126 at 9 ¶ 15; Case No. 20-424, Dkt. # 165 at 8 ¶ 8. Amazon's MFN policies prevent "third-party sellers from offering lower prices off of Amazon, and punish them for violations, which in turn insulates Amazon from competition from low cost, alternative platforms." Case No. 21-693, Dkt. # 126 at 9 ¶ 15; Case No. 20-424, Dkt. # 165 at 8 ¶ 8. Plaintiffs say that the MFN policies "require sellers to keep prices off Amazon as high or higher than prices on Amazon" or (1) a seller's goods will be ineligible for the "Buy Box"[3]; (2) the goods will be removed from the marketplace; (3) shipping options for the seller's products will be suspended; and (4) "the third-party seller's ability to have any goods sold on Amazon's marketplace" will be terminated or suspended. Case No. 21-693, Dkt. # 126 at 17 ¶ 34; Case No. 20-424, Dkt. # 165 at 14 ¶ 25.

Plaintiffs allege that Amazon has implemented various MFN policies over time. Case No. 21-693, Dkt. # 126 at 9 ¶ 17; Case No. 20-424, Dkt. # 165 at 8 ¶ 9. Up until March 2019, Amazon's Business Solutions Agreement (BSA) included a Price Parity Clause (PPC) that

---

[3] The "Buy Box" is a feature in which a customer can "Add to Cart" or "Buy Now" an "Amazon-selected offer for a product." Case No. 21-693, Dkt. # 126 at 5 ¶ 5; Case No. 20-424, Dkt. # 165 at 18 ¶ 37.

prohibited third-party sellers "from listing goods on other online retail platforms—whether marketplace or single-merchant websites—at prices lower than their Amazon list prices." Case No. 21-693, Dkt. # 126 at 9–10 ¶ 17; Case No. 20-424, Dkt. # 165 at 8 ¶¶ 9–10. Also, in mid-2015, Amazon introduced the "Select-Competitor – Featured Offer Disqualification" (SC-FOD) algorithm, which Amazon "expanded as a tool for securing third-party sellers' price parity after it repealed" the PPC in 2019. Case No. 21-693, Dkts. ## 125 at 12 ¶ 22 (sealed), 126 at 12 ¶ 22 (redacted); Case No. 20-424, Dkt. # 165 at 9 ¶ 13. Plaintiffs say that Amazon uses SC-FOD "to disqualify a seller's offer from winning the "Buy Box" if Amazon detects a price that is lower— even by a penny—for that product on any online store that Amazon designates as a 'Select Competitor.'" Case No. 21-693, Dkts. ## 125 at 12 ¶ 23 (sealed), 126 at 12 ¶ 23 (redacted); Case No. 20-424, Dkt # 165 at 10 ¶ 14 (redacted). Plaintiffs also allege that "99%" of all products purchased in the marketplace are sold via the "Featured Offer/Buy Box." Case No. 21-693, Dkts. ## 125 at 12–13 ¶ 23 (sealed), 126 at 12–13 ¶ 23 (redacted); Case No. 20-424, Dkt. # 165 at 10 ¶ 14. "Achieving price parity through the elimination of lower prices outside of Amazon Marketplace is the overarching goal of the SC-FOD, and Amazon punishes sellers if it finds lower prices off Amazon." Case No. 21-693, Dkt. # 126 at 13 ¶ 24; Case No. 20-424 Dkt. # 165 at 10 ¶ 15. Once Amazon finds that an offer is "un-competitive," it penalizes the seller by removing their access to the "Buy Box." Case No. 21-693, Dkt. # 126 at 13 ¶ 24; Case No. 20-424, Dkt. # 165 at 10 ¶ 15.

Plaintiffs say that Amazon "has continued to modify and expand its SC-FOD algorithm over time," including expanding "the number of online stores that it monitored after" Amazon removed the PPC from the BSA in 2019. Case No. 21-693, Dkt. # 126 at 13–14 ¶ 26; Case No. 20-424, Dkt. # 165 at 11 ¶ 17. Amazon currently tracks "nearly ▮▮▮▮ price comparison points" and the "expansion increased the punitive aspects of the SC-FOD algorithm, by ensuring

that more products were monitored[,] and more sellers were penalized." Case No. 21-693, Dkts. ## 125 at 14 ¶ 26 (sealed), 126 at 14 ¶ 26 (redacted); Case No. 20-424, Dkts. ## 147 at 11 ¶ 17 (sealed), 165 at 11 ¶ 17 (redacted).  According to Plaintiffs, SC-FOD, like the PPC, penalizes "sellers for offering prices off Amazon that are lower than their prices on Amazon, even where their costs are lower through other online sales channels." Case No. 21-693, Dkt. # 126 at 14 ¶ 28; Case No. 20-424, Dkt. # 165 at 11–12 ¶ 19.

Plaintiffs also allege that Amazon's Standard for Brands (ASB) program, introduced in 2018, is an MFN policy that "prevents brand owners and their seller representatives from offering a lower price off of Amazon than they offer on Amazon or allowing their distributors to do so." Case No. 21-693, Dkt. # 126 at 14 ¶ 29; Case No. 20-424, Dkt. # 165 at 12 ¶ 20.  Under the ASB program, a seller receives a warning from Amazon if it finds a price for a product on another platform lower than the price of the product on Amazon.  Case No. 21-693, Dkt. # 126 at 14 ¶ 29; Case No. 20-424, Dkt. # 165 at 12 ¶ 20.  "Brand owners and their third-party seller representatives also face the further risk of losing the opportunity to operate as a seller in the Amazon store altogether if they do not maintain price competitiveness." Case No. 21-693, Dkt. # 126 at 16 ¶ 31; Case No. 20-424, Dkt. # 165 at 12–13 ¶ 22 (internal quotation omitted).  Sellers lose their selling privileges in addition to losing their access to the "Buy Box" if they fail to meet Amazon's price competitiveness targets.  Case No. 21-693, Dkt. # 126 at 15–16 ¶ 31; Case No. 20-424, Dkt. # 165 at 12–13 ¶ 22.

Likewise, Plaintiffs allege that Amazon's 2021 clarification to its Seller Code of Conduct (SCC) is an MFN policy that, like the ASB program, is incorporated into Amazon's BSA.  Case No. 21-693, Dkt. # 126 at 16 ¶ 32; Case No. 20-424, Dkt. # 165 at 13 ¶ 23.  Amazon considers it a violation of the SCC "if off-Amazon rebates, discounts, and other schemes are designed to drive customers to products that are listed and sold without those incentives on Amazon." Case

No. 21-693, Dkts. ## 125 at 16 ¶ 32 (sealed),126 at 16 ¶ 32 (redacted); Case No. 20-424, Dkt. # 165 at 13 ¶ 23 (internal quotation omitted). Also, Amazon's Marketplace Fair Pricing Policy (MFPP), incorporated by reference in the BSA, provides that if a third-party seller's pricing practices "harms customer trust," then Amazon can impose sanctions on the seller. Case No. 21-693, Dkt. # 126 at 16 ¶ 33; Case No. 20-424, Dkt. # 165 at 14 ¶ 24 (internal quotation omitted). Under the MFPP, a pricing practice "harms customer trust" when a seller "lists goods on a competing online retail platform at prices that are significantly below its Amazon list prices." Case No. 21-693, Dkt. # 126 at 16 ¶ 33; Case No. 20-424, Dkt. # 165 at 14 ¶ 24 (internal quotation omitted).

The Plaintiffs in *De Coster* filed the SCAC on April 22, 2024. Case No. 21-693, Dkts. ## 125 (sealed), 126 (redacted). They bring three causes of action individually and on behalf of a putative class of similarly situated individuals: (1) a claim under Section One of the Sherman Act (15 U.S.C. § 1); (2) a claim under Section Two of the Sherman Act—monopolization (15 U.S.C. § 2); and (3) another claim under Section Two of the Sherman Act—attempted monopolization (15 U.S.C. § 2). Case No. 21-693, Dkts. ## 125 (sealed), 126 (redacted).

The Plaintiffs in *Frame Wilson* filed the TAC on May 13, 2024. Case No. 20-424, Dkts. ## 147, 165.[4] They bring four causes of action individually and on behalf of a putative class of similarly situated individuals: (1) a claim under Section One of the Sherman Act (15 U.S.C. § 1); (2) a claim under Section Two of the Sherman Act—monopolization (15 U.S.C. § 2); (3) a second claim under Section Two of the Sherman Act—attempted monopolization (15 U.S.C. § 2); and (4) a third claim under Section Two of the Sherman Act—conspiracy to monopolize (15 U.S.C. § 2).

---

[4] Plaintiffs filed the public version of the TAC on June 7, 2024. *See* Case No. 20-424, Dkt. # 165.

1    On June 12, 2024, the Court granted the Parties' Stipulated Motion Regarding Amazon's

2    Motions to Dismiss the Amended Complaints. Case No. 21-693, Dkt. # 153; Case No. 20-424,

3    Dkt. # 169. As stated in the Order, "Amazon's Motion to Dismiss filed in *De Coster v.*

4    *Amazon.com, Inc.*, No. 2:21-cv-00693-JHC (W.D. Wash.), Dkt. 142, is deemed filed in *Frame-*

5    *Wilson v. Amazon.com, Inc.*, No. 2:20-cv-424-JHC (W.D. Wash.)" Case No. 21-693, Dkt. # 153

6    at 6; Case No. 20-424, Dkt. # 169 at 6. Under Federal Rule of Civil Procedure 12(b)(6), Amazon

7    moves to dismiss the operative complaints in *De Coster* and *Frame-Wilson* for failure to state a

8    Sherman Act Section One or Two claim. Case No. 21-693, Dkts. ## 142, 158.

### III
#### DISCUSSION

11    When considering a motion to dismiss under Rule 12(b)(6), a court construes the

12    complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon*

13    *Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded

14    facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v.*

15    *Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a

16    complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

17    plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

18    *Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads

19    factual content that allows the court to draw the reasonable inference that the defendant is liable

20    for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

21    A.    Sherman Act Section One - Rule of Reason Claim

22    Section One of the Sherman Act prohibits "[e]very contract, combination in the form of

23    trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States." 15

U.S.C. § 1.  But courts have long recognized that Section One "outlaw[s] only *unreasonable restraints*" on trade or commerce. *Ohio v. Am. Express Co.*, 585 U.S. 529, 540 (2018) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)) (emphasis in original).  An "unreasonable restraint" is either per se illegal or treated as such under the "rule of reason." *Id.* at 540-41; *see also Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 974 (9th Cir. 2023).

In resolving Amazon's prior motions to dismiss, other courts in this District concluded that Plaintiffs failed to state a claim for per se liability under Section One. *De Coster v. Amazon.com, Inc.*, Case No. C21-693RSM, 2023 WL 372377, at *4 (W.D. Wash. Jan. 24, 2023) (reasoning that "per se liability is not available on these facts"); *see also Frame-Wilson v. Amazon.com, Inc.,* 591 F. Supp. 3d 975, 988 (W.D. Wash. 2022), *reconsideration denied*, No. 2:20-CV-00424-RAJ, 2022 WL 4240826 (W.D. Wash. Aug. 2, 2022) (concluding that "Plaintiffs' allegations of a per se violation fail as conclusory and unsupported").  Plaintiffs are no longer pursuing a per se theory of liability.  Case No. 21-693, Dkt. # 126 at 4, ¶ 1; Case No 20-424, Dkt. # 165 at 4 ¶ 1.

The rule of reason requires a plaintiff to show "that a particular contract or combination is in fact unreasonable and anticompetitive." *California ex rel. Harris v. Safeway, Inc.*, 651 F.3d 1118, 1133 (9th Cir. 2011) (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006)).  Thus, to state a rule of reason claim, a plaintiff must allege that (1) an agreement exists, (2) the agreement imposed an unreasonable restraint on trade (i.e., had an anticompetitive effect) under a rule of reason analysis, (3) the restraint was within the relevant market, and (4) it affected interstate commerce. *See Am. Ad. Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 784 (9th Cir. 1996); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 767 (1984).  Amazon contends that Plaintiffs' Section One claim fails because they (1) fail to allege an agreement, and (2) fail to allege substantial anticompetitive effects. *See* Case No. 21-693, Dkt. # 142 at 11–17.

1.    The Existence of an Agreement

Amazon says that Plaintiffs cannot maintain a Sherman Act Section One claim because SC-FOD is an "algorithm," and Plaintiffs do not allege that SC-FOD is a part "of any agreement between Amazon, its third-party sellers, or anyone else." Case No. 21-693, Dkt. # 142 at 11–12 (citing Case No. 21-693, Dkt. # 126 at 12–14 ¶¶ 22, 24, 26 (redacted)). It contends that Section One "does not reach conduct that is 'wholly unilateral.'" *Id.* at 12 (quoting *Copperweld*, 467 U.S. at 768). Yet Amazon acknowledges that Judge Ricardo Martinez, in resolving the company's prior motion to dismiss in *De Coster*, already determined that "the former [PPC] and the [MFPP] were adequately alleged to be the product of agreements." *Id.* at 13 n. 6 (citing *De Coster v. Amazon.com, Inc.*, No. C21-693RSM, 2023 WL 372377, at *3–4 (W.D. Wash. Jan. 23, 2023)). Amazon states that its motion "assumes, without conceding, that the newly-identified ASB program and [SCC] would [also] be treated as agreements under the same analysis." *Id.*

Plaintiffs respond that, for Section One purposes, "it is not necessary to find an express agreement, either oral or written, instead it is sufficient that a concert of action be contemplated and that the defendant and its co-conspirators conform to the arrangement." Case No. 21-693, Dkt. # 156 at 12 (redacted) (quoting *Arandell Corp. v. CenterPoint Energy Servs.*, 900 F.3d 623, 634 (9th Cir. 2018)) (internal quotations omitted). Plaintiffs say that Judges Richard Jones and Ricardo Martinez already held that they "satisfied the concerted action requirement" by pleading that "Amazon monitors the prices of sellers' products on and off Amazon, notifies and penalizes sellers when their prices are higher on Amazon than off, and that sellers set their prices to comply with Amazon's parity requirements . . . to avoid penalties like Buy Box removal." *Id.* at 12–13 (citing *Frame-Wilson*, 591 F. Supp. 3d at 981; *De Coster*, 2023 WL 372377, at *1-4; *Frame-Wilson*, 664 F. Supp. 3d 1198, 1207 (W.D. Wash. 2023)). They also contend that "Amazon's operation of SC-FOD is a series of overt acts taken in furtherance of its

1    anticompetitive MFN policies" and that Amazon stated in its motion to dismiss that it was not

2    "'seek[ing] reconsideration' of the Court's order finding that sellers' compliance with the PPC

3    and MFPP satisfies the concerted action requirement." *Id.* at 13–14 (quoting Case No. 21-693,

4    Dkt. # 142 at 13 n. 6).

5         In resolving the prior motion to dismiss in *De Coster*, Judge Martinez agreed "with

6    Plaintiffs that Amazon has failed to demonstrate a lack of concerted action, or that concerted

7    action is implausible." *De Coster*, 2023 WL 372377, at *3-4; *see also* Case No. 21-693, Dkt.

8    # 142 at 13 n. 6. At this stage of the litigation, the Court need not consider whether SC-FOD

9    constitutes an agreement for Section One purposes. *See Twombly*, 550 U.S. at 563 ("[O]nce a

10   claim has been stated adequately, it may be supported by showing any set of facts consistent with

11   the allegations in the complaint."); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594

12   (8th Cir. 2009) (On a Rule 12(b)(6) motion to dismiss, "the complaint should be read as a whole,

13   not parsed piece by piece to determine whether each allegation, in isolation, is plausible").

14        2.    Anticompetitive Effects

15        As stated above, under a rule of reason analysis, a plaintiff must show the agreement

16   imposed an unreasonable restraint on trade (i.e., had an anticompetitive effect). *GTE Corp.*, 92

17   F.3d at 784; *Copperweld Corp.*, 467 U.S. at 767. As for Section One, a plaintiff may show that a

18   restraint has anticompetitive effects in a relevant market through direct or indirect evidence.

19   *Qualcomm Inc.*, 969 F.3d at 989 (citing *Am. Express Co.*, 585 U.S. at 541). Direct evidence of

20   anticompetitive effects includes "'proof of actual detrimental effects [on competition],' *F.T.C. v.*

21   *Ind. Fed'n of Dentists*, 476 U.S. 447 (1986), such as reduced output, increased prices, or

22   decreased quality in the relevant market." *Am. Express Co.*, 585 U.S. at 542 (alteration in

23   original); *see also F.T.C. v. Qualcomm Inc.*, 969 F.3d 974, 989 (9th Cir. 2020); *PLS.Com, LLC v.*

24   *Nat'l Ass'n of Realtors*, 32 F.4th 824, 834 (9th Cir. 2022). Indirect or circumstantial evidence of

1    anticompetitive effects include "proof of market power plus some evidence that the challenged

2    restraint harms competition." *Qualcomm Inc.*, 969 F.3d at 989 (citation omitted); *see also Am.*

3    *Express Co.*, 585 U.S. at 542; *PLS.Com, LLC*, 32 F.4th at 834. Under the rule of reason, a court

4    must "conduct a fact-specific assessment of 'market power and market structure ... to assess the

5    [restraint]' s actual effect' on competition." *Am Express Co.*, 585 U.S. at 541 (quoting

6    *Copperweld Corp.*, 467 U.S. at 768.

7        Amazon contends that Plaintiffs have failed to allege the "necessary 'substantial

8    anticompetitive effect' arising from any of their alleged vertical agreements." Case No. 21-693,

9    Dkt. # 142 at 13–14 (quoting *Qualcomm Inc.*, 969 F.3d at 990; *Am. Express Co.*, 585 U.S. at

10   541). Amazon acknowledges that "[t]his issue was not presented to, or decided . . . in Amazon's

11   previous motion[s] to dismiss." *Id.* at 14 n.8. But Amazon says that it "is raising th[e] issue now

12   both because Plaintiffs' [complaints] change[ ] their allegations about the [MFPP], and because

13   [they] inject[ ] two additional policies without alleging facts adequate to show that they have

14   anticompetitive effects." *Id.* It argues that Plaintiffs have not "allege[d] facts showing that the

15   [PPC], ASB [program], [MFPP], and/or [SCC] have anything to do with disqualifying third-

16   party sellers from access to the Featured Offer or Buy Box." *Id.* at 14.[5]

17   _____

18       [5] Amazon also challenges the purported anticompetitive effects of the four policies as to
     Plaintiffs' Section Two Sherman Act claims. Case No. 21-693, Dkt. # 142 at 20. Amazon says that

19   "[f]or all of the same reasons," Plaintiffs' allegations about the PPC, ASB program, MFPP, and SCC
     cannot show a "'substantial' negative impact on competition in their alleged relevant markets." *Id.*

20   (quoting *Qualcomm Inc.*, 969 F.3d at 991). The Ninth Circuit has determined that "[r]egardless of
     whether the alleged antitrust violation involves concerted anticompetitive conduct under § 1 or

21   independent anticompetitive conduct under § 2, the three-part burden-shifting test under the rule of reason
     is essentially the same." *Qualcomm Inc.*, 969 F.3d at 991. This "means that courts often review claims

22   under each section simultaneously" and "[i]f, in reviewing an alleged Sherman Act violation, a court finds
     that the conduct in question is not anticompetitive under § 1, the court need not separately analyze the

23   conduct under § 2." *Id.* But while a plaintiff may use indirect evidence to show the anticompetitive effect
     of an alleged restraint under Section One, they *may not* rely on indirect evidence to show the
     anticompetitive effect of an alleged unlawful monopoly under Section Two. *Id.* The Court's analysis

24   focuses on direct evidence of the anticompetitive effects of the policies. Thus, the analysis applies to
     Plaintiffs' Section One and Section Two claims.

1       *Price Parity Clause & Marketplace Fair Pricing Policy.* Plaintiffs respond that Amazon

2  fails to explain why the new allegations in the SCAC and TAC about SC-FOD "prevented

3  Amazon from challenging allegations of anticompetitive effects of its MFN policies in its first

4  three motions to dismiss." Case No. 21-693, Dkt. # 156 at 14 (redacted) (citing Case No. 21-

5  693, Dkt. # 142 at 14 n.8). They contend that Amazon "waived challenges to the sufficiency of

6  the anticompetitive effects of the PPC and MFPP" because "Amazon's [anti-competitive effects]

7  argument [is] squarely aimed at Plaintiffs' unchanged allegations of anticompetitive harm under

8  the PPC and MFPP." *Id.* at 14–15 (quoting *Fitzpatrick v. City of Los Angeles*, 2022 WL

9  18142509, at *7 (C.D. Cal. Nov. 17, 2022)).

10      Under Rule 12(g), a party that makes a motion under Rule 12 "must not make another

11 motion under this rule raising a defense or objection that was available to the party but omitted

12 from its earlier motion." Fed. R. Civ. P. 12(g)(2). Thus, "[t]he failure to challenge a particular

13 cause of action in a prior 12(b)(6) motion precludes such a challenge in a subsequent 12(b)(6)

14 motion." *Rutherford v. Palo Verde Healthcare Dist.*, No. LA CV13-01247 JAK (SPx), 2014 WL

15 12631845, at *10 (C.D. Cal. May 20, 2014); *see also Fairhaven Health LLC v. BioOrigyn, LLC*,

16 Case No. 2:19-cv-01860-RAJ, 2021 WL 5987023, at *6 (W.D. Wash. Dec. 17, 2021) (reasoning

17 that the defendant was "precluded" from raising certain arguments in its second Rule 12(b)(6)

18 motion because these arguments had been "available" to the defendant when it had filed its first

19 Rule 12(b)(6) motion).

20      Here, Amazon could have made this argument with respect to the PPC and MFPP in its

21 prior motions to dismiss. To the extent it suggests that the new allegations in the complaints

22 about SC-FOD, the ASB program, or the SCC revive its ability to raise the anticompetitive

23 effects issue as to the PPC or MFPP, the Court disagrees. The allegations regarding

24 anticompetitive effects Amazon challenges in its current motion to dismiss had been included in

prior iterations of the complaints.  For example, in its motion, Amazon contends that Plaintiffs

fail to allege that PPC has substantial anticompetitive effects because the SCAC says only that

the PPC "expressly prohibited third-party merchants from listing goods on other online retail

platforms . . . at prices lower than their Amazon list prices." (quoting Case No. 21-693, Dkt.

# 126 at 9–10 ¶ 17).  But the First Consolidated Amended Complaint in *De Coster* contained the

very same language as the SCAC about the PPC and stated that the policy "expressly prohibited

third-party merchants from listing goods on other online retail platforms . . . at prices lower than

their Amazon list prices."  Case No. 21-693, Dkt. # 20 at 9 ¶ 16.

Likewise, Amazon challenges the alleged "substantial anticompetitive effects" of the

MFPP.  Case No. 21-693, Dkt. # 142 at 16.  The first and second amended complaints in *Frame-*

*Wilson* contained allegations regarding the MFPP, *see, e.g.*, Case No. 20-424, Dkt. # 15 at 55–57

¶¶ 102–09; Case No. 20-424, Dkt. # 55 at 62–63 ¶¶ 129–32, and Amazon argued in its first

motion to dismiss in *Frame-Wilson* that the MFPP was not "anticompetitive conduct" under

*Section Two* of the Sherman Act.  *See Frame-Wilson*, 591 F. Supp. 3d at 990–91.  Judge Jones

rejected that argument, determining that

> Amazon's pricing policy requires sellers to add Amazon's fees to the cost of their
> products when they sell them on all external platforms. The cost of the product is
> thus based on the price of the product itself—as set by the seller—plus the cost of
> Amazon-set fees, which are built into the product cost on the Amazon.com
> platform. Such a pricing provision could—and as Plaintiffs allege, does in fact—
> raise the cost of products on external platforms that charge lower fees than Amazon.
> Amazon thus suppresses competition from its sellers on external platforms, "where
> they would otherwise competitively price their goods at a lower price." Consumers
> of such products are therefore subject to higher prices of products on external
> platforms as a result of Amazon's pricing policy. Here, Plaintiffs state facts, which,
> if taken as true, are sufficient to demonstrate that the conduct at issue has resulted
> in and continues to result in the suppression of competition and increase of prices
> on external platforms.

*Id.* at 991–92 (quoting Dkt. # 15 ¶ 3).  Thus, Amazon may not reassert this argument.

1    *Amazon Standard for Brands & Seller Code of Conduct.* Amazon asserts that Plaintiffs'

2    allegations about the ASB program may "suffice to show injury to . . . individual sellers" but fail

3    to allege injury to "*competition.*" Case No. 21-693, Dkt. # 142 at 15 (citing *Legal Econ.*

4    *Evaluations, Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951, 954 (9th Cir. 1994)) (emphasis in

5    original). It says that "Plaintiffs fail to identify any requirement in the ASB program requiring

6    parity, or any third-party seller who understood it as such." Case No. 21-693, Dkt. # 158 at 13.

7    Amazon also argues that Plaintiffs' allegations about the SCC "fail to allege substantial harm to

8    competition." Case No. 21-693, Dkt. # 142 at 16. It contends that Plaintiffs identify only one

9    practice that "Amazon considers to be a violation of [the SCC]" and does not say how Amazon

10   responds to a violation. *Id.* at 16–17.

11       Plaintiffs respond that the SCAC and TAC allege that the ASB program "impacts

12   ███████ of brands," including major third-party sellers in the U.S. which "leads to millions of

13   consumers paying supracompetitive prices." Case No. 21-693, Dkt. #156 at 19 (redacted)

14   (quoting Case No. 21-693, Dkt. # 126 at 15, 17–18 ¶¶ 31, 37 (redacted); Case No. 20-424, Dkt.

15   # 165 at 12–13, 15 ¶¶ 22, 29 (redacted)). Plaintiffs say that they are not showing injury to

16   individual sellers penalized by Amazon under the ASB program but showing "overcharges [to

17   consumers] caused by Amazon's unreasonable restraints on its merchants' pricing behavior." *Id.*

18   (citing Case No. 21-963, Dkt. # 126 at 18 ¶ 39 (redacted); Case No. 20-424, Dkt. # 165 at 16 ¶

19   31(redacted)). They say that the complaints allege that the "clarification" to the SCC "codifies

20   the MFN policy by condemning merchants' promotional discounting off Amazon." *Id.* (citing

21   Case No. 21-693, Dkt. # 126 at 16 ¶ 32 (redacted), Case No. 20-424, Dkt. # 165 at 13 ¶ 23

22   (redacted)).

23       In the SCAC and TAC, Plaintiffs allege the following: "[E]ach . . .agreement Plaintiffs

24   challenge. . . operates to stifle sellers' price competition outside of Amazon Marketplace,

including removing sellers' products from the Buy Box and terminating or threatening to terminate selling privileges." Case No. 21-693, Dkt. # 126 at 4 ¶ 2 (redacted); Case No. 20-424, Dkt. # 165 at 4–5 ¶ 2 (redacted). Plaintiffs say that Amazon denies its customers "the benefits of lower prices and fees" through its MFN policies. Case No. 21-693, Dkt. # 126 at 9 ¶ 15; Case No. 20-424, Dkt. # 165 at 14–16 ¶¶ 28-31 (redacted). "Amazon's policies forbid third-party sellers from offering lower prices off of Amazon, and punish them for violations, which in turn insulates Amazon from competition from low cost, alternative platforms." Case No. 21-693, Dkt. # 126 at 9 ¶ 15; Case No. 20-424, Dkt. # 165 at 14–16 ¶¶ 28-31 (redacted). Plaintiffs also allege that Amazon's MFN policies "suppress output below what would prevail in a competitive world" and absent these policies "fees for merchants would be lower, enabling them to make more sales to consumers at lower prices." Case No. 21-693, Dkt. # 126 at 35 ¶ 103; Case No. 20-424, Dkt. # 165 at 30 ¶¶ 69–71(redacted).

According to Plaintiffs, the ASB program "prevents brand owners and their seller representatives from offering a lower price off of Amazon than they offer on Amazon or allowing their distributors to do so." Case No. 21-693, Dkt. # 126 at 14 ¶ 29 (redacted); Case No. 20-423, Dkt. # 165 at 12 ¶ 20 (redacted). "The penalties for violating [the ASB program] are dire." Case No. 21-693, Dkt. # 126 at 15 ¶ 31 (redacted); Case No. 20-423, Dkt. # 165 at 12 ¶ 22 (redacted). "Brand owners and their third-party seller representatives also face the . . .risk of losing the opportunity to operate as a seller in the Amazon store altogether if they do not maintain price competitiveness." Case No. 21-693, Dkt. # 126 at 15 ¶ 31 (redacted); Case No. 20-423, Dkt. # 165 at 12–13 ¶ 22 (redacted) (internal quotation omitted).

The SCAC and TAC also allege as follows: Under the ASB program, selling privileges have been removed "for ▮▮▮▮▮ of brands that have failed to meet" ASB's price competitiveness targets. Case No. 21-693, Dkts. ## 125 at 15 ¶ 31 (sealed), 126 at 15 ¶ 31

1    (redacted); Case No. 20-423, Dkts. ## 147 at 13 ¶ 22 (sealed), 165 at 13 ¶ 22 (redacted).  "This

2    loss of selling privileges is in addition to losing the Buy Box."  Case No. 21-693, Dkt. # 126 at

3    15–16 ¶ 31 (redacted); Case No. 20-423, Dkt. # 165 at 13 ¶ 22 (redacted).  "Sellers live in

4    constant fear that their accounts will be suspended, or that top selling products will be removed,

5    putting their businesses and livelihoods at risk."  Case No. 21-693, Dkts. # 125 at 16 ¶ 31

6    (sealed), 126 at 16 ¶ 31 (redacted); Case No. 20-423, Dkt. # 165 at 13 ¶ 22 (redacted) (internal

7    quotation omitted).  Amazon's "current clarification" of the SCC "reflects [Amazon's] MFN

8    policy."  Case No. 21-693, Dkt. # 126 at 16 ¶ 32 (redacted); Case No. 20-424, Dkt. 165 at 13

9    ¶ 23 (redacted).  Under the "current clarification," Amazon "considers it a violation of the . . .

10   [SCC] if off-Amazon rebates, discounts, and other schemes are designed to drive customers to

11   products that are listed and sold without those incentives on Amazon."  Case No. 21-693, Dkts.

12   # 125 at 16 ¶ 32 (sealed); 126 at 16 ¶ 32 (redacted); Case No. 20-424, Dkt. # 165 at 13 ¶ 23

13   (redacted) (internal quotation and alteration omitted).

14        Viewed in the light most favorable to Plaintiffs, the SCAC and TAC sufficiently allege

15   that Amazon's conduct increases the prices that consumers pay for products and otherwise

16   generates anticompetitive effects.  *See e.g.*, *Churchill Downs Inc. v. Thoroughbred Horsemen's

17   Grp., LLC*, 605 F. Supp. 2d 870, 887 (W.D. Ky. 2009) (reasoning that on a 12(b)(6) motion, a

18   "full analysis under the rule of reason would not be appropriate . . . given the fact intensive

19   nature of that analysis").[6]  Thus, Plaintiffs allege plausible anticompetitive effects sufficient to

20   survive the motion to dismiss.

21

22   _____

23        [6] In its Reply, Amazon also contends that Plaintiffs cannot aggregate the anticompetitive effects
     of the challenged agreements.  *See* Case No. 21-693, Dkt. # 158 at 12.  Given that Plaintiffs have
24   adequately alleged how the agreements individually generate specific anticompetitive effects, the Court
     need not reach the aggregation issue.

B.    Sherman Act Section Two Monopolization Claim

Section Two of the Sherman Act prohibits the monopolization, or attempted monopolization, or combination or conspiracy to monopolize, of any part of trade or commerce among the states. 15 U.S.C. § 2. A Section Two claim requires a plaintiff to show "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp*, 384 U.S. 563, 570-71 (1966). Monopoly power is not unlawful "unless it is accompanied by an element of anticompetitive conduct." *Qualcomm Inc.*, 969 F.3d at 990 (citing *Verizon Commc'ns Inc. v. L. Offs. Of Curtis V. Trinko, LLP*, 540 U.S. 398, 407 (2004)). Thus, a plaintiff must show "anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market." *Id.* A monopolist's act is viewed as exclusionary if it has an "anticompetitive effect," meaning, that it harms "the competitive *process* and thereby harm[s] consumers." *Id.* (citations omitted) (emphasis in original). Amazon says that Plaintiffs' Section Two claims fail because (1) the monopolization claims based on SC-FOD are untimely, (2) Plaintiffs fail to allege substantial anticompetitive effects, and (3) Plaintiffs' allegations of monopoly power in the "Online Retail Sales Market" are facially inadequate. *See* Case No. 21-693, Dkt. # 142 at 17–23.

1.    Timeliness of Claim

Amazon contends that Plaintiffs' claims based on SC-FOD are "untimely and cannot support a monopolization or attempted monopolization claim." Case No. 21-693, Dkt. # 142 at 17. It says that a four-year statute of limitations applies to Sherman Act claims, and because Plaintiffs allege that SC-FOD was introduced in mid-2015, "more than six years before their first Complaint was filed in mid-2021," their claims are untimely. *Id.* at 17–18 (citing 15 U.S.C.

§ 15b; Case No. 21-693; Dkt. # 126 at 12, 17 ¶¶ 22, 34; *In re Animation Workers Antitrust Litigation*, 87 F. Supp. 3d 1195, 1210 (N.D. Cal 2015)).[7]  Amazon also argues that Plaintiffs "cannot salvage their untimely claims by arguing that each instance in which Amazon applied SC-FOD to disqualify an uncompetitively priced offer from eligibility for the 'Buy Box' constitutes a new overt act that restarts the statute of limitations." *Id.* at 18.  The company characterizes its conduct related to SC-FOD as an "initial refusal to deal" and says its "conduct . . .does not restart the statute of limitations." *Id.* at 19 (quoting *Samsung Elecs. Co., Ltd. v. Panasonic Corp.*, 747 F.3d 1199, 1202-03 (9th Cir. 2014)).

Plaintiffs respond that their monopoly claims based on SC-FOD are timely. *See* Case No. 21-693, Dkt. # 156 at 20.  They say that "Amazon's initial development of SC-FOD in 2015 'did not permanently and finally control' pricing rules for Amazon's sellers and its 'decision to enforce' SC-FOD throughout the class period 'caused a new anti-competitive harm, and the statute of limitations ran anew[.]'" *Id.* at 21 (quoting *Samsung*, 747 F.3d at 1204) (alteration in original).  Plaintiffs assert that Amazon "has continually taken new and independent acts to enforce SC-FOD, causing new and accumulating injury from 2015 through the present." *Id.* Plaintiffs also contend that they "have not alleged a refusal to deal decision" in the complaints and that Amazon's analogy to refusal-to-deal cases fails because Amazon has not "refused to deal" with Plaintiffs or "third-party merchants subject to SC-FOD since 2015." *Id.* at 22.

A four-year statute of limitation does apply to antitrust actions. *See* 15 U.S.C. § 15b.  An exception exists for "continuing violations." *See Samsung*, 747 F.3d at 1202; *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("Antitrust law provides that, in the case of a

---

[7] Amazon also says that Plaintiffs Section Two claims are untimely "even assuming that Plaintiffs' new allegations about SC-FOD relate back to the filing of the original Complaint in May 2021—something the Court need not decide." Case No. 21-693, Dkt. # 142 at 17. The Court need not address this issue.

1    continuing violation . . . each overt act that is part of the violation and that injures the plaintiff . .

2    . starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged

3    illegality at much earlier times.") (internal quotations and citations omitted).  To state a

4    continuing violation, a plaintiff must allege (1) "a new and independent act that is not merely a

5    reaffirmation of a previous act[,]" and (2) the act "must inflict new and accumulating injury on

6    the plaintiff." *Samsung*, 747 F.3d at 1202.  The continuing violation standard "is meant to

7    differentiate those cases where a continuing violation is ongoing—and an antitrust suit can

8    therefore be maintained—from those where all of the harm occurred at the time of the initial

9    violation." *Id.*

10    The cases cited by Amazon on this issue are distinguishable.  In *In re Animation Workers*

11    *Antitrust Litigation*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015), the court determined that the

12    plaintiffs failed to allege a continuing violation because the complaint "reveal[ed] no alleged

13    wrongful communications or specific conduct during the limitations period" and the plaintiffs

14    also "fail[ed] to allege any new or accumulating injuries within the limitation period." *Id.* at

15    1212.  Similarly, in *Garrison v. Oracle Corporation*, 159 F. Supp. 3d 1044 (N.D. Cal. 2016), the

16    court observed that the complaint was "conclusory" and "fail[ed] to reveal any specific conduct"

17    by the defendant during the statute of limitations period. *Id.* at 1071.  In *Crowder v. LinkedIn*

18    *Corporation*, Case No. 22-cv-00237-HSG, 2023 WL 2405335, *2 (N.D. Cal. Mar. 8, 2023), the

19    court determined that the plaintiffs' allegation that "the agreement persisted into the limitations

20    period and caused consumers to be overcharged" could not show a continuing violation because

21    the plaintiffs only showed the "continued existence" of the agreement. *Id.* at *2 (quoting *Reveal*

22    *Chat Holdco LLC v. Facebook, Inc.*, No. 20-CV-00363-BLF, 2021 WL 1615349, at *6 (N.D.

23    Cal. Apr. 26, 2021)).  But the court observed that "active enforcement of an agreement may

24    constitute an overt act" that restarts the statute of limitations. *Id.* at *3; *see also Samsung*, 747

1    F.3d at 1204 ("We have repeatedly held that acts taken to enforce a contract were overt acts that

2    restarted the statute of limitations.").

3        Here, the SCAC and TAC allege that SC-FOD is an algorithm that Amazon introduced

4    "in mid-2015" and "expanded as a tool for securing third-party sellers' price parity after

5    [Amazon] repealed the [PPC]" in 2019.  Case No. 21-693, Dkt. # 126 at 11–12 ¶¶ 19, 22

6    (redacted); Case No. 20-424, Dkt. # 165 at 9 ¶ 13 (redacted).  Plaintiffs also allege that,

7    thereafter, "Amazon has continued to modify and expand its SC-FOD algorithm over time" and

8    that, as of two years ago, "Amazon estimated that globally it regularly tracked nearly ▮▮▮▮

9    price comparison points for purposes of implementing its MFN policies."  Case No. 21-693, Dkt.

10   # 126 at 13–14 ¶ 26 (redacted); Case No. 20-424, Dkt. # 165 at 11 ¶ 17.  They say that "[t]his

11   expansion increased the punitive aspects of the SC-FOD algorithm, by ensuring that more

12   products were monitored and more sellers were penalized" and Amazon uses SC-FOD to

13   "punish[ ] sellers for offering prices off Amazon that are lower than their prices on Amazon,

14   even where their costs are lower through other online sales channels."  Case No. 21-693, Dkt.

15   # 126 at 13–14 ¶¶ 26, 28 (redacted); Case No. 20-424, Dkt. # 165 at 11 ¶¶ 17, 19 (redacted).

16       Plaintiffs sufficiently allege that Amazon took overt actions during the limitations

17   period—modifying and expanding the SC-FOD algorithm to monitor more products and penalize

18   more sellers for violating Amazon's MFN policies—that inflicted "new and accumulating"

19   injuries on Plaintiffs.  *See Samsung*, 747 F.3d at 1202; *see also Pace Indus., Inc. v. Three*

20   *Phoenix Co.*, 813 F.2d 234, 237 (9th Cir. 1987) ("A continuing violation is one in which the

21   plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is

22   injured.") (citing *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 (9th Cir. 1986)).

23   Thus, Plaintiffs' Section Two claims based on SC-FOD are timely.

24

2.      Substantial Anticompetitive Effects

As stated above, under a rule of reason analysis, a plaintiff must show the agreement imposed an unreasonable restraint on trade (i.e., had an anticompetitive effect). *GTE Corp.*, 92 F.3d at 784; *Copperweld Corp.*, 467 U.S. at 767.  Direct evidence of anticompetitive effects includes "'proof of actual detrimental effects [on competition],' *F.T.C. v. Ind. Fed'n of Dentists*, 476 U.S. 447 (1986), such as reduced output, increased prices, or decreased quality in the relevant market."

Amazon argues that Plaintiffs' allegations about SC-FOD "are insufficient to show a substantial harm to competition." Case No. 21-693, Dkt. # 142 at 20.[8]  Amazon says that the practice of making "competitively priced offers 'the most visible and easiest to purchase' in Amazon's store . . . has facially procompetitive attributes." *Id.* (quoting Case No. 21-693, Dkt. # 126 at 17 ¶ 34).  It contends that "Plaintiffs' allegation that Amazon creates a 'critical listing benefit for third-party merchants' when it places their offers in the 'Buy Box,' is an allegation that Amazon increases the competitiveness of those offers, which in turn makes Amazon more competitive against other retail stores." *Id.* (quoting Case No. 21-693, Dkt. # 126 at 46 ¶ 125).  Amazon also says that Plaintiffs' identification of "a *single* third-party seller that allegedly sets higher prices in other marketplaces to improve his chances of being in the 'Buy Box' on Amazon" is not enough to show substantial anticompetitive effects in the entire market. *Id.* at 21 (quoting Case No. 21-693, Dkt. # 126 at 47–48 ¶¶ 128, 132) (emphasis in original).

Plaintiffs counter that Amazon's procompetitive justifications for SC-FOD "are intrinsically factual, contrary to plaintiffs' pleading and inappropriate for resolution at the motion

---

[8] As discussed above, Amazon also challenges the alleged anticompetitive effects of the PPC, ASB program, MFPP, and SCC under Section Two "[f]or all of the same reasons" as it challenges these policies under Section One.  The Court's analysis of the anticompetitive effects of these policies applies to both Plaintiffs' Section One and Two claims. *See supra* Sec. III.A.2 n.5.

1   to dismiss stage." Case No. 21-693, Dkt. # 156 at 24 (quoting *In re NCAA Student-Athlete Name*

2   *& Likeness Licensing Litig.*, 990 F. Supp. 2d 996, 1005 (N.D. Cal. 2014)). And according to

3   Plaintiffs, Amazon's contention that their identification of a single seller "who raised their prices

4   on other platforms to qualify for the Buy Box under SC-FOD" cannot show anticompetitive

5   effects is "fact-based" and "premature . . . at the motion-to-dismiss stage of litigation." [9] *Id.*

6   (quoting *De Coster*, 2023 WL 372377, at *5). They contend that Amazon tries to "improperly

7   spin[ ]" the allegations in the complaint as procompetitive but, on a motion to dismiss, Plaintiffs

8   "are entitled to all reasonable inferences in their favor." *Id.* at 25.

9         The Court agrees with Plaintiffs. The question "whether the alleged procompetitive

10   benefits of the [challenged conduct] outweigh its alleged anticompetitive effects [(i.e.,

11   procompetitive justifications)] is a factual question that the district court cannot resolve on the

12   pleadings." *PLS.Com*, 32 F.4th at 839; *see also United Food & Com. Workers Loc. 1776 &*

13   *Participating Emps. Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052,

14   1067 & n.16 (N.D. Cal. 2014). A procompetitive justification can "be used to rebut Plaintiffs'

15   claims once a prima facie case has been established, but the Court need not consider such

16   rebuttals on a motion to dismiss." *Frame-Wilson v. Amazon.com, Inc.*, 591 F. Supp. 3d at 992;

17   *see also De Coster v. Amazon.com, Inc.*, 2023 WL 372377, at *3; *Floyd v. Amazon.com, Inc.*,

18   No. C22-1599-JCC, 2023 WL 3891973, at *5 (W.D. Wash. June 8, 2023); *Brown v.*

19   *Amazon.com, Inc.*, No. 2:22-cv-00965-JHC, 2023 WL 5793303, at *4 (W.D. Wash. Sept. 7,

20   2023). Thus, to the extent that Amazon challenges Plaintiffs' Section Two claims based on the

21

22

_____

23        [9] Plaintiffs also respond that their complaints identify three sellers who say they raised their prices on other platforms to be eligible for the Buy Box. *See* Case No. 21-693, Dkt. # 156 at 24 (citing Case No. 21-693, Dkt. # 126 at 15, 47–48 ¶¶ 30, 127, 132 (redacted); Case No. 20-424, Dkt. # 165 at 6,

24   12, 52 ¶¶ 5, 21, 125–26).

1    "facially procompetitive attributes" of SC-FOD, Case No. 21-693, Dkt. # 142 at 20, such

2    arguments are inapt at this stage.

3            Amazon also relies on *Coronavirus Reporter v. Apple Inc.*, Case No. 21-cv-05567-EMC,

4    2021 WL 5936910, at * 13 (N.D. Cal. Nov. 30, 2021), to support its contention that, because

5    only some sellers on Amazon can have their products placed in the "Buy Box," this "necessarily

6    requires a less visible placement for" others' products, which is not "harm to *competition*." Case

7    No. 21-693, Dkt. # 142 at 20 (emphasis in original). In *Coronavirus Reporter*, the court, in

8    deciding whether the plaintiffs had established antitrust injury, reasoned that the plaintiffs'

9    contention that Apple suppressed the visibility of their apps on the App Store because their apps

10   competed with Apple-brand apps could not show "harm to competition across the market." *Id.* at

11   *13. The court found that the allegations in the complaint were "confined to specific harms

12   experienced by [the] [p]laintiffs or a small group of competitors, rather than harm to the market."

13   *Id.* at *14.

14           By contrast, here, Plaintiffs do allege harm to market competition. The SCAC and TAC

15   state that "[a]chieving price parity through the elimination of lower prices outside of Amazon

16   Marketplace is the overarching goal of the SC-FOD, and Amazon punishes sellers if it finds

17   lower prices off Amazon, even where their costs are lower through other online sales channels."

18   Case No. 21-693, Dkt. # 126 at 13 ¶ 24 (redacted); Case No. 20-424, Dkt. # 165 at 10 ¶¶ 14–15

19   (redacted). "That, in turn, limits the ability of competing platforms to offer retail prices lower

20   than those on Amazon, hindering the growth of would-be rivals and denying them the scale

21   necessary to compete." Case No. 21-693, Dkt. # 126 at 13 ¶ 24 (redacted); Case No. 20-424,

22   Dkt. # 165 at 10 ¶¶ 14–15 (redacted). Plaintiffs also allege that "[w]hen Amazon disqualifies a

23   seller's offer from the Buy Box, it tells the seller that Amazon detected a lower price elsewhere

24   and what that price is" but provides "limited information [to sellers] about how [it] generate[s]

1    competitor prices." Case No. 21-693, Dkt, # 125 at 13 ¶ 25 (sealed); Case No. 20-424, Dkt. #

2    147 at 11 ¶ 16 (sealed).  "By keeping sellers in the dark about the source of the lower price,

3    Amazon maintains a perpetual threat that—if the seller reduces their prices *anywhere* off of

4    Amazon—Amazon will punish them." Case No. 21-693, Dkt, # 126 at 13 ¶ 25 (redacted); Case

5    No. 20-424, Dkt. # 165 at 11 ¶ 16 (redacted).

6         The Court concludes that the allegations in the complaint, including the allegations stated

7    above, viewed in the light most favorable to Plaintiffs, suffice to show substantial

8    anticompetitive effects. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 735 (9th

9    Cir. 1987) (reasoning that dismissal under Rule 12(b)(6) is appropriate only when "[t]he

10   complaint states no set of facts which, if true, would constitute an antitrust offense,

11   notwithstanding its conclusory language regarding the elimination of competition and improper

12   purpose") (alteration in original) (internal citation omitted).

13        3.      Possession of Monopoly Power

14        Amazon contends that Plaintiffs' Section Two claims fail to the extent that Plaintiffs

15   allege that Amazon monopolizes the "Online Retail Sales Market." Case No. 21-693, Dkt. # 142

16   at 22 (citing Case No. 21-693, Dkt. # 126 at 35–40, 59 ¶¶ 106–113, 179 (redacted)).  Amazon

17   says that the allegation that it "control[s] over 50%" of the "Online Retail Sales Market . . .is

18   facially inadequate." *Id.* at 23 (quoting Case No. 21-693, Dkt. # 126 at 36 ¶ 107).  It also says

19   that courts generally require 65% market share to establish a prima facie case of market power.

20   *Id.* at 22–23 (citing *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1206 (9th

21   Cir. 1997); *Dreamstime.com, LLC v. Google LLC*, 54 F.4th 1130, 1137 n.5 (9th Cir. 2022)).

22        Plaintiffs counter that the prior complaints "included materially identical monopoly

23   power arguments," which Amazon did not challenge in its prior motions to dismiss.  Case No.

24   21-693, Dkt. # 156 at 26 (citing *De Coster*, 2023 WL 372377, at *1; *Frame-Wilson*, 591 F. Supp.

SEALED ORDER DENYING MOTION TO DISMISS - 24

3d at 980, 990).  Plaintiffs say that Amazon has "waived this argument under Rule 12(g) by not raising it in its earlier motions to dismiss." *Id.*

The Court agrees with Plaintiffs.  As stated above, under Rule 12(g), a party that makes a motion under Rule 12 "must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2).  Thus, "[t]he failure to challenge a particular cause of action in a prior 12(b)(6) motion precludes such a challenge in a subsequent 12(b)(6) motion." *Rutherford*, 2014 WL 12631845, at *10; *see also Fairhaven Health*, 2021 WL 5987023, at *6.

In the First Consolidated Amended Complaint in *De Coster*, Plaintiffs alleged that "Online Retail Sales Market was a distinct market and that Amazon controlled over 50% of it." Case No. 21-693, Dkt. # 20 at 31 ¶ 93.  They also stated that "Retail sales on Amazon's marketplace represent well over 50% of all sales in the Online Retail Sales Market." *Id.* at 55 ¶ 165; *see also id.* at 57 ¶ 174 (Amazon accounts for "over 50% of the revenue generated in the Online Retail Sales Market").  In the Second Amended Complaint in *Frame-Wilson*, Plaintiffs said that "[b]ecause Amazon Marketplace accounts for over 50% of online sales in the U.S., it has monopoly power in that market. In the alternative, Amazon has minimally obtained monopoly power in the product category submarkets with U.S. online retail markets, where its market share exceeds 50%." Case No. 20-424; Dkt. # 55 at 25 ¶ 46.  Plaintiffs also alleged that Amazon has "market power in the relevant markets with over 50% of the online retail marketplace." *Id.* at 102 ¶ 244.  Thus, Amazon could have challenged Plaintiffs' allegations about its market share and monopoly power in prior motions to dismiss.[10]

---

[10] The Court also notes that the existence of monopoly power "depends on a variety of factors." *Hunt-Wesson Foods, Inc. v. Ragu Foods, Inc.*, 627 F.2d 919, 924 (9th Cir. 1980).  "Market share is evidence from which the existence of [monopoly] power may be inferred, *but it should not be equated with monopoly power.*" *Id.* (emphasis added).  The Ninth Circuit has also said that indiscriminate

**IV**

CONCLUSION

For these reasons, the Court DENIES the motion to dismiss.[11] The Court provisionally

files this Order under seal. The Court DIRECTS the parties to file a joint statement, on or before

December 2, 2024, indicating what redactions, if any, should be included in the public version of

the Order.

Dated this 19th day of November, 2024.

John H. Chun
United States District Judge

---

"reliance upon market share, divorced from commercial reality, could give a misleading picture of a
firm's actual ability to control prices or exclude competition." *Id.* Some courts have also reasoned that "a
market share below 50% is rarely evidence of monopoly power, a share between 50% and 70% can
occasionally show monopoly power, and a share above 70% is usually strong evidence of monopoly
power. *Broadway Delivery Corp. v. United Parcel Serv. of Am., Inc.*, 651 F.2d 122, 129 (2d Cir. 1981);
*see also United States v. Google, Inc.*, Case No. 20-cv-3010 (APM), Case No. 20-cv-3715 (APM), 2024
WL 3647498, at *88 (D.D.C. Aug. 5, 2024) (same). But "market share alone cannot 'conclusively
establish ... monopoly power.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No.
05-MD-1720 (MKB), 2024 WL 1556931, at *12 (E.D.N.Y. Apr. 10, 2024) (quoting *Top Mkts., Inc. v.
Quality Mkts., Inc.*, 142 F.3d 90, 99 (2d. Cir. 1998)).

[11] In their Surreply, Plaintiffs move to strike four arguments that Amazon raises in its Reply: (1)
Amazon contends that the conspiracy to monopolize claim in *Frame-Wilson* should also be dismissed for
lack of an agreement; (2) Amazon says that the "non -SC-FOD agreements,"—the PPC, ASB program,
MFPP, and SCC— "are unilateral acts"; (3) Amazon asserts that Plaintiffs' claims about SC-FOD do not
relate back to the original complaint; and (4) Amazon says that Plaintiffs fail to allege with specificity the
circumstantial evidence of Amazon's market power in the "Online Retail Sales Market." *See generally*
Case No. 21-693; Dkt. # 162. Because this Order does not rely on any of these arguments, the Court need
not rule on the request to strike.