# Exhibit B
# (Redacted)

The Honorable John H. Chun

1

2

3

4

5

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

6

7

8   DEBORAH FRAME-WILSON, et al.,                    No. 2:20-cv-00424-JHC

9                            Plaintiffs,            **PLAINTIFFS' MOTION TO COMPEL**
                                                    **AMAZON TO PRODUCE**
10      v.                                          **DOCUMENTS AND INFORMATION**
                                                    **RESPONSIVE TO PLAINTIFFS'**
11                                                  **SEVENTH SET OF REQUESTS FOR**
    AMAZON.COM, INC., a Delaware corporation,       **PRODUCTION AND FOURTH SET**
12                                                  **OF INTERROGATORIES**
                             Defendant.
13
                                                    **NOTE ON MOTION CALENDAR:**
14                                                  July 24, 2025

15                                                  **FILED UNDER SEAL**

16
    ELIZABETH DE COSTER, et al.,                    No. 2:21-cv-00693-JHC
17
                             Plaintiffs,
18
        v.
19
    AMAZON.COM, INC., a Delaware corporation,
20
                             Defendant.
21

22  CHRISTOPHER BROWN, et al.,                      No. 2:22-cv-00965-JHC

23
                             Plaintiffs,
24
        v.
25
    AMAZON.COM, INC., a Delaware corporation,
26
                             Defendant.
27

28

PLTFS' MOT. TO COMPEL RE 7TH SET OF RFPS & 4TH SET OF ROGS
Case Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC



HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

# TABLE OF CONTENTS

                                                                        **Page**

I.     INTRODUCTION ................................................................................................1

II.    FACTUAL BACKGROUND.............................................................................2

       A.     Amazon engaged economic and antitrust "allies" to influence
              academic literature and other publications regarding issues at the
              heart of these cases.........................................................................2

              1.     Amazon generated economic and antitrust research to
                     support its defense..............................................................3

              2.     Third-party allies spread Amazon's message in the press. ...........4

       B.     Amazon secretly influenced the substance of economic papers. ...........5

       C.     Amazon has financial relationships with scholars and trade groups
              that echo its talking points. ...........................................................6

       D.     Amazon has already cited its "allies" or other scholars it has
              influenced..........................................................................................7

       E.     Plaintiffs' Requests ........................................................................8

III.   ARGUMENT .....................................................................................................8

       A.     Evidence of Amazon's financial and substantive influence over
              publications is relevant. ...............................................................8

       B.     Amazon's objections are meritless. ...............................................10

IV.    CONCLUSION.................................................................................................12



# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaska Elec. Pension Fund v. Pharmacia Corp.*,
   2005 WL 6429128 (D.N.J. Aug. 2, 2005) ...................................................................................9

*Byers v. Lincoln Elec. Co.*,
   2008 WL 4849339 (N.D. Ohio Nov. 6, 2008) ...............................................................................8

*City of Seattle v. Pro. Basketball Club, LLC*,
   2008 WL 539809 (W.D. Wash. Feb. 25, 2008) ...........................................................................12

*De Coster v. Amazon.com, Inc.*,
   2025 WL 904465 (W.D. Wash. Mar. 25, 2025) ..........................................................................11

*In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*,
   2014 WL 505234 (S.D.W. Va. Feb. 5, 2014) ................................................................................8

*Jowers v. BOC Grp., Inc.*,
   608 F. Supp. 2d 724 (S.D. Miss. 2009).........................................................................................8

*Oracle Am., Inc. v. Google Inc.*,
   2012 WL 3561366 (N.D. Cal. Aug. 20, 2012) ..........................................................................9, 10

*Schneider v. Revici*,
   817 F.2d 987 (2d Cir. 1987)........................................................................................................10

*In re Welding Fume Prods. Liab. Litig.*,
   534 F. Supp. 2d 761 (N.D. Ohio 2008)............................................................................8, 9, 10

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
   2007 WL 2758571 (C.D. Cal. Sept. 18, 2007) ...........................................................................12

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
   392 F. Supp. 3d 179 (D. Mass. 2019) ........................................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(4)....................................................................................................................11



# I.    INTRODUCTION

In defense of this case, Amazon relies not only on experts paid and fully disclosed, like Dr. Lorin Hitt, but also thought leaders, whose opinions—discovery reveals—Amazon solicited, shaped, or funded behind the scenes. For example, Amazon identifies Herbert Hovenkamp internally as one of the leading academics who had "authored rebuttals of our critics or spoken to the media *at our request*" yet Amazon and Hitt both rely on Hovenkamp's critique of Plaintiffs' market definition without revealing his potential bias (II.D). Hitt also cites Amazon "ally" Carl Shapiro on market power and Amazon Scholar Ali Hortacsu on economic modeling without mentioning their professional relationships with Amazon. *Id.* And Hitt relies on an article that received such substantial *undisclosed* feedback from Amazon's in-house economist that her colleague internally joked she should get credit as co-author (II.B and II.D). Discovery shows that these were part of a broader campaign to steer public opinion and escape antitrust liability (II).

Plaintiffs' Fourth Set of Interrogatories seek disclosure of Amazon's funding of publications and research by "economist[s], antitrust scholar[s]," and industry groups (Nos. 8 and 12) on core issues in this case, like "market definition," MFNs, "MMAs, [and] price competitiveness"; identification of such publications and others where Amazon exerted its substantive influence (Nos. 9, 13); and communications about such publications and funding, including for specific thought leaders, like Hovenkamp (Nos. 10-13), while Plaintiffs' Seventh Set of Requests For Production seek documents responsive to these interrogatories (Nos. 105-10). Ex. 1.[1] Courts routinely permit such discovery into a party's influence campaign, and yet other than identifying directly funded studies that it or its experts cite, Amazon refuses to respond to Plaintiffs' interrogatories, or to produce responsive documents. III.A.

Plaintiffs therefore move to compel Amazon's complete responses to these discovery requests, including disclosure of all economists, antitrust scholars, and think tanks whose research on the specified core issues of this case Amazon has funded, all publications (academic or mainstream) Amazon has solicited, edited, or funded on these same issues and the amount of

---

[1] All exhibits are attached to the Declaration of Steve W. Berman in support of Plaintiffs' Motion ("Berman Decl.").

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

funding they received, and Amazon's communications with these publications' authors. Plaintiffs also move to compel Amazon to search the custodial records of Amazon's Antitrust Working Group ("AWG") members and related groups and their agents for documents responsive to funding, soliciting, or influencing opinion on the specified core issues, and produce documents relating to these matters. III.

## II.     FACTUAL BACKGROUND

**A.     Amazon engaged economic and antitrust "allies" to influence academic literature and other publications regarding issues at the heart of these cases.**

Created in 2017, AWG includes members from Amazon's legal, economics, public policy, and corporate communications teams, to "proactively manage competition risks,"[2] by "working with interested allies to promote a positive competition message" in the press; maintaining a "roster of outside experts and allies" and "an aggressive rapid-response program to take on our critics," including by directing the media to Amazon allies who "published[ed] rebuttal op-eds and blog posts, particularly on legal antitrust arguments"; and [d]evelop[ing] and distribut[ing] economic, legal, and policy scholarship" to "fill gaps in antitrust policy and press discussions."[3]

When Plaintiffs filed their first suit in 2020, Amazon's Senior Leadership Team approved messaging that Amazon "promotes competition" by enrolling teams to "expand[] our relationships with third parties that can credibly speak on our behalf with [] stakeholders, generate new research to correct the record, and engage in education to prevent reflexive government intervention."[4] Amazon studied how other large tech companies had used "[e]xtensive development of third party allies (and research)" to manage scrutiny, and adopted the same strategy.[5] Amazon's corporate PR team built up its network of "academics, think tanks, and trade groups[] and equip[ed] them to

---

[2] Ex. 2, CAAGLit-AMZ_13976714 at 714.

[3] *Id.* at 717-19; *see also* Ex. 3, CAAGLit-AMZ_10790647 at 10790647.001 (Amazon was "[d]eveloping and contributing to economic research to educate policymakers and commentators about Amazon's fundamentally pro-competitive operations"); Ex. 4, CAAGLit-AMZ_13625561 at 561 (describing "generat[ing] ongoing support from third parties to reinforce talking points").

[4] Ex. 5, CAAGLit-AMZ_17603721 at 723.

[5] Ex. 6, CAAGLit-AMZ_08969695 at 695.

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE     (206) 623-0594 FAX

address key issues, punch back on erroneous claims, and serve as credible sources for the media to validate our point of view."[6] Amazon's "Legal-antitrust team" collaborated with its "Core AI policy team" to target "antitrust agencies that enforce competition laws, legislators that could change competition law or adopt new regulations, regulatory bodies that enforce relevant regulations, think tanks and international organizations that advise all of the above, mass media."[7] Amazon's Applied Science & Economics (ASE) team worked with "Legal and Amazon economic experts to provide them with our insights" and "steer work in helpful direction and generate relevant documents/memos," like responding to an economic paper critical of Amazon.[8]

### 1.    Amazon generated economic and antitrust research to support its defense.

The teams' work involved commissioning studies or soliciting support for defenses Amazon asserts here. For example, Amazon created a "PR plan to commission Economic studies" to generate support for its market definition and claims that the challenged restraints are procompetitive.[9] Amazon hoped the PR plan would "dispel claims that online retail is a distinct market and reinforce that it is one of multiple retail channels,"[10] and support its messaging that "[a] market definition of 'e-commerce' or 'online marketplace' does not reflect how consumers shop and how sellers sell[.]"[11] As for the challenged restraints, the PR plan would examine "the positive economic impact Amazon has on third-party sellers" and the competitive impact of Amazon's business practices,[12] proposing research to demonstrate that its "Buy box facilitates competition of all sellers (including Amazon Retail) for the benefit of end consumers[.]"[13]Amazon

---

[6] Ex. 7, CAAGLit-AMZ_03196163 at 03196163.001.

[7] Ex. 8, PPC-FTC-1721230 at 230. "For each topic, [Amazon] work[s] backwards from the final message, which in turn determines research design and research output." *Id.*

[8] Ex. 9, CAAGLit-AMZ_00008610 at 8610.00028.

[9] Ex. 10, CAAGLit-AMZ_02987436 at 436.

[10]*Id.*

[11] Ex. 8, PPC-FTC-1721230 at 231.

[12] Ex. 10, CAAGLit-AMZ_02987436 at 436.

[13] Ex. 8, PPC-FTC-1721230 at 234; Ex. 9, CAAGLit-AMZ_00008610 at 00008610.00016 (ASE's "active workstream" included studies on "Pricing and FMA [Featured Merchant Algorithm]").

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  provided talking points to third-parties engaging in economic analyses to combat the claim that

2  Amazon is dominant in e-commerce,[14] and public messaging relating to "Price Parity-related

3  issues."[15]

4          2.      **Third-party allies spread Amazon's message in the press.**

5          Amazon worked with "interested allies to promote a positive competition message" and

6  tracked the "positive pieces" it placed in the media to promote messaging that "recognizes

7  Amazon's relatively limited economic influence and its role in enabling competition."[16] For

8  example, in 2017, in response to FTC Chair Lina Khan's New York Times op-ed "Amazon Bites

9  Off Even More Monopoly Power," Amazon "quickly" sought a "non-Amazon author to submit"

10 a "direct rebuttal oped …to the NYT" by "reach[ing] out to the serious antitrust crowd (where we

11 have relationships and can be discrete)," including seeing whether Hovenkamp would put his name

12 to it.[17] And in response to Senator Blumenthal's 2018 letter to the FTC, "criticizing [Amazon] for

13 suppressing uncompetitively priced offers by 3P sellers (SC-FOD)," Amazon's "PP [public policy

14 team]" contacted "friendly third parties to push back" on "the letter[.]"[18] In anticipation of the FTC

15 lawsuit, Amazon's PP engaged with "a set of trusted academics with whom we have *privileged*

16

17

---

18 [14] Ex. 4, CAAGLit-AMZ_13625561 at 561; *see also* Ex. 11, CAAGLit-AMZ_13625263 at

19 263, 266 (describing economic analyses relating to "dominant digital platforms" and "delineating
   the relevant market for amazon marketplace," noting that "similar work on market definition will

20 be underway in the US soon"); Ex. 3, CAAGLit-AMZ_10790647 at 10790647.001 (Amazon
   involvement in economic research about "[m]arketplace competition" and "multi-homing").

21
   [15] Ex. 12, CAAGLit-AMZ_14007709 at 712; *see also* Ex. 4, CAAGLit-AMZ_13625561 at

22 561 (describing efforts to "[e]xplain Amazon's pricing policies for 3Ps (MFNs/SC-FOD)").

23 [16] Ex. 2, CAAGLit-AMZ_13976714 at 717; *see also* Ex. 13, CAAGLit-AMZ_13620517 at
   517; Ex. 14, CAAGLit-AMZ_01832035 at 035.00002 ("[W]orking with allies to develop and

24 promote a positive fact-based competition message remain key strategies for our response. To
   date, PR has conducted 382 off-the-record briefings for reporters on antitrust issues, secured 100

25 story updates, and placed 42 stories with reporters and allies.").

26 [17] Ex. 15, CAAGLit-AMZ_06228327 at 06228327.0006-7.

27 [18] Ex. 16, CAAGLit-AMZ_13985638 at 638-39; *see also* Ex. 7, CAAGLit-AMZ_03196163
   at 3196163.006 ("things we could change" through messaging included "[c]laims that our

28 pricing policies are anticompetitive").

---

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

*relationships*" to "provide briefings on the forthcoming lawsuit[.]"[19] After the FTC filed, Amazon confirmed: "Our public policy team has cultivated a strong group of third-party advocates and activated them today with good results. Highlights include dozens of positive posts and articles from third parties and policymakers[.]"[20]

**B.    Amazon secretly influenced the substance of economic papers.**

Amazon economist and AWG member, ███████████, played a key role in Amazon's influence campaign, which involved driving the "public narrative through direct and indirect academic and PR outlets."[21] Among other things, ██████ "[d]rove the Amazon 3P Market analysis" Amazon presented to the European Commission during its investigation of Amazon—work which was expected to "form the basis of [Amazon's] responses domestically[.]"[22] She used her "expertise to influence…academics who offer or have offered opinions about Amazon."[23] Her efforts were supported by "Senior Leadership," who agreed that Amazon "should be out there arguing [its] points directly (S-team members) and indirectly (academic papers from leading academics not necessarily associated with Amazon.)."[24]

██████████ influence on outside academics' papers was so strong that she "effectively author[ed]" them.[25] For example, ███████ convinced author Andrei Hagiu, who modeled Amazon's third-party seller relationship in a paper about Amazon's marketplace, to "modif[y] his position," causing one Amazon colleague to joke that ████████ should "be added as a coauthor" to Hagiu's paper.[26] ███████ also influenced two other papers Amazon submitted to the European

---

[19] Ex. 17, CAAGLit-AMZ_16244694 at 700 (emphasis added); *Id.* at 708 & n.1 (to manage the risk that engaging third parties could subject the company to discovery, Amazon planned on "coordinating closely with Legal" to "carefully maintain[] privilege" over (non-privileged) communications with third parties).

[20] Ex. 18, CAAGLit-AMZ_18125483 at 485.

[21] Ex. 19, CAAGLit-AMZ_16016338 at 338.

[22] *Id.*

[23] *Id.* at 339

[24] *Id.* at 343.

[25] *Id.* at 340.

[26] *Id.* at 339.

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

Commission in defense of Amazon's conduct, which papers "played a role in giving the EC some pause and …making it rethink their theory in the case."[27] While "for obvious PR reasons" she was not "listed as an author" on these papers, ▮▮▮▮ "took the lead in crafting the approach, effectively authoring the problem identification, the mental model, selecting and marshalling the forces, and combining the different sources into a compelling narrative."[28] In other words, she was the undisclosed *lead* author.

**C.    Amazon has financial relationships with scholars and trade groups that echo its talking points.**

Amazon also engaged think tanks and trade groups as allies in its influence campaign, and funded at least some of these outfits, like the Global Antitrust Institute, which has been criticized as working with corporate sponsors to fend off antitrust criticism.[29] Amazon has been a "long-term supporter" of the trade group, National Retail Foundation ("NRF").[30] "In 2024, [Amazon] continued shaping the public narrative around the [FTC's] antitrust litigation against Amazon" through NRF, including by "working with third-party groups to produce supportive content and research."[31] Amazon's "top priority" for NRF was to "articulate and defend a broad definition of retail that understands how consumers shop interchangeably between offline and online options," including through an unidentified "major piece that will run in 2025[.]"[32]

---

[27] *Id.* at 340.

[28] *Id.*

[29] *See* Ex. 21, CAAGLit-AMZ_06229242; Ex. 22, CAAGLit-AMZ_00823083 at 087 (listing "influential think tanks" that have "authored rebuttals of our critics or spoken to the media at our request").

[30] Ex. 23, CAAGLit-AMZ_18873806 at 806.

[31] *Id.* at 807.

[32] *Id.*

PLTFS' MOT. TO COMPEL RE 7TH SET OF RFPS & 4TH SET OF ROGS - 6
Case Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

And through its Amazon Scholars program[33] Amazon employs economists (and others) on a part-time basis, or during sabbaticals, so they can maintain their academic status, who work with teams on research supporting Amazon's influence campaign.[34]

**D.    Amazon has already cited its "allies" or other scholars it has influenced.**

Amazon internally identifies Hovenkamp as one academic "[a]mong those that have authored rebuttals of our critics or spoken to the media *at our request*."[35] As stated (II.A.), Amazon discussed asking Hovenkamp to write a response to former FTC Chair Khan's op-ed criticizing Amazon and identified him among the "experts who have published pieces pushing back against the Lina Khan antitrust argument" that Amazon wields anticompetitive market power.[36]

Amazon's economic expert in these cases, Lorin Hitt, relies on a Hovenkamp paper that criticizes Plaintiffs' market definition here.[37] Amazon's Economics Day Hearing Statement cited the same paper. *FTC* ECF No. 427, at 4.

Hitt also relies on (a) a version of the aforementioned Andrei Hagiu article (II.B) that Amazon in-house economist ███ effectively co-authored without attribution[38] (b) the work

---

[33] *See* Ex. 30, Deposition of Daniel Silverman 307:2-311:9; https://www.amazon.science/scholars.

[34] *See* Ex. 9, CAAGLit-AMZ_00008610 at 8610.00001 (ASE team includes part-time academic research consultants and scholars); *id*. at 8610.00004 (Amazon's "Core AI" team works with Amazon Scholars to conduct "critical in-house research to support public policy and research partners").

[35] Ex. 22, CAAGLit-AMZ_00823083 at 087 (emphasis added); *see* Ex. 1, Plaintiffs Interrogatory Nos. 10-11 (requesting discovery regarding Hovenkamp, Shapiro and other scholars specifically identified in CAAGLit-AMZ_00823083).

[36] Ex. 24, CAAGLit-AMZ_02896227 at 230; *see also* Ex. 25, PPC-FTC-1394991 at 992 (summary of antitrust press refers to statements by "third party [] all[y]" Hovenkamp); Ex. 26, CAAGLIT-AMZ_13814667 at 667, 676 (noting some "helpful statements by legal experts who raised questions about the merits" of the DC AG's suit, including an article where Hovenkamp called the case an "uphill battle" because of market definition and market power issues).

[37] *De Coster* ECF No. 295-02, Hitt Rpt. at 329, n. 750; 365, n. 810; 660 (citing Herbert Hovenkamp (2024), "Antitrust and eMarkets," *Stanford Law and Policy Review*, 2025 (forthcoming)); *Frame-Wilson* ECF No. 324-1, Hitt Rpt. at 443, n. 985; 477, n. 1071 (same).

[38] *De Coster* Hitt Rpt. at 165 nn. 329-30; 659; *Frame-Wilson* Hitt Rpt. at 417 nn. 908-09; 907.

---

**HAGENS BERMAN**
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

of long-time Amazon Scholar Ali Hortacsu,[39] and (c) a treatise authored by Amazon "ally" Carl Shapiro.[40]

## E.    Plaintiffs' Requests

Plaintiffs seek documents and responses to interrogatories regarding Amazon's influence campaign. Exhibit 1. The Parties met and conferred multiple times but are at an impasse. Amazon agrees only to disclose studies cited by Amazon or its experts which Amazon directly funded, which is insufficient to disclose Amazon's broader influence over issues relevant to these cases. Berman Decl. ¶¶1-3.

## III.    ARGUMENT

## A.    Evidence of Amazon's financial and substantive influence over publications is relevant.

There can be no dispute that Amazon's statements to economists, academics, publishers, and the like, regarding relevant economic issues or its own conduct—admissible as party admissions—are discoverable and should be produced. Financial arrangements between a party and a publication's author, relevant to author bias, are also discoverable. *See, e.g., In re Welding Fume Prods. Liab. Litig.*, 534 F. Supp. 2d 761, 762 (N.D. Ohio 2008). When a party has funded authors of articles or studies they rely on in court, the court is entitled to know of this relationship, so that it can "give these articles and studies less than conclusive weight." *Jowers v. BOC Grp., Inc.*, 608 F. Supp. 2d 724, 764 n.187 (S.D. Miss. 2009); *see also In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2014 WL 505234, at *10 (S.D.W. Va. Feb. 5, 2014) (defendant's payments to authors of medical literature and trade association publications relevant to the authors' potential bias).

Here, Hitt's reliance on articles that Amazon secretly co-authored or were written by authors in Amazon's employ, II.B, goes to the weight and credibility that should be afforded his

---

[39] *De Coster* Hitt Rpt. at 224 n. 492; 227 n. 500; 664; *Frame-Wilson* Hitt Rpt. at 294 n. 625; 297 n. 633; 914; *see also* Ex. 3, CAAGLit-AMZ_10790647 at 10790647.001 (noting ▮▮▮▮ work with Hortacsu); Ex. 27, CAAGLit-AMZ_03308836 at 838 (Hortacsu hired as an Amazon Scholar for economics in 2016)).

[40] Ex. 22, CAAGLit-AMZ_00823083 at 087; *De Coster* Hitt Rpt. at 342 n. 780; 370 n. 833; 371 nn. 834-35; 665; *Frame-Wilson* Hitt Rpt. at 456 n. 1020; 482-83 nn. 1094-95; 916.

PLTFS' MOT. TO COMPEL RE 7TH SET OF RFPS & 4TH SET OF ROGS - 8
Case Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1  testimony. *See, e.g.*, *Jowers*, 608 F. Supp. 2d at 764 n.187; *cf. Byers v. Lincoln Elec. Co.*, 2008

2  WL 4849339, at *5 (N.D. Ohio Nov. 6, 2008) (that the defendant's experts relied on articles written

3  by authors funded or influenced by defendant goes to the weight and credibility of their testimony).

4  Unless Plaintiffs' Motion is granted, neither the Court nor Plaintiffs will know whether Hitt,

5  Amazon's counsel or Amazon's other experts have relied or will rely on *additional* publications

6  whose authors received feedback from Amazon before publication or whose other indebtedness to

7  Amazon was undisclosed.

8        Amazon's proposal that would limit disclosure to studies directly funded by Amazon that

9  Amazon or its experts rely on is insufficient. For example, in *Oracle America, Inc. v. Google Inc*.,

10  mindful of the potential influence tech giants might have exercised behind the scenes of a patent

11  dispute, Judge Alsup ordered the parties to disclose "all authors, journalists, commentators or

12  bloggers who have reported on any issues in this case and who have received money … from the

13  party or its counsel during the pendency of this action."[41] A subsequent order clarified that the

14  court required disclosure of any financial relationship, not just instances where a party funded a

15  particular publication. *Oracle Am., Inc. v. Google Inc.*, 2012 WL 3561366, at *1 (N.D. Cal. Aug.

16  20, 2012). The court observed:

17          For example, Oracle has disclosed that it retained a blogger as a consultant. Even
18          though the payment was for consulting work, the payment might have influenced
        the blogger's reports on issues in the civil action. *Just as a treatise on the law may*
19          *influence the courts, public commentary that purports to be independent may have*
        *an influence on the courts and/or their staff if only in subtle ways. If a treatise*
20          *author or blogger is paid by a litigant, should not that relationship be known?*

21  *Id.* (emphasis added). *See also Welding Fume,* 534 F. Supp. 2d at 762 (requiring the parties "to

22  disclose … payments they made, either *directly or indirectly*, to any ... individual or organization[]

23  that has authored or published any study, article, treatise, or other text upon which any expert in

24  this MDL … has relied.") (emphasis added);[42] *Alaska Elec. Pension Fund v. Pharmacia Corp.*,

25            [41] Ex. 28 (disclosure order in *Oracle America, Inc. v. Google Inc.*, Dkt. No. 1229, No. 3:10-
26  cv-03561-WHA (N.D. Cal.)).

27            [42] "Indirect payments" were defined to include, e.g., payments made by counsel for a party or
any organization to which the party belongs or has given money, or payments received by an
28  entity that employs an author of the study. *See* Ex. 31 (discovery order).

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1   2005 WL 6429128, at *1-2 (D.N.J. Aug. 2, 2005) (requiring defendant to produce "all documents

2   concerning … payments or items of any kind paid or promised to be paid by" defendants to study

3   authors and not limiting disclosure to evidence of payments regarding the particular study at issue).

4   Plaintiffs seek this exact type of disclosure (as well as associated documents) to understand how

5   Amazon's payments may have influenced any treatises, articles, or other publications pertaining

6   to issues in these cases, including those Amazon relies on to sway the Court and jury.

7       Finally, Amazon may eventually seek to admit learned treatises as non-hearsay under

8   Federal Rule of Evidence 803(18). For the same "purpose of revealing possible bias…it is

9   reasonable for a litigant to want to reveal to the jury any financial incentives supplied by another

10  party to the author of a learned treatise introduced at trial." *In re Welding Fume Prods. Liab. Litig.*,

11  534 F. Supp. 2d at 765-66; *see also Schneider v. Revici*, 817 F.2d 987, 991 (2d Cir. 1987)

12  (recognizing the "danger of prejudice inherent in recognizing a book authored by the defendant in

13  a medical malpractice case as a learned treatise"). Full disclosure of Amazon's influence—both

14  financial and substantive—over treatise authors, such as Hovenkamp and Shapiro, should be

15  required.

16  **B.    Amazon's objections are meritless.**

17      Amazon has offered a litany of baseless objections, all of which should be rejected.

18      *First*, Amazon did not attempt to make any specific showing of burden during the meet-

19  and-confer process (Decl. ¶4) and cannot show that the burden is *undue*. The burden here is

20  commensurate with the importance of the information, as well as the size and importance of these

21  cases. *See Oracle Am., Inc.*, 2012 WL 3561366, at *1 (rejecting argument that company "paid so

22  many commenters that it will be impossible to list them all"). Plaintiffs seek disclosure of

23  Amazon's communications and financial arrangements with thought leaders and think tanks

24  organized to refute Plaintiffs' claims and Amazon's search of custodial documents from ████

25  ████ and other persons and internal groups, whom Amazon designated to manage scholarship

26  and influence press discussions, as well as the files of Amazon agents who communicated with

27  economists and scholars on Amazon's behalf. *See* II.A. Production of these materials is not unduly

28  burdensome.

1   *Second*, Plaintiffs' Requests are proportionate to the needs of these cases, given the scale

2   of Amazon's influence campaign and its nexus to issues relevant to Plaintiffs' cases. Only Amazon

3   can provide information revealing its influence campaign. Although Amazon offered to disclose

4   whether any study or article cited by it or its experts in these cases was funded by Amazon, that

5   proposal is woefully insufficient to disclose the extent of Amazon's influence. It would not, for

6   example, require Amazon to identify any other direct payments to scholars or indirect sources of

7   financial influence that many courts require to be disclosed. III.A. Nor would it require Amazon

8   to identify publications over which it had a substantive influence or had effectively ghost-co-

9   written. And it would not reveal any relevant statements Amazon made to potentially influence

10  any author. The requested discovery is essential to determining the full extent of bias that may

11  pervade the antitrust and economics literature.

12      *Third*, contrary to Amazon's objections, the discovery Plaintiffs seek is not precluded by

13  the Stipulated Motion and Order Regarding Expert Discovery, which only exempts Amazon's

14  communications with a "retain[ed] … consulting expert … within the scope of a *bona fide*

15  *consulting expert agreement*[.]" *Frame-Wilson*, ECF No. 121 at 6 (emphasis added). Federal Rule

16  of Civil Procedure 26(b)(4) likewise does not shield communications between a party and

17  consulting expert that predate the expert's retention. *In re Zofran (Ondansetron) Prods. Liab.*

18  *Litig.*, 392 F. Supp. 3d 179, 185-86 (D. Mass. 2019). Nor is there any basis "to conceal … from a

19  party opponent and the Court" a party's engagement of "a consulting, non-testifying expert … to

20  conduct and publish … or otherwise affect or influence" a study relevant to the litigation, as

21  Amazon is asking the Court to be allowed to do. *Id.*

22      *Fourth*, Amazon cannot hide documents behind the attorney-client privilege. The Court

23  has already ruled that communications with third parties regarding public relations and public

24  policy strategy are not privileged, even if they involve attorneys. *De Coster v. Amazon.com, Inc.*,

25  2025 WL 904465, at *9 (W.D. Wash. Mar. 25, 2025). As the Court is now familiar, Amazon

26  employees routinely feign requests for legal advice by adding lawyers to non-privileged

27

28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

communications.[43] To the extent that Amazon has continued its privilege-cloaking abuse by using counsel (including outside counsel) to launder its communications with non-parties, that does not transform non-privileged PR and public policy strategy communications into privileged communications.

*Finally*, Amazon cannot withhold documents and information within its custody or control merely because they are in the hands of its outside counsel or other agents. *City of Seattle v. Pro. Basketball Club, LLC*, 2008 WL 539809, at *1 (W.D. Wash. Feb. 25, 2008). For example, "[d]ocuments held by outside counsel that pertain to work performed for a client are within the 'possession, custody or control' of the client for purposes of Rule 34." *Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*, 2007 WL 2758571, at *12 (C.D. Cal. Sept. 18, 2007). This includes outside counsel who maintain relationships with Amazon's third-party allies and who communicated with them in a non-privileged manner, removed from litigation in which they represented Amazon.[44] Amazon should not be permitted to launder its non-privileged communications with nonparty allies through its outside counsel or other Agents.

## IV.   CONCLUSION

For the reasons set forth herein, the Court should grant Plaintiffs' Motion.

---

[43] *See, e.g.*, Ex. 17, CAAGLit-AMZ_16244694 at 694, 708 n.1 (to mitigate the risk that communications with nonparties in connection with its "PP and PR strategy for the FTC complaint" would become a "focus of discovery" in litigation, Amazon planned to "follow legal guardrails (such as carefully maintaining privilege)").

[44] *See* Ex. 15, CAAGLit-AMZ_06228327 (considering asking its outside antitrust counsel, who reached out to "a number of respected antitrust folks about supporting the [Whole Foods acquisition] in comments to the press (like Hovenkamp)[,] who might be willing to write a response" to former FTC chair Lina Khan's law review article criticizing Amazon); *see also* Ex. 29, CAAGLit-AMZ_13620711 (when a Hovenkamp quote in the press "went a little sideways," Amazon asks whether they should reach out to outside counsel to "touch base with him").

1    *I certify that this brief contains 4,162 words, in compliance with LCR 7(e)(4)*

2

3    DATED: July 3, 2025                Respectfully submitted,

4                                       HAGENS BERMAN SOBOL SHAPIRO LLP

5                                       By: /s/ *Steve W. Berman*
                                            Steve W. Berman (WSBA No. 12536)
6                                       By: /s/ *Barbara A. Mahoney*
                                            Barbara A. Mahoney (WSBA No. 31845)
7                                       1301 Second Avenue, Suite 2000
8                                       Seattle, WA 98101
                                        Telephone: (206) 623-7292
9                                       Facsimile:  (206) 623-0594
                                        E-mail: steve@hbsslaw.com
10                                              barbaram@hbsslaw.com

11                                      Anne F. Johnson (*pro hac vice*)
12                                      594 Dean Street, Suite 24
                                        Brooklyn, NY 11238
13                                      Telephone: (718) 916-3520
                                        E-mail: annej@hbsslaw.com
14

15                                      KELLER POSTMAN LLC

16                                      Zina G. Bash (*pro hac vice*)
                                        111 Congress Avenue, Suite 500
17                                      Austin, TX, 78701
                                        Telephone: (512) 690-0990
18                                      E-mail: zina.bash@kellerpostman.com

19                                      Jessica Beringer (*pro hac vice*)
                                        Alex Dravillas (*pro hac vice*)
20                                      Shane Kelly (*pro hac vice*)
                                        150 North Riverside Plaza, Suite 4100
21                                      Chicago, Illinois 60606
                                        Telephone: (312) 741-5220
22                                      E-mail: Jessica.Beringer@kellerpostman.com
                                                ajd@kellerpostman.com
23                                              shane.kelly@kellerpostman.com
24

25                                      *Interim Co-Lead Counsel for Plaintiffs and the Proposed Class*

26

27

28



1
2

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

3

By: /s/ *Alicia Cobb*

4

    Alicia Cobb, WSBA # 48685
1109 First Avenue, Suite 210

5

Seattle, WA 98101
Telephone: (206) 905-7000

6

Email:  aliciacobb@quinnemanuel.com

7

Steig D. Olson (*pro hac vice*)
David D. LeRay (*pro hac vice*)

8

Nic V. Siebert (*pro hac vice*)
Maxwell P. Deabler-Meadows (*pro hac vice*)

9

Elle Mahdavi (*pro hac vice*)
295 Fifth Avenue

10

New York, NY 10016

11

Telephone: (212) 849-7000
Email:  steigolson@quinnemanuel.com

12

        davidleray@quinnemanuel.com
        nicolassiebert@quinnemanuel.com

13

        maxmeadows@quinnemanuel.com
        ellemahdavi@quinnemanuel.com

14
15

Adam B. Wolfson (*pro hac vice*)
865 South Figueroa Street, 10th Floor

16

Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

17

Email: adamwolfson@quinnemanuel.com

18

*Interim Executive Committee for Plaintiffs and the*

19

*proposed Class*

20
21
22
23
24
25
26
27
28

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on July 3, 2025, a true and correct copy of the foregoing was filed

3

electronically by CM/ECF under seal, and sent via email and FTP to counsel of record.

4

5
                              */s/ Steve W. Berman*
                              Steve W. Berman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLTFS' MOT. TO COMPEL RE 7TH SET OF RFPS & 4TH SET OF ROGS - 15
Case Nos. 2:21-cv-00693-JHC, 2:20-cv-00424-JHC, 2:22-cv-00965-JHC

HAGENS BERMAN
1301 Second Avenue, Suite 2000, Seattle, WA 98101
(206) 623-7292 OFFICE    (206) 623-0594 FAX

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Honorable John H. Chun

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEBORAH FRAME-WILSON, et al.,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                                   Defendant. | No. 2:20-cv-00424-JHC<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL AMAZON TO PRODUCE DOCUMENTS AND INFORMATION RESPONSIVE TO PLAINTIFFS' SEVENTH SET OF REQUESTS FOR PRODUCTION AND FOURTH SET OF INTERROGATORIES** |
| ELIZABETH DE COSTER, et al.,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                                   Defendant. | No. 2:21-cv-00693-JHC |
| CHRISTOPHER BROWN, et al.,<br><br>                                   Plaintiffs,<br><br>        v.<br><br>AMAZON.COM, INC., a Delaware corporation,<br><br>                                   Defendant. | No. 2:22-cv-00965-JHC |

This matter came before the Court on Plaintiffs' Motion To Compel Amazon to Produce Documents and Information Responsive to Plaintiffs' Seventh Set of Requests for Production and Fourth Set of Interrogatories (the "Motion"). The Court has considered Plaintiffs' Motion, Defendant Amazon.com, Inc.'s Opposition, and Plaintiffs' Reply, as well as all other pertinent documents and pleadings on file in this action.

Being fully advised, the Court now ORDERS and ADJUDGES that:

Plaintiffs' Motion is GRANTED.  By August 15, 2025, Amazon shall provide complete responses to Plaintiffs' Fourth Set of Interrogatories and produce all documents responsive to Plaintiffs' Seventh Set of Requests for Production, including, but not limited to, responsive documents located in the custodial files of Amazon's Antitrust Working Group members and related groups, as well as Amazon's Agents.


IT IS SO ORDERED.

DATED: July __, 2025

_____
The Honorable John H. Chun
United States District Judge